1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY CRAVOTTA II,                      No. 2:22-cv-00167-DJC-AC

11                    Plaintiff,
            v.
12                                             ORDER
     COUNTY OF SACRAMENTO, et al.,
13
                      Defendants.
14

15

16          Pending before the Court is a Motion to Dismiss Plaintiff Anthony Cravotta II's

17   first, third, fourth, fifth, seventh, ninth, and tenth causes of action brought by

18   Defendants County of Sacramento, Sacramento County Sheriff's Department, Sheriff

19   Scott Jones, Sergeant Andrea Haynes, Deputy Moises Paredes, Deputy Ronnie

20   McLean, and Deputy Justin Higley.  (ECF No. 36.)  Also before the Court is a Motion to

21   Dismiss Plaintiff's third and fourth causes of action brought by Defendant State of

22   California, by and through the California Department of State Hospitals (the "State

23   Defendants").  (ECF Nos. 47, 53.)  Finally, before the Court is a Motion for Summary

24   Judgment on Plaintiff's first, fifth, seventh, ninth, and tenth causes of action brought by

25   Defendant Deputy Bennett Preston.  (ECF No. 73.)

26          These motions address many overlapping arguments for dismissal of Plaintiff's

27   claims.  Accordingly, in the interests of judicial economy, the Court will dispose of

28   these pending motions simultaneously in the order below.  Having considered the

                                              1

1    Parties' briefings and arguments, the Court hereby GRANTS dismissal of the first cause

2    of action against Defendants Haynes, Paredes, McLean, Higley, and Preston[1]; the third

3    cause of action against Defendants County of Sacramento and Sacramento County

4    Sheriff's Department (the "County Defendants"); the fourth cause of action against the

5    County Defendants; the fifth cause of action in its entirety; the seventh cause of action

6    against Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston; the ninth

7    cause of action against Defendants Haynes, Paredes, McLean, Higley, and Preston;

8    and the tenth cause of action against Defendants Haynes, Paredes, McLean, Higley,

9    and Preston.  The Court DENIES dismissal as to Plaintiff's third cause of action against

10   the State Defendants; fourth cause of action against the State Defendants; ninth cause

11   of action against the County Defendants and Defendant Jones; and the tenth cause of

12   action against Defendant Jones.

13          Plaintiff is granted leave to file an amended complaint within 30 days.

14                                    **BACKGROUND**

15          Plaintiff is a 45-year-old man with a history of serious mental health issues,

16   including depression and bi-polar disorder.  (*See* First. Am. Compl. ("FAC") (ECF No.

17   20) ¶¶ 21–23.)  On November 11, 2020, Plaintiff was arrested, charged with

18   possession or control of obscene matter depicting a person under 18, and booked

19   into the Sacramento County Main Jail.  (*Id.* ¶¶ 33–34.)  Plaintiff was subject to a

20   classification interview upon booking which was used to assist jail staff in determining

21   where to house Plaintiff.  (*Id.* ¶ 35.)  The classification process at the Sacramento

22

23   _____

24   [1] The Court acknowledges that Defendant Preston filed for summary judgment, not dismissal.
     However, the Court finds this its reasons for granting dismissal of Plaintiff's first, fifth, seventh, ninth, and
     tenth claims against Defendants Haynes, Paredes, McLean and Higley also extend to Defendant
     Preston, and will therefore grant dismissal of these claims against Defendant Preston as well.  *See*

25   *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding that a court may dismiss an
     action as to nonmoving defendants "where such defendants are in a position similar to that of moving

26   defendants or where claims against such defendants are integrally related").  Because the Court is
     granting dismissal with leave to amend on the causes of action addressed in Defendant Preston's

27   Motion for Summary Judgment, the Court will deny the Motion for Summary Judgment as moot.  *See,*
     *e.g., Freeman v. DirecTV, Inc.*, 457 F.3d, 1001, 1004 (9th Cir. 2006) (affirming ruling where district court

28   granted a "motion to dismiss and ruled that the motion for summary judgment was, therefore, moot").

County Main Jail incorporates the review of at least seven factors, including an inmate's assaultive history and disciplinary history, and jail staff use the "Northpointe" classification software to assist with inmate classification. (*Id.* ¶¶ 24–25.) Following his assessment, Plaintiff was classified by jail staff for housing in the Jail Psychiatric Services ("JPS") unit, which provides psychiatric services to mentally ill inmates including continuous live monitoring inside of cells, single-cell assignments, and more frequent safety cell checks. (*Id.* ¶¶ 41–42.) Plaintiff's jail mental health notes from this time reflect that Plaintiff suffered from serious mental illness, specifically a history of schizoaffective disorder, and unspecified intellectual disabilities. (*Id.* ¶¶ 36–40, 43.) Plaintiff resided in the JPS unit for approximately two weeks, before being discharged from the JPS unit with a recommendation for outpatient psychiatric housing. (*Id.* ¶¶ 44–46.) Doe Defendants 1 to 10 reclassified Plaintiff and assigned him to the jail's general population. (*Id.* ¶ 47.) After Plaintiff was discharged from the JPS unit, his jail mental health notes reflect that he was delusional and believed someone inside his cell was hitting him. *(Id.* ¶¶ 49–50.)

The Sacramento County Superior Court found Plaintiff unfit to stand trial on February 22, 2021, and referred Plaintiff to the California Department of State Hospital's Condition Release Program ("CONREP") for a placement recommendation. (*Id.* ¶¶ 51–53.) Based on the CONREP report that was subsequently filed with the Superior Court, the court ordered that Plaintiff be placed at a state hospital pending restoration of his competency on April 5, 2021. (*Id.* ¶ 55.) While awaiting transfer to a state hospital, Plaintiff remained assigned to the jail's general population. (*Id.* ¶ 57.) Plaintiff's jail mental health notes during this time stated that he still appeared to be delusional, and believed people were trying to hit him. (*Id.* ¶ 56.) On August 1, 2021, Doe Defendants 1 to 10 again reclassified Plaintiff to a lower security level. (*Id.* ¶ 58.) The Superior Court scheduled a hearing for September 15, 2021, to check on the status of Plaintiff's transfer to a state hospital, during which the Superior Court noted Plaintiff was number 26 on the waiting list. (*Id.* ¶¶ 59–60.)

3

1   On or about September 24, 2021, Doe Defendants 1 to 10 reassigned Plaintiff
2   to share a cell with Lemar Burleson.  (*Id.* ¶ 61.)  Burleson also suffered from mental
3   illness and had previously been housed in total separation housing based on
4   statements that he wanted to kill white people,[2] and threats to assault any inmate he
5   was housed with.  (*Id.* ¶¶ 61–63.)  Plaintiff's jail mental health notes from September
6   24, 2021, state that Plaintiff got a new cellmate, but it was "not working out too well,"
7   and that Plaintiff remarked, "if he gets physical I'll have to defend myself."  (*Id.* ¶ 64.)
8   On or about September 26, 2021, Burleson attacked Plaintiff inside of their
9   shared cell.  (*Id.* ¶ 65.)  Approximately 30 minutes after the attack, Burleson used an
10  emergency button to activate the intercom inside of the cell to call jail staff,
11  whereupon Burleson informed the control officer that responded to the call that he
12  "might have killed" Plaintiff.  (*Id.* ¶¶ 69–70.)  The control officer relayed this message to
13  Sacramento County Sheriff's Deputies on the floor, Defendants Paredes and McLean,
14  who walked to Plaintiff's cell, looked through the cell door window, and observed
15  Plaintiff lying on the ground with a pool of blood around his head and blood leaking
16  out from under the cell door.  (*Id.* ¶¶ 71, 73–74.)  Defendants Paredes and McLean left
17  the scene and returned approximately one minute later with Defendant Haynes, a
18  Sacramento County Sheriff's Sergeant.  (*Id.* ¶¶ 75–76.)  Defendants Paredes and
19  McLean opened the cell door, detained Burleson, and escorted him out of the cell.
20  (*Id.* ¶ 77.)  Two additional Sacramento County Sheriff's Deputies, Defendants Higley
21  and Preston, arrived at the cell.  (*Id.* ¶ 78.)  Defendants Haynes, Higley, and Preston
22  stood outside the cell and looked at Plaintiff bleeding on the ground for
23  approximately two minutes before medical personnel arrived at the scene.  (*Id.* ¶¶ 79–
24  82.)  Defendants Higley and Preston entered the cell, dragged Plaintiff's body out of
25  the cell, and medical personnel tended to Plaintiff.  (*Id.* ¶¶ 81–82.)  Plaintiff was
26  transported to the hospital, where he was placed into a medically induced coma.  (*Id.*
27
28  [2] Plaintiff does not allege his race.

4

¶ 83.)  Plaintiff alleges he sustained catastrophic injuries as a result of the attack, including "permanent injuries to his brain from which there is no prognosis that he will recover." (*Id*. ¶ 84.)  Plaintiff is receiving continuous medical care, which he is expected to require for the remainder of his life.  (*Id*. ¶ 88.)  Burleson was charged with attempted murder, and Plaintiff was granted compassionate release from custody.  (*Id*. ¶¶ 85–86.)

Plaintiff brought this action on January 26, 2022,[3] asserting ten causes of action for (1) deliberate indifference under the Fourteenth Amendment and 42 U.S.C. § 1983 against the County Defendants; Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston; and Doe Defendants 1 to 20; (2) failure to provide timely restorative treatment under the Fourteenth Amendment and 42 U.S.C. § 1983 against Doe Defendants 1 to 20; (3) violations of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, against the County Defendants; Defendant Regents of the University of California; and the State Defendants; (4) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, against the County Defendants; Defendant Regents of the University of California; and the State Defendants; (5) deliberate indifference under Cal. Const. art. I, § 7(a) against the County Defendants; Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston; Defendant Regents of the University of California; the State Defendants; and Doe Defendants 1 to 20; (6) failure to provide timely restorative treatment under Cal. Const. art. I, § 7(a) against the State Defendants; and Doe Defendants 1 to 20; (7) right to medical care/treatment under Cal. Gov. Code § 845.6 against the County Defendants; Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston; Defendant Regents of the University of California; the State Defendants; and Doe Defendants 1 to 20; (8) breach of mandatory duty under Cal. Gov. Code § 815.6 against the State Defendants; (9) violations of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1,

---

[3] This action was transferred to the undersigned on April 23, 2023.  (ECF No. 72.)

against the County Defendants; Defendants Jones, Haynes, Paredes, McLean, Higley,
and Preston; Defendant Regents of the University of California; the State Defendants;
and Doe Defendants 1 to 20; and (10) negligence against the County Defendants;
Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston; Defendant Regents
of the University of California; the State Defendants; and Doe Defendants 1 to 20.
(FAC ¶¶ 116–186.)

The County Defendants and Defendants Jones, Haynes, Paredes, McLean, and
Higley filed a Motion to Dismiss on September 19, 2022, seeking dismissal of Plaintiff's
first cause of action against Defendants Haynes, Paredes, McLean, and Higley; third
cause of action against the County Defendants; fourth cause of action against the
County Defendants; fifth cause of action in its entirety; seventh cause of action against
Defendants Jones, Haynes, Paredes, McLean, and Higley; ninth cause of action in its
entirety; and tenth cause of action against Defendants Jones, Haynes, Paredes,
McLean, and Higley.  (County and Officers' Mot. Dismiss (ECF No. 36).)

The State Defendants filed a Motion to Dismiss on October 21, 2022, seeking
dismissal of all causes of action against the State.  (State's Mot. Dismiss (ECF No. 47).)
Plaintiff and the State subsequently stipulated to dismissal of the fifth through tenth
claims, and dismissal was granted.  (*See* ECF Nos. 50–51.)  Accordingly, the State
withdrew its motion as to those claims.  (ECF No. 53.)  Further, Plaintiff clarified in his
Opposition to the State's Motion to Dismiss that he does not assert any section 1983
claims against the State.  (Opp'n State's Mot. Dismiss (ECF No. 56) at 2–3.)  Thus, the
sole remaining claims against the State Defendants are Plaintiff's third and fourth
causes of action under the Rehabilitation Act and ADA.

Finally, Defendant Preston filed a Motion for Summary Judgment on
September 13, 2023, seeking to dismiss Plaintiff's first, fifth, seventh, ninth, and tenth
causes of action against him.  (Mot. Summ. J. (ECF No. 73).)

A hearing was held on December 14, 2023, with Mark Merin appearing on
behalf of Plaintiff, and Jonathan Paul appearing for the County Defendants and

1  Defendants Jones, Haynes, Paredes, McLean, and Higley; Diana Esquivel appearing

2  for the State Defendants; Adriana Cervantes appearing for Defendant Regents of the

3  University of California; and Heidi Timmons appearing for Defendant Preston.  The

4  matter was submitted.

5  **LEGAL STANDARD**

6  A party may move to dismiss for "failure to state a claim upon which relief can

7  be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

8  lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

9  theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

10  While the court assumes all factual allegations are true and construes "them in the

11  light most favorable to the nonmoving party," *Steinle v. City & County of San*

12  *Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus. v.*

13  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)), if the complaint's allegations do not

14  "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v.*

15  *Iqbal*, 556 U.S. 662, 679 (2009).

16  A complaint need contain only a "short and plain statement of the claim

17  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed

18  factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This rule

19  demands more than unadorned accusations; "sufficient factual matter" must make the

20  claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or

21  formulaic recitations of elements do not alone suffice.  *Id.*  "A claim has facial

22  plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

24  evaluation of plausibility is a context-specific task drawing on "judicial experience and

25  common sense." *Id.* at 679.  However, a court may not assume that the plaintiff "can

26  prove facts that it has not alleged . . . ."  *Associated Gen. Contractors of Cal., Inc. v. Cal.*

27  *State Council of Carpenters*, 459 U.S. 519, 526 (1983).

28  ////

7

A court granting a motion to dismiss a complaint must also decide whether to grant a leave to amend.  Leave to amend should be freely given where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend, and explaining that "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend").  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

## DISCUSSION

## I.    First Cause of Action for Deliberate Indifference

Defendants Haynes, Paredes, McLean, Higley, and Preston (the "Officer Defendants") move to dismiss Plaintiff's first cause of action against them for deliberate indifference under the Fourteenth Amendment[4] and 42 U.S.C. § 1983.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. 14 § 1.  Correctional facilities have an obligation to protect the substantive liberty interests of prisoners, including the liberty interest to adequate healthcare.  *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (concluding "the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees"), *overruled on other*

---

[4] Because Plaintiff was a pretrial detainee at the time of the alleged incidents, his rights derive from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment.  *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), *cert. denied sub nom. Los Angeles County, California v. Castro*, 580 U.S. 1099 (2017).

8

*grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Thus, courts have held that "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  A pretrial detainee's due process right in this regard is violated when a jailer fails to promptly and reasonably procure competent medical aid when the pretrial detainee suffers a serious illness or injury while confined.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (holding prison officials' "deliberate indifference to serious medical needs of prisoners" violates the Cruel and Unusual Punishment Clause of the Eighth Amendment); *Carnell*, 74 F.3d at 979 ("However, even though pretrial detainees claims 'arise under the due process clause [of the Fourteenth Amendment], the [E]ighth [A]mendment guarantees provide a *minimum standard of care* for determining [a prisoner's] rights as a pretrial detainee, including [the prisoner's] rights . . . to medical care.'" (emphasis in original) (quoting *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986))).  In order to establish a plausible claim for failure to provide medical treatment, a plaintiff must show: (1) "a serious medical need, by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted).  There is no question that the Plaintiff in this case has sufficiently alleged a serious medical need.

  To establish the deliberate indifference prong, a plaintiff must allege: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonably available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon v. County of Orange* ("*Gordon I*"),

888 F.3d 1118, 1124–25 (9th Cir. 2018).  With "respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'"  *Castro*, 833 F.3d at 1071 (alteration in original) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).  The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  *Id.* (internal quotation marks omitted) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).  Rather, "[t]he indifference to medical needs must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'"  *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting *Estelle*, 429 U.S. at 105–06).  Thus, the plaintiff must "prove more than negligence but less than subjective intent–something akin to reckless disregard."  *Castro*, 833 F.3d at 1071.

Plaintiff alleges the Officer Defendants failed to provide him with necessary medical care by (1) failing to monitor or detect an inmate-on-inmate assault in Plaintiff's cell for approximately 30 minutes, and (2) failing to provide CPR or other life-saving measures when they arrived at Plaintiff's cell.  (FAC ¶ 118; Opp'n County and Officers' Mot. Dismiss (ECF No. 38) at 3; Opp'n Mot. Summ. J. (ECF No. 76) at 4–5.)

Concerning the failure to monitor Plaintiff's cell for at least 30 minutes, the Court finds that Plaintiff has not clearly alleged which Defendants were responsible for monitoring his cell.  However, Plaintiff does allege that when Burleson alerted the control officer there had been an attack, the control officer in turn relayed that message "to deputies on the floor, Defendants MOISES PAREDES and RONNIE MCLEAN."  (FAC ¶ 71.)  From this, the Court can reasonably infer that Defendants Paredes and McLean may have been responsible for conducting cell checks where Plaintiff was housed.

However, Plaintiff has failed to allege how either Defendant Paredes or McLean acted intentionally with respect to Plaintiff's conditions of confinement.  *See*

*Germaine-McIver v. County of Orange*, No. SACV 16-01201-CJC-GJSx, 2018 WL 6258896, at *9 (C.D. Cal. Oct. 31, 2018) ("[I]f the claim relates to inadequate monitoring of the cell, the question is whether the officer chose the monitoring practice, rather than having just suffered an accident or sudden illness that made him unable to monitor the cell."). Pre-trial detainees "have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." *Gordon v. County of Orange* ("*Gordon II*"), 6 F.4th 961, 973 (9th Cir. 2021). However, Plaintiff has not established a right to visual monitoring of his cell that would require cell checks at less than 30-minute intervals, such that the failure to check during the 30-minute window would itself have been deliberately indifferent. Further, Plaintiff has not established what the standard schedule was at the jail for cell monitoring, or when his cell had been checked the day of his attack. Accordingly, the Court cannot infer that Defendant Paredes or McLean were due to check his cell at some point during the 30-minute interval in question, but failed to do so, or did check his cell during the 30-minute interval but failed to detect that an assault had occurred. Thus, Plaintiff has failed to adequately plead the Officer Defendants were deliberately indifferent in intentionally failing to monitor his cell for 30 minutes. *See Cavanaugh v. County of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 WL 6703592, at *12–13 (S.D. Cal. Nov. 12, 2020) (finding plaintiff failed to allege a deliberate indifference claim when his conclusory allegations that defendants "failed to properly conduct cell checks required to verify an inmate's safety and welfare" were insufficient to create a plausible claim that defendants intentionally chose the conditions of confinement and were not merely negligent).

Plaintiff also alleges the Officer Defendants' decision to not administer medical care during the three minutes they were waiting for medical staff to arrive constituted deliberate indifference. The Court agrees with the Officer Defendants that the officers arriving at the cell may have needed a moment to assess the scene. (Reply County and Officers' Mot. Dismiss (ECF No. 44) at 2–3.) However, the officers in question,

1   particularly Defendants Haynes, Higley, and Preston, allegedly had two minutes to

2   assess and act.  Thus, the Court finds that Plaintiff has sufficiently pled the Officer

3   Defendants made an intentional decision not to provide medical care.

4          However, Plaintiff has failed to satisfy the third and fourth prongs of the

5   deliberate indifference standard.  Specifically, Plaintiff fails to allege that the

6   Defendants were trained in and could have reasonably provided CPR or other life-

7   saving measures. that is, that those measures were "reasonably available".  *Cf. Lemire*

8   *v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1083 (9th Cir. 2013) (holding "officers

9   trained to administer CPR who nonetheless did not do so despite an obvious need"

10  may be liable for deliberate indifference).  Plaintiff also fails to allege that his injury

11  could have been alleviated had CPR or other life-saving measures been administered

12  swiftly.  *Cf. Jett*, 439 F.3d at 1097–98 (reversing summary judgment in favor of doctor

13  when plaintiff presented sufficient evidence demonstrating the doctor's delayed

14  treatment of his fractured thumb cause him further harm).  In particular, concerning

15  the fourth prong, a mere delay in receiving medical treatment, without more, does not

16  constitute "deliberate indifference," unless the plaintiff can show that the delay caused

17  serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *see also*

18  *Hertig v. Cambra*, No. 1:04–CV–5633-ROS, 2009 WL 62126, at *4 (E.D. Cal. Jan. 8,

19  2009) ("[A] delay in receiving medical care, without more, is insufficient to state a claim

20  against a jailor for deliberate indifference unless the plaintiff can show that the delay

21  in treatment harmed him."); *Ortiz v. City & County of San Francisco*, No. 18-cv-07727-

22  HSG, 2020 WL 2793615, at *3-4 (N.D. Cal. May 29, 2020) (holding plaintiff failed to

23  demonstrate the third and fourth elements of his deliberate indifference claim when

24  defendant officers promptly summoned medical care after plaintiff was beaten

25  despite their failure to take any other precautionary actions, and plaintiff failed to

26  plead any injury caused by a delay in receiving treatment).  Given the nature of the

27  injuries it is not obvious that medical intervention by the Officer Defendants (as

28  opposed to trained medical personnel) would have made a difference in terms of the

1    outcome.  To give an example, there is no indication in the First Amended Complaint

2    that the Plaintiff had stopped breathing or that his heart had stopped beating, such

3    that providing CPR would have made a difference.  *Cf. Lemire*, 726 F.3d at 1083.

4           For these reasons, the Court dismisses the first cause of action against the

5    Officer Defendants with leave to amend.

6    **II.   Third and Fourth Causes of Action under the Rehabilitation Act**

7           **and ADA**

8           The County Defendants and the State Defendants move to dismiss Plaintiff's

9    third and fourth causes of action under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*,

10   and ADA, 42 U.S.C. § 12101, *et seq.*

11          In order to state a claim under Title II of the ADA, a plaintiff must allege: (1) he is

12   an individual with a disability; (2) he is otherwise qualified to participate in or receive

13   the benefit of some public entity's services, programs, or activities; (3) he was either

14   excluded from participation in or denied the benefits of the public entity's services,

15   programs, or activities, or was otherwise discriminated against by the public entity;

16   and (4) such exclusion, denial of benefits, or discrimination was by reason of his

17   disability.  *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

18   Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege (1) he is

19   an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he

20   was denied the benefits of the program solely by reason of his disability; and (4) the

21   program receives federal financial assistance.  *Id.* at 1060.  Courts "analyze [a

22   plaintiff's] ADA and Rehabilitation Act claims together because the statutes provide

23   identical 'remedies, procedures and rights,'" *Vos v. City of Newport Beach*, 892 F.3d

24   1024, 1036 (9th Cir. 2018) (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.

25   2000)), and the "cases interpreting either are applicable and interchangeable,"

26   *Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (quoting

27   *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996)).

28   ////

1    Both the ADA and the Rehabilitation Act apply in the context of correctional

2    facilities and prohibit disabled inmates from being excluded from participation in

3    inmate services, programs, or activities, including medical programs.  *See Pierce v.*

4    *County of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008).  A plaintiff can allege disability

5    discrimination in the provision of inmate services, programs, or activities under the

6    ADA or the Rehabilitation Act by pleading either (1) discrimination based on disparate

7    treatment or impact, or (2) denial of reasonable modifications or accommodations.

8    *See Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he

9    ADA not only protects against disparate treatment, it also creates an affirmative duty

10    in some circumstances to provide special, preferred treatment, or 'reasonable

11    accommodation.'").

12    To plead a failure to accommodate under the ADA or Rehabilitation Act, a

13    plaintiff must allege that a public entity knew of plaintiff's disability but failed to

14    provide reasonable accommodations.  *See Robertson v. Las Animas Cnty. Sherriff's*

15    *Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007).  A correctional facility's "deliberate refusal"

16    to accommodate a plaintiff's disability-related needs violates the ADA and the

17    Rehabilitation Act.  *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[T]he

18    alleged deliberate refusal of prison officials to accommodate [plaintiffs] disability-

19    related needs in such fundamentals as mobility, hygiene, medical care, and virtually all

20    other prison programs constituted [an ADA violation]."); *see also Pierce*, 526 F.3d at

21    1221 ("[A]n inmate cannot be categorically excluded from a beneficial prison program

22    based on his or her disability alone.").  However, inadequate or negligent medical

23    treatment alone does not constitute an unlawful failure to accommodate under the

24    ADA or Rehabilitation Act.  *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir.

25    2010) ("The ADA prohibits discrimination because of a disability, not inadequate

26    treatment for disability.").  Rather, a public entity can be liable for damages under the

27    ADA or Rehabilitation Act only "if it intentionally or with deliberate indifference fails to

28    provide meaningful access or reasonable accommodation to disabled persons."  *Mark*

1   *H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  Deliberate indifference requires:

2   (1) "knowledge that a harm to a federally protected right is substantially likely," and

3   (2) "a failure to act upon that likelihood."  *Duvall v. County of Kitsap*, 260 F.3d 1124,

4   1139 (9th Cir. 2001).

5           Plaintiff alleges he had a mental impairment that substantially limited one or

6   more major life activities at all material times, and that he was denied reasonable

7   accommodations for his disability, including (1) necessary care or treatment,

8   (2) transfer to a mental health facility for necessary care or treatment, (3) classification

9   based on his disability, (4) appropriate housing based on his disability, and/or

10  (5) timely restorative treatment.  (FAC ¶¶ 129–30, 135–36.)

11          The County Defendants and State Defendants argue that, while Plaintiff lists

12  numerous accommodations he was denied, he fails to allege he was denied these

13  accommodations *because of* his mental impairment, which is insufficient to maintain a

14  claim under the ADA or Rehabilitation Act.  (County and Officers' Mot. Dismiss at 6–7;

15  State's Mot. Dismiss at 7.)

16          In reply, Plaintiff argues that courts have identified ADA or Rehabilitation Act

17  violations in cases where the denial of medical care is so extreme as to suggest

18  discriminatory refusal to accommodate a disability-related need.  (Opp'n County and

19  Officers' Mot. Dismiss at 5; Opp'n State's Mot. Dismiss at 5–6.)  Plaintiff argues that his

20  allegations are even more egregious than those pled in *Atayde v. Napa State Hospital*,

21  255 F. Supp. 3d 978 (E.D. Cal. 2017), in which the court found that plaintiff had stated

22  a viable ADA and Rehabilitation Act claim.  Plaintiff argues the Court should follow the

23  court's reasoning in *Atayde* and recognize a cause of action under the ADA and

24  Rehabilitation Act here.

25          In *Atayde*, plaintiff alleged that decedent, her son, was substantially denied

26  mental health services while in pretrial detention despite his psychotic behavior,

27  resulting in his suicide.  255 F. Supp. 3d at 984–85, 1004.  Specifically, plaintiff alleged

28  that when decedent was first detained, he engaged in numerous instances of self-

1   harm, in response to which county staff placed him in safety cells and prescribed him

2   medicine he refused to take, but failed to develop a treatment plan. *Id*. at 985–86.

3   The superior court subsequently ordered decedent be transferred to the trial

4   competency program at the state hospital, but decedent was never transferred. *Id*. at

5   986. Instead, decedent remained in jail and continued to engage in escalating

6   incidents of self-harm, which county staff addressed only by placing him in safety cells.

7   *Id*. A few months later, decedent committed suicide by hanging himself. *Id*. The

8   court found plaintiff had sufficiently pled (1) decedent was detained at the county jail

9   for approximately two months after the issuance of the state court commitment order,

10   either because the county defendants failed to transport and deliver decedent to the

11   hospital, or because the state defendants actively denied decedent's admission to the

12   hospital in a timely manner, and (2) decedent was never provided mental health

13   treatment while he was in county jail. *Id*. at 1003. Based on these allegations, the

14   court held that "defendants' actions deprived decedent of all [state hospital] mental

15   health services" which "suffice[d] to state a failure to accommodate claim under the

16   ADA and Rehabilitation Act." *Id*. at 1004.

17       Here, the Court finds that Plaintiff has failed to state an ADA or Rehabilitation

18   Act claim as to the County Defendants. "[C]ourts have distinguished between claims

19   asserted under the ADA that allege that the medical treatment that a plaintiff received

20   or had access to was inadequate, versus claims alleging that a plaintiff was

21   discriminatorily precluded from access to medical treatment altogether." *Id*. (quoting

22   *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241 (D. Colo. 2009))

23   (recognizing a cause of action for the latter but not the former). Circuit courts have

24   "identified ADA or [Rehabilitation Act] violations in cases where the denial of medical

25   care is so extreme as to suggest discriminatory refusal to accommodate a disability-

26   related need, such as when a disabled detainee is denied a broad range of medical

27   services beyond those necessary for treating his underlying disability" while "other

28   circuit courts have declined to find cognizable ADA or [Rehabilitation Act] claims

16

1    where there is the alleged denial only of those services necessary for addressing a

2    disability . . . ." *Id.* at 1001–02.

3           However, Plaintiff has not alleged he experienced an extreme denial of mental

4    health services while detained at the jail.  Rather, Plaintiff alleges that, upon detention,

5    he was initially housed in the JPS unit, which provides psychiatric treatment for

6    inmates in conjunction with U.C. Davis Health.  (FAC ¶¶ 28–29, 41–44.)  Further, once

7    Plaintiff was discharged into the general population and awaiting transfer to the state

8    hospital, his allegations refer to jail mental health notes over the course of several

9    months, indicating he had some form of ongoing mental health care.  (FAC ¶¶ 49–50,

10   54, 56, 64.)  Finally, while Plaintiff's admission to the state hospital was greatly

11   delayed, as it was in *Atayde*, unlike *Atayde* there is no allegation here that the County

12   Defendants played a part in that delay.  255 F. Supp. 3d at 1003 ("Plaintiff alleges that

13   decedent was not transferred either because the state defendants actively denied

14   decedent's admission to [the state hospital], or because the county defendants failed

15   to transport and deliver decedent to [the state hospital] as ordered.").  Rather,

16   Plaintiff's allegations support the conclusion that Plaintiff's delayed admission to the

17   state hospital was due to the State Defendants' lengthy admission waiting lists.  (FAC

18   ¶¶ 110–15.)  Thus, while the care Plaintiff received from the County Defendants may

19   have been insufficient, there is no evidence of a discriminatory refusal to provide care,

20   and neither the ADA nor the Rehabilitation Act provide a remedy for inadequate

21   treatment alone.  *See Simmons*, 609 F.3d at 1022 ("The ADA prohibits discrimination

22   because of disability, not inadequate treatment for disability."); *see also O'Guinn*, 468

23   Fed. App'x at 653 (concluding that plaintiffs' allegations of inadequate medical care

24   did not state a cognizable ADA or Rehabilitation Act claim after finding that plaintiff

25   did not identify any evidence demonstrating "a total lack of treatment").  Accordingly,

26   Plaintiff's ADA and Rehabilitation Act claims against the County Defendants will be

27   dismissed.

28   ////

1    However, the Court concludes that the Plaintiffs have sufficiently stated ADA

2   and Rehabilitation Act claims against the State Defendants.  Plaintiff has alleged the

3   State Defendants "maintain a policy or custom of placing [incompetent to stand trial

4   ("IST")] inmates on state hospitals admission waiting lists, where delay in admission will

5   take several weeks-to-months and up to a year," and "fail timely to admit IST pretrial

6   detainees to state hospital facilities, in violation of court commitment orders and with

7   deliberate indifference to the rights and safety of IST pretrial detainees."  (FAC ¶¶

8   112–13.)  Courts in this district have found that "the allegation of a *systematic* delay or

9   denial of detainees' medical services–as is the case here with respect to the thousands

10   of committed IST patients who have been denied treatment by [the state hospital]–

11   may be found to demonstrate such wanton disregard for IST patients' care that the

12   outright denial can also be found to be based on the patients' IST disabled status."

13   *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2022 WL 1215234, at *13–

14   14 (E.D. Cal. Apr. 22, 2022) (denying defendant state hospital summary judgment in

15   their favor on plaintiff's ADA and Rehabilitation Act claims because "the undisputed

16   facts on summary judgment in this case establish that defendant was aware that the

17   decedent had been committed to [the state hospital], and yet he was completely

18   denied admission to [the state hospital] for nearly two months," and "it appears that

19   such denials have become systematic within the [state hospital] systems") (emphasis in

20   original).

21    Plaintiff alleges the state court ordered he be transferred to a state hospital

22   pending restoration of his competency on April 5, 2021.  (FAC ¶ 55.)  However, as of

23   the date of his attack, over six months later, he still had not been transferred.  Indeed,

24   Plaintiff alleges the state court scheduled a hearing for September 15, 2021, to check

25   on the status of his transfer to the hospital, during which the court noted Plaintiff was

26   number 26 on the waiting list.  (*Id.* ¶¶ 59–60.)  From this, the Court can infer that the

27   State Defendants were aware of Plaintiff's need to be transferred to the state hospital

28   to receive care but denied Plaintiff admission to the state hospital to receive mental

18

1 health or other broader healthcare services for over six months.  This lengthy delay in

2 providing care, coupled with Plaintiff's allegations that the State Defendants

3 deliberately fail to timely admit IST pretrial detainees to state hospital facilities by, for

4 example, failing to "open more beds for IST patients by shortening the average length

5 of commitment through community treatment after patients have been stabilized at a

6 state hospital," is sufficient to state an ADA and Rehabilitation Act claim at this time.

7 *See Atayde*, 255 F. Supp. 3d at 1004 (holding that plaintiff's allegations defendants

8 deprived him of all state hospital mental health services despite his clear need for

9 treatment and in defiance of a state court order was sufficient to state a failure to

10 accommodate claim under the ADA and Rehabilitation Act).

11       In sum, Plaintiff's third and fourth claims under the Rehabilitation Act and ADA

12 against the County Defendants are dismissed with leave to amend, but the Court

13 declines to dismiss Plaintiff's ADA and Rehabilitation Act claims against the State

14 Defendants at this time.

15 **III.  Fifth Cause of Action for Deliberate Indifference**

16       The County and Officer Defendants seek to dismiss Plaintiff's fifth claim for

17 deliberate indifference under Cal. Const. art. I, § 7(a) in its entirety.

18       Article I, section 7(a) provides, "[a] person may not be deprived of life, liberty,

19 or property without due process of law."  Cal. Const. art. I, § 7(a).

20       Plaintiff brings this deliberate indifference claim for damages based on

21 substantially the same allegations as his first cause of action.  (FAC ¶¶ 139–45.)  The

22 County and Officer Defendants argue Plaintiff's claim must be dismissed pursuant to

23 *Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 329 (2002), in which

24 the California Supreme Court adopted a framework for determining whether a state

25 constitutional provision provides an action for damages, and using this framework,

26 concluded that section 7(a) does not.  (Reply County and Officers' Mot. Dismiss at 5.)

27 The County and Officer Defendants argue that, under *Katzberg*, federal courts have

28 repeatedly declined to recognize a claim for damages under section 7(a), which

19

1    compels dismissal.  (*Id.* at 5–6 (citing *Roy v. County of Los Angeles*, 114 F. Supp. 3d

2    1030, 1041 (C.D. Cal. 2015); *Weaver v. City of Stockton*, No. 2:20-cv-00990-JAM-EFB,

3    2020 WL 5763763, at *8 (E.D. Cal. Sept. 25, 2020); *Cabral v. County of Glenn*, 624 F.

4    Supp. 2d 1184, 1196 (E.D. Cal. Mar. 19, 2009); *Buzayan v. City of Davis Police Dep't*,

5    No. 2:06-cv-01576-MCE-DAD, 2007 WL 2288334, at *8 (E.D. Cal. Aug. 8, 2007)).)

6            Plaintiff argues that the holding in *Katzberg* is inapplicable as the court in

7    *Katzberg* declined to recognize a claim for damages under section 7(a) for a

8    *procedural* due process claim, whereas Plaintiff here is seeking compensation for

9    violations of his *substantive* due process rights.  (Opp'n County and Officers' Mot.

10   Dismiss at 6–7.)  Thus, rather than follow the holding in *Katzberg*, Plaintiff urges the

11   Court to apply the constitutional tort analysis announced in *Katzberg* to his claims to

12   determine whether he may seek damages in this matter.[5]

13           It is well established that the California constitution does not create a

14   "constitutional tort cause of action for damages to remedy an asserted violation of the

15   due process 'liberty' interest under article I, section 7(a)."  *Katzberg*, 29 Cal. 4th at 326;

16   *see also Javor v. Taggart*, 98 Cal. App. 4th 795, 807 (2002) ("It is beyond question that

17   a plaintiff is not entitled to damages for a violation of the due process clause or the

18   equal protection clause of the state Constitution."), *overruled in part on other grounds*

19   *by Leon v. County of Riverside*, 14 Cal. 5th 910 (2023).  Plaintiff argues that the

20   *Katzberg* decision is distinguishable, as Plaintiff here does not seek a remedy for

21   violations of procedural due process.  However, Plaintiff has not cited, and this Court

22   has not found, any court after *Katzberg* that permitted damages for a violation of a

23   plaintiff's liberty interest under section 7(a), whether procedural or substantive.  On

24   the contrary, there are numerous cases where courts have found that plaintiffs were

25   _____

26   [5] That analysis asks: (1) "whether an adequate remedy exists"; (2) "the extent to which a constitutional
     tort action would change established tort law"; and (3) "the nature and significance of the constitutional
     provision."  *Katzberg*, 29 Cal. 4th at 317.  Under this analysis, Plaintiff argues he is entitled to assert a

27   claim for damages under section 7(a) because: (1) alternative remedies under section 1983 are not
     adequate to satisfy his claim; (2) inferring a damages remedy would not substantially change existing

28   tort law; and (3) the due process right is fundamental.  (Opp'n County and Officers' Mot. Dismiss at 8–9.)

not entitled to damages for a substantive violation.  *See, e.g., Doe v. County of Orange*, No. 8:20-cv-00322-JWH-GJS, 2022 WL 18776166, at *12, 15, 29 (C.D. Cal. Dec. 16, 2022) (recommending summary judgment against plaintiff on her claims for food deprivation, cold temperatures, overcrowding, and sleep deprivation while imprisoned under article I, section 7(a) because "[n]umerous federal district courts in California have concluded that a plaintiff cannot recover monetary damages for an asserted violation of Section 7, and thus, any such claim is not cognizable and must be dismissed" (collecting cases)), *adopted in full by* 2023 WL 2064050 (C.D. Cal. Feb. 16, 2023); *Abney v. Cate*, No. 1:10-cv-00334-AWI-SAB, 2013 WL 655132, at *1–2, 5 (E.D. Cal. Feb. 21, 2013) (holding plaintiff was not entitled to damages for the denial of dental care while in prison under article I, section 7(a)); *Brown v. County of Kern*, No. 1:06–cv–00121–OWW–TAG, 2008 WL 544565, at *17 (E.D. Cal. Feb. 26, 2008) (plaintiff could not seek damages directly under article 1, section 7 of the California Constitution for his excessive force claim); *Ley v. State of California*, 114 Cal. App. 4th 1297, 1306–07 (2004) (upholding summary judgment against plaintiff, who alleged he sustained injuries when he was assaulted by another patient at CONREP, including his claim under section 7(a) because "recent cases have held there is no cause of action for damages for violation of article I, section 7, subdivision (a) of the California Constitution").

Plaintiff argues that *Katzberg* was decided based on the availability of alternative remedies for procedural due process violations, and that under *Rios v. County of Sacramento*, 562 F. Supp. 3d 999 (E.D. Cal. 2021) 42 U.S.C § 1983 is not always an adequate alternative remedy.  (Opp'n County and Officers' Mot. Dismiss at 7 (citing *Rios*, 562 F. Supp. 3d at 1023 ("[I]t is far from obvious that damages claims under § 1983 offer an adequate alternative in all cases."))).)  However, the court in *Rios* considered whether damages under the California Constitution were available to plaintiffs who alleged deprivations of their property interest, not their liberty interest, and the court's discussion regarding the adequacy of alternative remedies, i.e.,

1    damages under section 1983, was primarily in relation to the search and seizure

2    provision of the California Constitution (art. I, § 13), wherein the court noted that

3    alternative damages under section 1983 might not be adequate because "section 13

4    imposes 'independent and more exacting standards' than the U.S. Constitution." *Rios*,

5    562 F. Supp. 3d at 1023 (quoting *In re Lance W.*, 37 Cal. 3d 873, 879 (1985)).  Further,

6    while the *Rios* court declined to dismiss plaintiff's claim for damages under section

7    7(a), this was because "no California court has decided whether damages are

8    available to plaintiffs who allege violations of section 7(a), at least not when it comes to

9    property," noting that the court's reasoning in *Katzberg* was limited to liberty interests.

10   *Id.* at 1024.  Thus, given that this case, like *Katzberg*, concerns liberty interests, the

11   court's reasoning in *Rios* does not necessarily indicate that section 1983 is an

12   inadequate alternative remedy here.

13          In any event, Plaintiff also seeks damages under the Bane Act, which is "the

14   California state law analog to section 1983."  *Johnson v. Bay Area Rapid Transit Dist.*,

15   724 F.3d 1159, 1167 (9th Cir. 2013).  The availability of alternative remedies under

16   section 1983 and the Bane Act weighs in favor dismissal here.  *See Reinhardt v. Santa*

17   *Clara Cnty.*, No. C05-05143-HRL, 2006 WL 662741, at *8 (N.D. Cal. Mar. 15, 2006)

18   (dismissing plaintiff's due process claim for damages under section 7(a) because,

19   similar to *Katzberg*, "plaintiff here has alternative remedies available under the Bane

20   Act (Cal. Civ. Code § 52.1), habeas corpus, and 42 U.S.C. § 1983" and "although due

21   process rights are fundamental, creating a new cause of action would substantially

22   alter established tort law in California, which to this date has not recognized such a

23   claim").  Thus, following *Katzberg*, the Court concludes that there is no constitutional

24   tort cause of action for damages to remedy the violation of Plaintiff's due process

25   liberty rights under section 7(a) of the California Constitution.

26   ////

27   ////

28   ////

Therefore, Plaintiff's fifth cause of action for monetary damages under section 7(a) of the California Constitution is dismissed in its entirety.[6]  *See McClelland v. City of Modesto*, No. CV F 09-1031-AWI-DLB, 2009 WL 2982850, at *1 (E.D. Cal. Sept. 14, 2009) (finding that a claim for excessive force under Cal. Const. art. I, § 7 must be dismissed with prejudice to the extent it sought money damages).  This dismissal is without prejudice to Plaintiff bringing a claim under section 7(a) of the California Constitution for injunctive or declaratory relief.

## IV.    Seventh Cause of Action for the Right to Medical Care

Defendant Jones and the Officer Defendants seek to dismiss Plaintiff's seventh cause of action against them for the right to medical care/treatment under Cal. Gov. Code § 845.6.  Section 845.6 reads:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Thus, a sufficient claim under section 845.6 requires three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care.  *Jett*, 439 F.3d at 1099.  "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care."  *Id.* (quoting W*atson v. California*, 21 Cal. App. 4th 836, 841 (1993)).  In addition, "'immediate' does not signify urgent; rather, the obligation to summon immediate medical care requires that the public employee act in a 'timely' manner, so as to prevent further injury."  *Horton v. City of Santa Maria*, 915 F.3d 592, 608 (9th Cir. 2019).

---

[6] Because the County and Officer Defendants' arguments concerning this claim apply equally to the claims against the Defendant Regents of the University of California and Doe 1 to 20, the Court will grant dismissal for the claims against them as well.  *See Silverton*, 644 F.2d at 1345.

1        Further, under California law, "[e]xcept as otherwise provided by statute, a

2  public employee is not liable for an injury caused by the act or omission of another

3  person."  Cal. Gov. Code § 820.8.  Accordingly, as the Ninth Circuit has explained,

4  "supervisory personnel whose personal involvement is not alleged may not be held

5  responsible for the acts of their subordinates under California law."  *Milton v. Nelson*,

6  527 F.2d 1158, 1159 (9th Cir. 1975) (citing Cal. Gov. Code § 820.8); *see also Roberts*

7  *v. Cal. Dep't of Corr.*, No. 2:13–cv–07461–ODW-JCx, 2014 WL 1308506, at *3 (C.D.

8  Cal. Apr. 1, 2014) ("Under California Government Code section 820.8, a public

9  employee is immune from liability for his discretionary acts when a plaintiff fails to

10  allege the public employee's personal involvement.").  However, section 820.8 does

11  not exonerate a public employee from "liability for injury proximately caused by his

12  own negligent or wrongful act or omission."  Cal. Gov. Code § 820.8.  Thus, "§ 820.8

13  does not apply [if] the claims against [defendant] are based on his own supervision

14  and negligence."  *J.M. v. Parlier Unified Sch. Dist.*, No. 1:21-cv-0261-AWI-BAM, 2021

15  WL 5234770, at *3 (E.D. Cal. Nov. 10, 2021); *see also Rodriguez v. County of Los*

16  *Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) ("§ 820.8 is inapplicable because . . .

17  appellees do no rely on vicarious liability, but, rather, rely on the supervisors' culpable

18  action or inaction that proximately caused their injuries.").

19        Plaintiff alleges the Officer Defendants knew or had reason to know that Plaintiff

20  was in need of immediate medical care and failed to take reasonable action to

21  summon such medical care.  (FAC ¶ 155.)  Specifically, Plaintiff argues that the Officer

22  Defendants are liable for their failure to monitor or detect an inmate-on-inmate assault

23  for approximately 30 minutes.  (Opp'n County and Officers' Mot. Dismiss at 9.)

24  Plaintiff also argues that Defendant Jones is liable by way of inadequate supervision

25  and training of the Officer Defendants.  (*Id.* at 10, 14.)

26        Concerning the Officer Defendants, the Court finds that it can infer Defendants

27  Paredes and McLean may have been assigned to monitor Plaintiff's cell based on

28  Plaintiff's allegation that the "control officer relayed LEMAR BURLESON's message to

deputies on the floor, Defendants MOISES PAREDES and RONNIE MCLEAN." (FAC ¶ 71.) However, the Court also finds that Plaintiff has not alleged Defendants Paredes and McLean, or any other named officer, failed to conduct a scheduled safety check or insufficiently conducted a safety check during the 30-minute period in which Plaintiff was attacked. While Plaintiff has established his right to direct view safety checks under *Gordon II*, 6 F.4th at 973, *Gordon II* does not establish Plaintiff's right to visual monitoring of his cell that would require cell checks at less than 30-minute intervals, and Plaintiff's allegation that the Officer Defendants failed to monitor or detect an inmate-on-inmate assault for 30 minutes does not give rise in and of itself to the inference that Defendants Paredes and McLean did not conduct timely safety checks. Thus, Plaintiff has not established that the Officer Defendants knew or had reason to know of the attack on Plaintiff before the control officer alerted them to the attack. Further, Plaintiff's allegations support the conclusion that once the Officer Defendants were made aware of the attack, medical care was promptly summoned. Thus, Plaintiff's seventh cause of action will be dismissed against the Officer Defendants with leave to amend.

Concerning Defendant Jones, Plaintiff alleges he is liable for inadequate supervision and training of the Officer Defendants. As Plaintiff concedes, however, the Officer Defendants promptly summoned medical care when they gained actual knowledge of the attack on Plaintiff. To the extent Plaintiff intends to allege Defendant Jones inadequately supervised and trained the Officer Defendants to conduct direct-view safety checks, Plaintiff has not sufficiently alleged the Officer Defendants failed to conduct timely safety checks or conducted them in an improper manner. Thus, Defendant Jones cannot be held liable on this basis.

Similarly, Plaintiff also brings his seventh claim against Doe Defendants 1 to 10, whom he alleges "knew or had reason to know" that he was in need of immediate medical care and failed to take reasonable action to summon such medical care. (FAC ¶ 155.) Plaintiff alleges "Defendants DOE 1 to 10 knew or should have known that

1   Plaintiff ANTHONY CRAVOTTA II was being attacked but delayed or failed timely to

2   response [sic] to the cell and to prevent or stop LEMAR BURLESON's attack on Plaintiff

3   ANTHONY CRAVOTTA II."  (FAC ¶ 68.)  However, these allegations suffer from the

4   same problem as Plaintiff's allegations against the Officer Defendants; Plaintiff

5   concludes that Doe Defendants 1 to 10 "knew or had reason to know" of the attack on

6   Plaintiff without establishing that Doe Defendants 1 to 10 were assigned to monitor

7   Plaintiff's cell, missed a cell check, or checked his cell incorrectly.  Thus, Plaintiff's

8   allegations do not give rise to any negligent supervision or training claims against

9   Defendant Jones based on Doe Defendants 1 to 10's actions.

10         Accordingly, Plaintiff's seventh cause of action against the Officer Defendants

11   and Defendant Jones is dismissed with leave to amend.

12   **V.    Ninth Cause of Action under the Bane Act**

13         The County Defendants, Officer Defendants, and Defendant Jones seek

14   dismissal of Plaintiff's ninth cause of action for violations of the Bane Act in its entirety.

15         The Bane Act "protects individuals from conduct aimed at interfering with rights

16   that are secured by federal or state law, where the interference is carried out 'by

17   threats, intimidation or coercion.'"  *Reese v. County of Sacramento*, 888 F.3d 1030,

18   1040 (9th Cir. 2018) (quoting *Venegas v. County of Los Angeles*, 153 Cal. App. 4th

19   1230 (2007)).  When a Bane Act claim is based on alleged federal constitutional

20   violations, as here, plaintiffs may rely on the same allegations to prove both that the

21   defendant deprived them of a constitutional right and threatened, intimidated, or

22   coerced them.  *See id.* at 1043 ("[T]he Bane Act does not require the 'threat,

23   intimidation or coercion' element of the claim to be transactionally independent from

24   the constitutional violation alleged.").  But the claim must also rest on factual

25   allegations that would allow an inference the defendant had a specific intent to violate

26   the plaintiff's rights.  *See id.*  "[S]pecific intent" may be shown by demonstrating that

27   the defendant "acted . . . 'in reckless disregard of constitutional or statutory

28   prohibitions or guarantees.'"  *Cornell v. City & County of San Francisco*, 17 Cal. App.

26

1  5th 766, 803–04 (2017), *as modified* (Nov. 17, 2017) (citation omitted); *Reese*, 888

2  F.3d at 1045 ("[A] reckless disregard for a person's constitutional rights is evidence of

3  a specific intent to deprive that person of those rights.").

4         These rules are applicable to claims of deliberate indifference to serious

5  medical needs.  *See Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183,

6  1196 (E.D. Cal. 2018).  Multiple district courts have adopted the position that "a

7  prisoner who successfully proves that prison officials acted or failed to act with

8  deliberate indifference to his medical needs . . . adequately states a claim for relief

9  under the Bane Act" because deliberate indifference claims extend far beyond

10  ordinary tort claims and have been "associated with affirmatively culpable conduct."

11  *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898–99 (N.D. Cal. 2013); *see also*

12  *Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018); *Lapachet*, 313 F.

13  Supp. 3d at 1195; *Est. of Neil v. County of Colusa*, No. 2:19-cv-4291745-TLN-DB, 2022

14  WL 4291745, at *9–10 (E.D. Cal. Sept. 16, 2022).  While the Supreme Court of

15  California has not yet ruled on the issue, the California Court of Appeal has found that

16  in the context of Bane Act claims based upon allegations of unlawful arrest, "there is

17  no need for a plaintiff to allege a showing of coercion independent from the coercion

18  inherent in the seizure or use of force."  *Cornell*, 17 Cal. App. 5th at 802 n.31.  That

19  holding in *Cornell* cited with approval to *M.H.*, 90 F. Supp. 3d at 898–99, suggesting

20  the court agreed with extending its reasoning to claims of deliberate indifference to

21  serious medical needs as well.  *See Cornell*, 17 Cal. App. 5th at 802 n.31.  Accordingly,

22  this Court is persuaded by *Cornell* and the numerous district court cases which have

23  relied on *Cornell*'s reasoning to find a Bane Act claim may be based on deliberate

24  indifference to serious medical needs.  *See, e.g., Shoar v. County of Santa Clara*, No.

25  22-cv-00799-WHA, 2022 WL 10177673, at *3 (N.D. Cal. Oct. 17, 2022).

26         Here, Plaintiff argues his deliberate indifference to serious medical needs

27  claims against the Officer Defendants also give rise to Bane Act claims.  (Opp'n

28  County and Officers' Mot. Dismiss at 10–11.)  Plaintiff also argues the Officer

1   Defendants' violations of the Bane Act give rise to supervisory liability for Defendant

2   Jones.  (*Id.*)  Finally, Plaintiff alleges the County Defendants' customs and policies

3   resulted in his inappropriate cell assignment, inadequate mental health care, and

4   insufficient cell observation, resulting in their liability under the Bane Act as well.  (*Id.*)

5           Plaintiff does not allege threats, coercion, or intimidation on the part of any

6   Defendant.  Plaintiff does, however, allege deliberate indifference by the Officer

7   Defendants, and district courts have found that "a prisoner who successfully proves

8   that prison officials acted or failed to act with deliberate indifference to his medical

9   needs in violation of his constitutional rights . . . adequately states a claim for relief

10  under the Bane Act." *M.H.*, 90 F. Supp. 3d at 899; *see also Lapachet*, 313 F. Supp. 3d

11  at 1195.  However, as held above, Plaintiff has failed to sufficiently plead his deliberate

12  indifference claim against the Officer Defendants.  Thus, the Court finds he has also

13  failed to plead a Bane Act claim against the Officer Defendants, and the Bane Act

14  claim against them is dismissed.  *See Brown v. County of Mariposa*, No. 1:18-cv-01541-

15  LJO-SAB, 2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019) (denying a motion to

16  dismiss a Bane Act claim against certain defendants as to whom the plaintiff had

17  adequately stated a deliberate indifference claim, but dismissing the Bane Act claim

18  against other defendants as to whom plaintiff's allegations were deemed insufficient);

19  *Est. of Miller v. County of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at

20  *18 (E.D. Cal. Oct. 30, 2020) (dismissing Bane Act claims against certain defendants

21  for whom plaintiffs had not sufficiently stated a cognizable claim for deliberate

22  indifference to their serious medical needs).

23          However, this Court declines to dismiss Plaintiff's Bane Act claim against the

24  County Defendants and Defendant Jones.  Although Plaintiff has insufficiently pled

25  deliberate indifference against the Officer Defendants, Plaintiff has pled deliberate

26  indifference against Doe Defendants 1 to 10 for incorrectly classifying and housing

27  him.  (FAC ¶ 118.)  Specifically, Plaintiff alleges "Defendants DOE 1 to 10 re-classified

28  Plaintiff ANTHONY CRAVOTTA II and assigned him to the jail's general population"

1    and "Defendants DOE 1 to 10's re-classification of Plaintiff ANTHONY CRAVOTTA II

2    was inappropriate and dangerous, where Plaintiff ANTHONY CRAVOTTA II's mental

3    health issues and criminal charges heightened the risk to his safety." (*Id.* ¶¶ 47–48.)

4    Plaintiff further alleges that "[o]n August 1, 2021, Defendants DOE 1 to 10 re-classified

5    Plaintiff ANTHONY CRAVOTTA II to a lower security level of 'Medium'" (*id.* ¶ 58), and

6    "[o]n or about September 24, 2021, Defendants DOE 1 to 10 re-assigned Plaintiff

7    ANTHONY CRAVOTTA II to share a cell with LEMAR BURLESON, in the jail's general

8    population" (*id.* ¶ 61).  Finally, Plaintiff alleges "DOE 1 to 10 knew that LEMAR

9    BURLESON (X-Ref. No. 2772546) suffered from mental-illness" and had previously

10   threatened violence against other cellmates.  (*Id.* ¶¶ 62–63.)

11         These allegations are sufficient to state a deliberate indifference claim, as well

12   as a Bane Act claim, as Plaintiff has alleged Doe Defendants 1 to 10 made an

13   intentional decision to reclassify him and house him with Burleson, putting him at risk

14   of assault due to Burleson's documented mental illness and previous threats to other

15   cellmates, and Plaintiff was subsequently assaulted.  *See Berg v. Kincheloe*, 794 F.2d

16   457, 459 (9th Cir. 1986) ("A prisoner may state a section 1983 claim under the eighth

17   and fourteenth amendments against prison officials when those officials acted with

18   'deliberate indifference' or 'reckless disregard' to the threat of serious harm caused by

19   another prisoner."); *Luttrell v. Hart*, No. 5:19-cv-07300-EJD, 2020 WL 5642613, at *4–5

20   (N.D. Cal. Sept. 22, 2020) (plaintiff's allegations that defendant officers failed to

21   provide him with proper classification and housing while also failing to supervise and

22   monitor him despite his complaints that he feared for his safety, leading to his assault

23   by his cellmates, was sufficient to state a deliberate indifference claim as well as a

24   Bane Act claim); *see also Lapachet*, 313 F. Supp. 3d at 1196 (plaintiffs bringing Bane

25   Act claims "must only allege prison officials 'knowingly deprived [them] of a

26   constitutional right or protection through acts that are inherently coercive and

27   threatening,' such as housing a prisoner in an inappropriate cell, failing to provide

28   treatment plans or adequate mental health care, and failing to provide sufficient

1   observations").)  Further, the County Defendants and Defendant Jones have not

2   sought to dismiss Plaintiff's deliberate indifference claims against Doe Defendants 1 to

3   10.

4            The County Defendants and Defendant Jones argue that Plaintiff's Bane Act

5   claim must be dismissed because he did not allege the County Defendants or

6   Defendant Jones had the "specific intent" to deprive Plaintiff of medical care or

7   appropriate housing.  (Reply County and Officers' Mot. Dismiss at 8.)  However, an

8   adequately pled claim for deliberate indifference satisfies the specific intent

9   requirement under the Bane Act.  *See Reese*, 888 F.3d at 1045 ("[A] reckless disregard

10  for a person's constitutional rights is evidence of a specific intent to deprive that

11  person of those rights."); *Luttrell*, 2020 WL 5642613, at *5 (intent element satisfied

12  where plaintiffs alleged deliberate indifference to an inmate's safety).  Plaintiff has

13  adequately stated a deliberate indifference claim against Doe Defendants 1 to 10.

14           Although the exact employment status of Doe Defendants 1 to 10 is unknown,

15  Plaintiff has pled "Defendants DOE 1 to 20 are and/or were agents, contractors, or

16  employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

17  SHERIFF'S DEPARTMENT, SCOTT JONES, REGENTS OF THE UNIVERSITY OF

18  CALIFORNIA, STATE OF CALIFORNIA, and/or CALIFORNIA DEPARTMENT OF STATE

19  HOSPITALS, and acted within the scope of that agency or employment and under

20  color of state law."  (FAC ¶ 19.)  Courts have held that Bane Act claims may be

21  maintained against municipalities based on vicarious liability.  *See Cameron v. Craig*,

22  713 F.3d 1012, 1023 (9th Cir. 2013) (noting with respect to a Bane Act claim that state

23  law imposes liability on counties under the doctrine of *respondeat superior*); *see also*

24  Cal. Gov. Code § 815.2(a).

25           Courts have also held that Bane Act claims against sheriffs can be based on

26  supervisory conduct.  *See, e.g., Johnson v. Baca*, No. 13-cv-04496-MMM-AJWx, 2014

27  WL 12588641, at *16 (C.D. Cal. Mar. 3, 2014) (holding that a Bane Act claim can be

28  asserted against a sheriff on the basis of supervisory conduct); *Neuroth v. Mendocino*

30

*County*, No. 15-cv-03226-NJV, 2016 WL 379806, at *7 (N.D. Cal. Jan. 29, 2016) ("Based on the allegations in the complaint related to the Deputy Sheriffs' actions and the allegations that Sheriff Allman failed to train his employees and had implemented policies, practices, and customs that led to the [plaintiff's] death, the court finds that [p]laintiff has sufficiently pled a claim against [the Sheriff] in his individual capacity under the Bane Act."). Plaintiff has pled numerous facts related to Defendant Jones's inadequate supervision and training of jail staff regarding classification of and housing of inmates. (*See* FAC ¶ 89 (establishing Defendant Jones was responsible for "training, supervision, and discipline of law enforcement officers acting under his command"); *id*. ¶ 91 (Defendant Jones was "aware that mentally-ill and vulnerable inmates were inappropriately classified and assigned to the general population; that numerous of the inmates housed at the jail were dangerous; and that the jail had insufficient monitoring capabilities, including lack of video and audio observation of inmates in general population"; *id*. ¶ 92 ("[I]nadequate training and supervision of staff at Sacramento County Jail facilities result[ed] in the following deficiencies . . . Failure appropriately to assign inmates suffering from mental-illness[.]"; *id*. ¶ 95 (detailing incidents of inmate-on-inmate violence allegedly due to improper classification).)

Thus, because the County Defendants and Defendant Jones have not challenged Plaintiff's deliberate indifference claim against Doe Defendants 1 to 10, nor have they challenged the availability of supervisory liability or vicarious liability for Doe Defendants 1 to 10's actions, the Court declines to dismiss Plaintiff's Bane Act claim against the County Defendants and Defendant Jones.

Therefore, Plaintiff's ninth cause of action under the Bane Act is dismissed against the Officer Defendants with leave to amend. However, the Court does not dismiss Plaintiff's Bane Act claims against the County Defendants or Defendant Jones.

## VI.   Tenth Cause of Action for Negligence

Finally, the Officer Defendants and Defendant Jones seek dismissal of Plaintiff's tenth cause of action for negligence.

1    In California, a cause of action for negligence requires (1) a legal duty to use

2    reasonable care; (2) breach of that duty; and (3) proximate cause between the breach

3    and (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333,

4    1339 (1998). "In California, prison officials owe detainees a duty to protect them from

5    foreseeable harm." *Cotta v. County of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017);

6    *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016); *Giraldo v. Cal. Dep't of Corr.*

7    *& Rehab.*, 168 Cal. App. 4th 231, 252–53 (2008). This standard requires a much lower

8    level of culpability than deliberate indifference. *See Castro*, 833 F.3d at 1071.

9    Plaintiff alleges that the Officer Defendants had a duty of care and breached

10   that duty when they failed to monitor Plaintiff's cell for 30 minutes, during which time

11   he was attacked, and failed to provide immediate medical attention when they arrived

12   at his cell. (FAC ¶ 180; Opp'n County and Officers' Mot. Dismiss at 12.)

13   While prison officials may owe detainees a duty to protect them from

14   foreseeable harm, Plaintiff has failed to allege how the Officer Defendants breached

15   that duty here, or how that breach caused Plaintiff injury. Plaintiff has not alleged the

16   Officer Defendants failed to conduct direct-view safety checks, or failed to administer

17   life saving measures they were medically trained to administer. Plaintiff has also not

18   alleged how any such measures could have produced a different outcome. Thus,

19   Plaintiff's claim for negligence is dismissed against the Officer Defendants.

20   Plaintiff also alleges that Defendant Jones, as the Sheriff, is "required by statute

21   to take charge of and keep the county jail and the prisoners in it," and is thus

22   "answerable for the prisoner's safekeeping." *Redman v. County of San Diego*, 942

23   F.2d 1435, 1446 (9th Cir. 1991). Plaintiff alleges Defendant Jones negligently

24   supervised and trained jail employees, resulting in jail employees (1) "classif[ying] and

25   assign[ing] housing and cellmates to inmates based on a series of questions that do

26   not adequately assess the dangerous or vulnerable nature of an inmate," (FAC ¶ 91);

27   (2) "fail[ing] to provide necessary medical treatment to inmates," (*id.* ¶ 92); (3) "fail[ing]

28   to comply with the standards set forth by the National Commission on Correctional

1  Health Care," (*id.* ¶ 93); (4) "fail[ing] to consider, analyze, or assess whether an

2  inmate's particular charges make him or her vulnerable to assault by other inmates,"

3  (*id.* ¶ 94); (5) employing "lax supervision of inmates" causing the "failure to provide

4  necessary medical treatment," (*id.* ¶ 96); (6) "inadequate monitoring of inmates," (*id.*

5  ¶ 97); and (6) "delay[ing] investigating the circumstances of in-custody injuries and

6  deaths," (*id.* ¶ 98).  (Opp'n County and Officers' Mot. Dismiss at 13.)

7        The Court declines to dismiss Plaintiff's negligence claim against Defendant

8  Jones.  As Plaintiff has argued, under California law, Defendant Jones is answerable

9  for Plaintiff's safekeeping.  "California case law recognizes the theory that an employer

10  can be liable to a third person for negligently hiring, supervising, or retaining an unfit

11  employee."  *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996).  Plaintiff alleges

12  that Doe Defendants 1 to 10 breached their duty of care towards him when they

13  insufficiently classified and housed him.  Specifically, Plaintiff alleges Doe Defendants

14  1 to 10 assigned him to the jail's general population despite his mental health issues,

15  which heightened the risk to his safety (FAC ¶¶ 47–48), and that Doe Defendants 1 to

16  10 re-assigned him to share a cell with Burleson in the jail's general population

17  despite knowing Burleson suffered from mental-illness and had previously threatened

18  violence against other cellmates (*id.* ¶¶ 61–63).  Two days following Plaintiff's

19  reassignment to a cell with Burleson, he was brutally attacked by Burleson.  (*Id.* ¶ 65.)

20  The Court has previously found these allegations sufficient to state a deliberate

21  indifference claim against Doe Defendants 1 to 10 (*see* Section V *supra*); thus, they are

22  also sufficient to state a negligence claim.  Further,  Defendants have not sought

23  dismissal of Plaintiff's negligence claim against Doe Defendants 1 to 10.

24        Plaintiff's allegations concerning negligent supervision are brief.  However,

25  Plaintiff sufficiently alleges all of the following: Defendant Jones (i) owed a duty of care

26  to Plaintiff and held ultimate responsibility for his safety (*see* FAC ¶ 89); (ii) was in

27  charge of the supervision and training of the staff who worked in jail facilities (*id.*);

28  (iii) had knowledge of the repeated failures of jail staff to provide those held in

33

1    custody with safe housing, including housing outside of the general population when

2    necessary (*id.* ¶¶ 91, 95); and (iv) knew about the safety risk inherent in such errors (*id.*

3    ¶ 95).  Plaintiff alleges that he was not provided safe housing, including by being

4    housed in the general population.  (*Id.* ¶¶ 47–48.)  Plaintiff alleges that, as a result, he

5    experienced the same type of violation about which Defendant Jones had prior notice

6    and on which he failed to act.  (*Id.* ¶¶ 84, 95.)  These allegations are sufficient to state a

7    claim against Defendant Jones for negligent supervision at this juncture.  *See Tyler v.*

8    *County of Los Angeles*, No. LA CV18-01816-JAK-ADSx, 2019 WL 13032149, at *16-17

9    (C.D. Cal. June 10, 2019).

10          Section 820.8 states that "[e]xcept as otherwise provided by statute, a public

11   employee is not liable for an injury caused by the act or omission of another person."

12   Cal. Gov't. Code § 820.8.  Here, however, section 820.8 does not shield Defendant

13   Jones from liability because California law does provide liability for negligent

14   supervision and training.  *See Baca*, 2014 WL 12588641, at *17 (denying a motion to

15   dismiss brought pursuant to section 820.8 because the plaintiff had alleged that the

16   sheriff was liable for negligent supervision or training, not for the acts of his

17   subordinates); *Turano v. County of Alameda*, No. 17-cv-06953-KAW, 2019 WL 501479,

18   at *4 (N.D. Cal. Feb. 8, 2019) (denying motion to dismiss under section 820.8 with

19   respect to a claim of negligent supervision and discipline).

20          Thus, while the Plaintiff's tenth claim for negligence is dismissed against the

21   Officer Defendants with leave to amend, the Court declines to dismiss Plaintiff's

22   negligence claim against Defendant Jones.

23                                      **CONCLUSION**

24          In accordance with the above, it is hereby ordered the Motion to Dismiss (ECF

25   No. 36) brought by Defendants County of Sacramento, Sacramento County Sheriff's

26   Department, Scott Jones, Andrea Haynes, Moises Paredes, Ronnie McLean, and Justin

27   Higley is GRANTED in part, and DENIED in part.  It is further ordered the Motion to

28   Dismiss (ECF No. 47) brought by Defendant State of California, by and through the

California Department of State Hospitals, is DENIED.  Finally, the Motion for Summary Judgment (ECF No. 73) brought by Defendant Bennett Preston is DENIED without prejudice as moot.

Specifically, the Court GRANTS dismissal as to the:

- First cause of action against Defendants Haynes, Paredes, McLean, Higley, and Preston without prejudice;
- Third cause of action against Defendants County of Sacramento and Sacramento County Sheriff's Department without prejudice;
- Fourth cause of action against Defendants County of Sacramento and Sacramento County Sheriff's Department without prejudice;
- Fifth cause of action against Defendants County of Sacramento, Sacramento County Sheriff's Department, Jones, Haynes, Paredes, McLean, Higley, Preston, Regents of the University of California, and Doe 1 to 20 with prejudice;
- Seventh cause of action against Defendants Jones, Haynes, Paredes, McLean, Higley, and Preston without prejudice;
- Ninth cause of action against Defendants Haynes, Paredes, McLean, Higley, and Preston without prejudice;
- Tenth cause of action against Defendants Haynes, Paredes, McLean, Higley, and Preston without prejudice.

The Court DENIES dismissal as to the:

- Third cause of action against Defendants State of California, by and through the California Department of State Hospitals;
- Fourth cause of action against Defendants State of California, by and through the California Department of State Hospitals;
- Ninth cause of action against Defendants County of Sacramento, Sacramento County Sheriff's Department, and Jones; and

////

35

1      • Tenth cause of action against Defendant Jones.

2      Plaintiff is further GRANTED leave to file an amended complaint within 30 days

3  of this order.

4

5      IT IS SO ORDERED.

6  Dated:   **February 14, 2024**

7                                    Hon. Daniel J. Calabretta
                                     UNITED STATES DISTRICT JUDGE

36