1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
                        FOR THE EASTERN DISTRICT OF CALIFORNIA
9
10    ANTHONY CRAVOTTA II,                        No. 2:22-cv-00167-DJC-AC

11                      Plaintiff,
            v.
12                                                ORDER
      COUNTY OF SACRAMENTO, et al.,
13
                        Defendants.
14
15
16          Plaintiff Anthony Cravotta II, a former pretrial detainee in county jail, alleges he

17    was brutally assaulted by his cellmate Lemar Burleson after he had been found

18    mentally incompetent to stand trial and was awaiting transfer to a state hospital.

19    Plaintiff alleges that, as a result of the assault, he sustained catastrophic brain injuries.

20    Plaintiff brings six causes of action in his operative Third Amended Complaint

21    stemming from his detention at the jail and the assault.

22          Defendants, who oversee, operate, and provide mental health services at the

23    jail, have moved to dismiss Plaintiff's claims arguing they are insufficiently pled.

24    Having considered the Parties' arguments and briefings, the Court will dismiss

25    Plaintiff's claims in part.

26                              **FACTUAL BACKGROUND**

27          The factual background of this case is well known to the Parties and is also set

28    forth in the Court's prior Order granting dismissal of Plaintiff's First Amended

                                              1

1  Complaint. (Mot. Dismiss Order (ECF No. 83) at 2–5.) The Court will address Plaintiff's

2  allegations as to specific Defendants as required below.

3                                    **PROCEDURAL BACKGROUND**

4            Plaintiff brought this action on January 26, 2022, asserting ten causes of action

5  in his First Amended Complaint for (1) deliberate indifference under the Fourteenth

6  Amendment and 42 U.S.C. § 1983; (2) failure to provide timely restorative treatment

7  under the Fourteenth Amendment and 42 U.S.C. § 1983; (3) violations of the

8  Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; (4) violations of the Americans with

9  Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (5) deliberate indifference under

10  Cal. Const. art. I, § 7(a); (6) failure to provide timely restorative treatment under Cal.

11  Const. art. I, § 7(a); (7) right to medical care/treatment under Cal. Gov't Code § 845.6;

12  (8) breach of mandatory duty under Cal. Gov't Code § 815.6; (9) violations of the Tom

13  Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1; and (10) negligence. (ECF

14  No. 20.) The Court subsequently dismissed the first, third, fourth, seventh, ninth, and

15  tenth causes of action in part and granted Plaintiff leave to amend. (Mot. Dismiss

16  Order at 35–36.) The Court also dismissed Plaintiff's fifth cause of action with

17  prejudice. (*Id.* at 35.)

18            Plaintiff filed his operative Third Amended Complaint on June 3, 2024,

19  asserting six causes of action for (1) deliberate indifference/special

20  relationship/failure-to-protect under the Fourteenth Amendment and 42 U.S.C.

21  § 1983; (2) violations of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; (3) violations of

22  the ADA, 42 U.S.C. § 12101, *et seq.*; (4) failure to summon medical care under Gov't

23  Code § 845.6; (5) violations of the Bane Act, Civ. Code § 52.1; and (6) negligence

24  against Defendants the County of Sacramento ("County"), Sacramento County Sheriff's

25  Department ("Sheriff's Department"), the Regents of the University of California

26  ("Regents"), the State of California, the California Department of State Hospitals,

27  Sheriff Scott Jones, Christopher Sturgis, Christina Albright-Mundy, Jacob Saesee,

28  Daisy Rollon, Bradley Whiting, Jacquelyn Blevins, Ramandeep Singh, Andrea Haynes,

                                              2

1    Moises Paredes, Ronnie Mclean, Justin Higley, Takuya Noda, Bennett Preston, Nicole

2    Garces-Barrella, Diane Oran, Jaclyn DeCarlo, and Melissa Turner.  (Third Am. Compl.

3    ("TAC") (ECF No. 98) ¶¶ 172–222.)

4         Under submission are three separate motions to dismiss brought under Federal

5    Rules of Civil Procedure 12(b)(6) and 12(b)(1):

6    • The Regents and Defendants Garces-Barrella, Oran, Decarlo, and Turner

7      (collectively, "Regent Defendants") seek dismissal of Plaintiff's first cause

8      of action against Defendants Garces-Barrella, Oran, DeCarlo, and Turner;

9      second and third causes of action against the Regents; fourth cause of

10      action against the Regent Defendants; fifth cause of action against the

11      Regent Defendants; and sixth cause of action against the Regents.

12      (Regent Defs.' Mot. Dismiss (ECF No. 102) at 1–3.)

13    • The County, Sheriff's Department, and Defendants Jones, Sturgis,

14      Albright-Mundy, Rollon, Whiting, Blevins, Singh, Haynes, Paredes,

15      McLean, Higley, and Noda (collectively, "County Defendants") seek

16      dismissal of Plaintiff's first cause of action against Defendants Sturgis,

17      Albright-Mundy, Rollon, Whiting, Blevins, Singh, Haynes, Paredes,

18      McLean, Higley, and Noda; fourth cause of action against the County,

19      Sheriff's Department, and Defendants Jones, Haynes, Paredes, McLean,

20      Higley, and Noda; fifth cause of action against Defendants Sturgis,

21      Albright-Mundy, Rollon, Whiting, Blevins, Singh, Haynes, Paredes,

22      McLean, Higley, and Noda; and sixth cause of action against Defendants

23      Sturgis, Albright-Mundy, Rollon, Whiting, Blevins, Singh, Haynes,

24      Paredes, McLean, Higley, and Noda.  (County Defs.' Mot. Dismiss (ECF

25      No. 103) at 2–3.)

26    • Defendant Saesee seeks dismissal of Plaintiff's first, fifth, and sixth causes

27      of action.  (Saesee Mot. Dismiss (ECF No. 114) at 2.)

28

3

1    The Court held a hearing on October 17, 2024, with Paul Masuhara and Mark

2    Merin appearing for Plaintiff, Adriana Cervantes appearing for the Regent Defendants,

3    and Jill Nathan appearing for the County Defendants and Defendant Saesee.

4    **LEGAL STANDARD**

5    A party may move to dismiss a complaint for "lack of subject matter jurisdiction"

6    under Federal Rule of Civil Procedure 12(b)(1).  "The party asserting federal subject

7    matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm*

8    *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Federal courts are courts of

9    limited jurisdiction, and the "case or controversy" requirement of Article III of the U.S.

10   Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia,

11   that plaintiffs have standing." *Id.* at 1121.  To have Article III standing, a plaintiff must

12   allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the

13   challenged conduct of the defendant, and (3) that is likely to be redressed by a

14   favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

15   A party may also move to dismiss for "failure to state a claim upon which relief

16   can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the

17   complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable

18   legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

19   2008).  The court assumes all factual allegations are true and construes "them in the

20   light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*,

21   919 F.3d 1154, 1160 (9th Cir. 2019).  That said, if the complaint's allegations do not

22   "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v.*

23   *Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain

24   statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

25   8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

26   (2007).  However, this rule demands more than unadorned accusations; "sufficient

27   factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the

28   same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*  "A

4

1  claim has facial plausibility when the plaintiff pleads factual content that allows the

2  court to draw the reasonable inference that the defendant is liable for the misconduct

3  alleged." *Id.*

4      In granting a motion to dismiss, a court must also decide whether to grant leave

5  to amend.  Leave to amend should be freely given where there is no "undue delay,

6  bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the

7  opposing party by virtue of allowance of the amendment, [or] futility of amendment

8  . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*,

9  316 F.3d 1048, 1052 (9th Cir. 2003).  Dismissal without leave to amend is proper only

10 if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex*

11 *Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou*

12 *Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

13                              **DISCUSSION**

14 **I.    The Regent Defendants' Motion to Dismiss**

15       **A.    Relevant Factual Allegations**

16       Plaintiff alleges that, on November 11, 2020, he was arrested and booked into

17 the Sacramento County Main Jail.  (TAC ¶¶ 43–44.)  Plaintiff was subjected to a

18 classification interview, during which he was diagnosed with mental health issues

19 including schizoaffective disorder, prescribed anti-psychotics, and classified for

20 specialized housing in the Jail Psychiatric Services ("JPS") unit.  (*Id.* ¶¶ 45–49, 52, 54.)

21 While in the JPS unit, Plaintiff alleges that jail staff frequently observed and

22 documented him taking a "boxer's stance" or "fighting position" with "fists in the air"

23 and expressing a need to "defend" himself from "threats," including "invisible" and

24 "visible enemies."  (*Id.* ¶ 51.)

25       On December 10, 2020, Defendant Garces-Barrella, a registered nurse,

26 documented in Plaintiff's mental health records that the "problems and conditions

27 identified at the time of admission have been resolved" and "Patient to be discharged

28 to the general population, recommend [outpatient psychiatric ("OPP")] housing."  (*Id.*

1    ¶¶ 24, 57.)  Plaintiff alleges he was subsequently discharged from the JPS unit into

2    general population OPP housing based on Defendant Garces-Barrella's

3    recommendation.  (*Id.* ¶¶ 58–59.)

4        On December 17, 2020, Defendant Oran, a nurse practitioner, conducted a

5    mental health appointment with Plaintiff during which she noted Plaintiff presented as

6    "delusional and continu[ing] to be disorganized."  (*Id.* ¶¶ 25, 62.)  However, Defendant

7    Oran concluded that, "since he is taking his medications and was recently discharged

8    from 2 P this seems to be his baseline."  (*Id.* ¶ 62.)

9        On April 30, 2021, Defendant DeCarlo, a social worker, conducted a mental

10    health appointment with Plaintiff during which he stated he sometimes missed meals

11    because people were trying to hit him, but confirmed he was not being hit physically

12    by his roommate or anyone else in his pod.  (*Id.* ¶¶ 26, 76.)  Defendant DeCarlo noted

13    that "[his] thought process appeared to be delusional as evidenced by [his]

14    endorsment [sic] of AH/VH [auditory hallucinations/visual hallucinations] and

15    perseveration regarding voices, radio frequencies and being attacked."  (*Id.* ¶ 76.)

16        On September 23, 2021, Plaintiff was assigned to share a cell with Burleson.

17    (*Id.* ¶¶ 95–98.)  On September 24, 2021, Defendant Turner, a licensed clinical social

18    worker, conducted a mental health appointment with Plaintiff during which he stated

19    he had a new cellmate and it wasn't working out too well.  (*Id.* ¶¶ 27, 102.)  Defendant

20    Turner asked Plaintiff to elaborate, but he refused, stating he would rather talk to his

21    lawyer about it.  (*Id.* ¶ 102.)  Plaintiff also denied any physical or sexual contact with his

22    cellmate but stated if he got physical "I'll have to defend myself."  (*Id.* ¶ 102.)  On

23    September 26, 2021, Plaintiff was brutally assaulted by Burleson.  (*Id.* ¶ 106.)

24        **B.    First Cause of Action for Deliberate Indifference**

25        The Fourteenth Amendment provides that "[n]o State shall . . . deprive any

26    person of life, liberty, or property, without due process of law."  U.S. Const. amend. 14

27    § 1.  Pretrial detainees at correctional facilities have a protected liberty interest in

28    adequate medical and mental health care under the Fourteenth Amendment.  *See*

1  *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other*

2  *grounds in Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

3  42 U.S.C. § 1983 creates a right of action for the "deprivation of any rights, privileges,

4  or immunities secured by the Constitution and laws" by persons acting under color of

5  state law.  To state a plausible claim for failure to provide adequate medical care, a

6  plaintiff must show: (1) "a serious medical need, by demonstrating that failure to treat

7  a prisoner's condition could result in further significant injury or the unnecessary and

8  wanton infliction of pain," and (2) "the defendant's response to the need was

9  deliberately indifferent."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal

10  quotations and citations omitted).

11  　　　To establish the deliberate indifference prong, a plaintiff must allege: (1) the

12  defendant made an intentional decision with respect to the conditions under which

13  the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of

14  suffering serious harm; (3) the defendant did not take reasonably available measures

15  to abate that risk, even though a reasonable official in those circumstances would

16  have appreciated the high degree of risk involved; and (4) by not taking such

17  measures, the defendant caused the plaintiff's injuries.  *Gordon v. Cnty. of Orange*,

18  888 F.3d 1118, 1124–25 (9th Cir. 2018).  The third element requires that the

19  defendant's conduct be objectively unreasonable.  *Castro*, 833 F.3d at 1071.  The

20  mere lack of due care by a state official does not deprive an individual of life, liberty,

21  or property under the Fourteenth Amendment.  *Id.*  Rather, the plaintiff must "prove

22  more than negligence but less than subjective intent–something akin to reckless

23  disregard."  *Id.*

24  　　　Here, Plaintiff brings deliberate indifference claims against Defendants Garces-

25  Barrella, Oran, DeCarlo, and Turner based on Defendant Garces-Barrella's failure to

26  properly classify and house him, Defendants Garces-Barrella, Oran, DeCarlo, and

27  Turner's failure to provide him with sufficient mental health care, and Defendant

28

1    Turner's failure to protect against and report threats made against Plaintiff.  (TAC

2    ¶ 174.)  The Court will dismiss each of these claims.

3        First, Plaintiff fails to plausibly allege Defendant Garces-Barrella made an

4    intentional decision to improperly classify or house him.  Plaintiff alleges that the

5    County and Sheriff's Department jail staff are responsible for classifying inmates based

6    on information obtained during an inmate's classification interview.  (*Id.* ¶¶ 35–38, 40–

7    42.)  Plaintiff alleges that the County and Sheriff's Department contract with the

8    Regents for the provision of psychiatric/mental health services to inmates housed at

9    jail facilities but does not allege that Regents' employees are responsible for

10   classification of inmates.  (*Id.* ¶ 39.)  Defendant Garces-Barrella is a Regents employee.

11   (*Id.* ¶ 24.)  Plaintiff alleges that he was discharged from the jail's JPS unit to the general

12   population for OPP housing based on Defendant Garces-Barrella's "discharge

13   decision."  (*Id.* ¶ 58.)  However, Plaintiff also alleges he was "discharged and housed

14   without jail staff conducting any classification interview, and that a classification

15   deputy subsequently reviewed Plaintiff's classification file and concluded he was

16   moved without a proper classification interview having been conducted."  (*Id.* ¶ 59.)

17   These allegations imply that the decision to reclassify Plaintiff was made by jail staff

18   employed by the County and the Sheriff's Department, not Defendant Garces-Barrella,

19   as none of Plaintiff's allegations indicate Defendant Garces-Barrella had the authority

20   to reclassify Plaintiff.

21       Even if Defendant Garces-Barrella was responsible for Plaintiff's discharge from

22   the JPS unit, Plaintiff fails to plausibly allege Defendant Garces-Barrella's discharge

23   decision put him at substantial risk of suffering harm.  Defendant Garces-Barrella's

24   notes indicate that many of the issues Plaintiff presented at intake had been resolved,

25   and she recommended he continue to receive psychiatric treatment while in general

26   population housing.  Plaintiff also continued to receive anti-psychotic medication

27   when he was discharged.

28   *////*

8

1    In contrast, cases alleging deliberate indifference claims in the context of

2  psychiatric illnesses typically involve plaintiffs who are "in the midst of an ongoing

3  psychiatric episode that, without immediate medical care, create[] a present and

4  substantial risk of serious harm." *Gilbert v. Turner*, No. 22-56217, 2024 WL 1947137,

5  at *2 (9th Cir. May 3, 2024).  For example, in *Clouthier v. County of Contra Costa*, 591

6  F.3d 1232 (9th Cir. 2010), the court reversed summary judgment on a deliberate

7  indifference claim brought against a mental health worker by the family of a pretrial

8  detainee who committed suicide, reasoning that the mental health worker was "on

9  notice" of the decedent's "depressive, suicidal condition and need for mental health

10  treatment" yet did not take steps to prevent "the risk of harm that he faced if denied

11  medical treatment." *Id.* at 1245.  Similarly, in *Kodimer v. Cnty. of San Diego*, No. 07–

12  CV-2221–BEN (NLS), 2010 WL 2635548 (S.D. Cal. June 30, 2010), the court denied

13  summary judgment on a deliberate indifference claim when the nurse who screened a

14  pretrial detainee at a detention center knew or could have known plaintiff was

15  suffering from a psychotic break but, instead of calling for an immediate psychological

16  evaluation, or directing plaintiff be transported to an emergency psychiatric facility for

17  treatment, simply "handed off Plaintiff to the classification deputy for a housing

18  assignment." *Id.* at *3–4.  Here, Plaintiff's allegations do not clearly indicate that he

19  was a danger to himself or others, or that his placement in OPP housing would

20  dangerously deteriorate his mental state.  Thus, Defendant Garces-Barrella's

21  discharge decision was not deliberately indifferent.

22    As for Defendants Oran and DeCarlo, when they evaluated Plaintiff, they noted

23  that he was delusional, disorganized, and believed people were trying to hit him.

24  Plaintiff alleges these Defendants should have reported Plaintiff's medical needs, and

25  that their failure to do so caused Plaintiff serious harm, including the continued

26  deterioration of his mental health and a heightened risk of safety.  (TAC ¶¶ 63, 65, 77,

27  79.)  However, Plaintiff's conclusory allegations fail to establish that Defendants Oran

28  and DeCarlo put Plaintiff at substantial risk of suffering serious harm as their notes (the

9

1    contents of which are alleged in the Third Amended Complaint) establish Plaintiff had

2    been stabilized in JPS housing, was receiving mental health treatment while in OPP

3    housing, was taking his medication, and was not being physically assaulted or

4    threatened by other inmates.  Thus, as with Defendant Garces-Barrella, there are no

5    plausible allegations Defendants' actions exposed Plaintiff to a risk of deteriorating

6    mental health or a heightened safety risk.

7          Finally, Plaintiff's claim for deliberate indifference against Defendant Turner is

8    inadequately pled.  Defendant Turner conducted a mental health appointment with

9    Plaintiff on September 24, 2021, at which point Plaintiff was sharing a cell with

10   Burleson.  (*See* TAC ¶¶ 95, 98, 102.)  Plaintiff expressed to Defendant Turner that it

11   was not working out well with his new cellmate, and if it got physical, he would have to

12   defend himself.  (*Id.* ¶ 102.)  Plaintiff was assaulted by Burleson two days later.  (*Id.*

13   ¶ 106.)  Plaintiff contends that Defendant Turner is liable for failing to report that

14   Plaintiff felt threatened on September 24 because, had she made that report, the later

15   assault could have been avoided.

16         However, Plaintiff's allegations do not plausibly establish that Defendant Turner

17   could have appreciated that Plaintiff was at a serious risk of harm based on his

18   comments.  First, it is unclear from the Third Amended Complaint whether Defendant

19   Turner, as an employee of the Regents, had access to Burleson's records and thus

20   could have recognized the specific threat that Burleson posed to Plaintiff as his

21   cellmate.  Further, when Defendant Turner followed up with Plaintiff about his

22   comment that things might get physical, Plaintiff declined to elaborate further and

23   denied any physical or sexual contact with Burleson.  (*Id.* ¶ 102.)  Plaintiff's comment

24   that things might get physical, without more, is "too vague to support an inference

25   that [Defendant Turner] was aware of, but failed to address, a legitimate safety

26   concern on behalf of Plaintiff."  *Sisneros v. Krittman*, No. 14cv891 GPC (RBB), 2016 WL

27   11447608, at *4 (S.D. Cal. Feb. 9, 2016), *report and recommendation adopted*, 2016

28   WL 3517600 (S.D. Cal. June 28, 2016).

1    For example, in *Sisneros* the court dismissed failure-to-protect claims brought

2    against mental health professionals by a prisoner after he was attacked by his cellmate

3    when he had allegedly told the professionals that problems could develop if his

4    cellmate didn't receive psychiatric medication, his cellmate engaged in "weird loud

5    angry behavior," and his cellmate displayed "demented" behavior.  *Id.*  The court

6    reasoned that dismissal was appropriate because "Plaintiff's complaints about his

7    cellmate's strange behavior could not establish 'more than a mere suspicion' that an

8    attack might occur" given that plaintiff's cellmate had not made any threats against

9    him and there was no history of prior conflicts between them.  *Id.*  A similar conclusion

10   is compelled here.

11   As Plaintiff has not previously pled deliberate indifference claims against

12   Defendants Garces-Barrella, Oran, DeCarlo, or Turner, the Court will dismiss these

13   claims with leave to amend.

14   **C.    Second and Third Causes of Action under the Rehabilitation Act and**

15   **ADA**

16   Plaintiff alleges the Regents are liable under the Rehabilitation Act and ADA for

17   maintaining policies or customs of action or inaction that resulted in the denial of

18   adequate mental health care to Plaintiff and failure to reasonably accommodate

19   Plaintiff's disabilities.  (TAC ¶¶ 178–89.)

20   The Court finds that Plaintiff has failed to state an ADA or Rehabilitation Act

21   claim for the reasons stated in the Court's prior Order.  (*See* Mot. Dismiss Order at 13–

22   17.)  Specifically, Plaintiff does not allege he was denied mental health care because

23   of his disability, an essential pleading requirement for both ADA and Rehabilitation

24   Act claims.  *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

25   Courts have identified ADA or Rehabilitation Act violations in cases where the denial

26   of medical care is so extreme as to suggest a discriminatory refusal to accommodate a

27   disability-related need.  *See Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1001–

28   02 (E.D. Cal. 2017).  However, Plaintiff has not alleged he experienced an extreme

1   denial of mental health services while in jail.  Rather, he was provided regular mental

2   health care from the time of admission through the time of his assault, even after his

3   discharge from the JPS unit.  (TAC ¶¶ 46, 48-49, 54-58, 62, 66-67, 73, 76, 81.)

4        Indeed, Plaintiff alleges he received several mental health check-ins from

5   Defendants Garces-Barrella, Oran, DeCarlo, and Turner, all Regents employees.  (*Id.*

6   ¶¶ 57, 62, 66, 102.)  While the care Plaintiff received from the Regents and their

7   employees may not have been sufficient, there is no evidence of any discriminatory

8   refusal to provide care, and neither the ADA nor the Rehabilitation Act provide a

9   remedy for inadequate treatment alone.  *See Simmons v. Navajo Cnty.*, 609 F.3d 1011,

10  1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not

11  inadequate treatment for disability."); *see also O'Guinn v. Nev. Dep't of Corr.*, 468 Fed.

12  App'x 651, 653 (9th Cir. 2012) (concluding that plaintiff's allegations of inadequate

13  medical care did not state a cognizable ADA or Rehabilitation Act claim after finding

14  that plaintiff did not identify any evidence demonstrating "a total lack of treatment").

15       Accordingly, Plaintiff's second and third claims under the Rehabilitation Act and

16  ADA against the Regents are dismissed.  As this is the Court's first order regarding

17  these claims, the Court will grant leave to amend.

18      **D.**    **Fourth Cause of Action for Failure to Summon Medical Care**

19       Under California Government Code section 845.6, public entities and public

20  employees are generally not liable for injury proximately caused by the failure of the

21  employee to furnish or obtain medical care for a prisoner in their custody.  Gov't Code

22  § 845.6.  However, a "public employee, and the public entity where the employee is

23  acting within the scope of his employment, is liable if the employee knows or has

24  reason to know that the prisoner is in need of immediate medical care and he fails to

25  take reasonable action to summon such medical care."  *Id.*  Thus, a claim under

26  section 845.6 requires three elements: (1) the public employee knew or had reason to

27  know of the need (2) for immediate medical care, and (3) failed to reasonably summon

28  such care.  *Jett*, 439 F.3d at 1099.  "Liability under section 845.6 is limited to serious

1   and obvious medical conditions requiring immediate care." *Id.* (quoting *Watson v.*

2   *California*, 21 Cal. App. 4th 836, 841 (1993)).  In addition, "'immediate' does not

3   signify urgent; rather, the obligation to summon immediate medical care requires that

4   the public employee act in a 'timely' manner, so as to prevent further injury." *Horton v.*

5   *City of Santa Maria*, 915 F.3d 592, 608 (9th Cir. 2019).

6        Under California law, "once an inmate is receiving medical care, [section] 845.6

7   does not create a duty to provide adequate or appropriate care." *Resendiz v. Cnty. of*

8   *Monterey*, No. 5:14-cv-05495-LHK, 2015 WL 7075694, at *8 (N.D. Cal. Nov. 13, 2015).

9   Liability under section 845.6 attaches only when an employee fails to summon medical

10  care; failure to provide further treatment, or to ensure further diagnosis or treatment,

11  is not actionable under section 845.6.  *See Castaneda v. Dep't of Corr. & Rehab.*, 212

12  Cal. App. 4th 1051, 1072 (2013).  "Thus, once a prisoner is receiving medical care,

13  prison employees are under no further obligation under [section] 845.6." *Pajas v.*

14  *Cnty. of Monterey*, No. 5:16-cv-00945-LHK, 2016 WL 3648686, at *12 (N.D. Cal. July 8,

15  2016); *see also Castaneda*, 212 Cal. App. 4th at 1070 ("Section 845.6 is very narrowly

16  written to authorize a cause of action against a public entity for its employees' failure

17  to summon immediate medical care only, not for certain employee's malpractice in

18  providing that care.").

19       Plaintiff alleges that Defendants Garces-Barrella, Oran, DeCarlo, and Turner

20  failed to summon immediate medical care in violation of section 845.6.  (TAC ¶ 192.)

21  Plaintiff further alleges the Regents are liable for those Defendants' failure to summon

22  medical care under theories of supervisory and vicarious liability.  (*Id.* ¶¶ 193–94.)

23       The Court will dismiss Plaintiff's claims against Defendants Garces-Barrella,

24  Oran, DeCarlo, and Turner.  Plaintiff fails to allege that he was suffering from any

25  immediate medical needs during his interactions with the individual Regent

26  Defendants such that they should have summoned medical care.  (*See id.* ¶¶ 57–58,

27  62, 76, 102.)  At most, Plaintiff's mental health notes indicate he was delusional and

28  had auditory and visual hallucinations.  There is no indication in the notes that his

1    mental health was so dire he was a harm to himself or others.  *Cf. Bock v. Cnty. of*

2    *Sutter*, No. 2:11-cv-00536-MCE-GGH, 2012 WL 3778953, at *17 (E.D. Cal. Aug. 31,

3    2012) (denying dismissal of failure to summon medical care claim when defendants

4    observed plaintiff engaging in acts of self-harm, noted he was refusing his medication,

5    and noted he was severely delusional with suicidal thoughts, all of which resulted in

6    his death).  In addition, the Regent Defendants were already providing Plaintiff with

7    mental health care.  To the extent Plaintiff alleges the treatment the Regent

8    Defendants provided was insufficient, they cannot be held liable for their failure to

9    provide further diagnosis or treatment.

10          Thus, the Court will dismiss Plaintiff's claims for failure to summon medical care

11   against the individual Regent Defendants, and against the Regents based on any

12   theory of vicarious or supervisory liability, with leave to amend.

13          **E.      Fifth Cause of Action under the Bane Act**

14          The Bane Act "protects individuals from conduct aimed at interfering with rights

15   that are secured by federal or state law, where the interference is carried out 'by

16   threats, intimidation or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040

17   (9th Cir. 2018) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230

18   (2007)).  When a Bane Act claim is based on alleged federal constitutional violations,

19   plaintiffs may rely on the same allegations to prove both that the defendant deprived

20   them of a constitutional right and threatened, intimidated, or coerced them.  *See id.* at

21   1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element

22   of the claim to be transactionally independent from the constitutional violation

23   alleged.").  But the claim must also rest on factual allegations that would allow an

24   inference the defendant had a specific intent to violate the plaintiff's rights.  *See id.*

25   "[S]pecific intent" may be shown by demonstrating that the defendant "acted . . . 'in

26   reckless disregard of constitutional or statutory prohibitions or guarantees.'"  *Cornell*

27   *v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803–04 (2017), *as modified* (Nov.

28   17, 2017) (citation omitted); *Reese*, 888 F.3d at 1045 ("[A] reckless disregard for a

1   person's constitutional rights is evidence of a specific intent to deprive that person of

2   those rights.").

3         These rules are applicable to claims of deliberate indifference to serious

4   medical needs.  *See Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183,

5   1196 (E.D. Cal. 2018).  Multiple district courts have adopted the position that "a

6   prisoner who successfully proves that prison officials acted or failed to act with

7   deliberate indifference to his medical needs . . . adequately states a claim for relief

8   under the Bane Act" because deliberate indifference claims extend far beyond

9   ordinary tort claims and have been "associated with affirmatively culpable conduct."

10  *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898–99 (N.D. Cal. 2013); *see also Scalia

11  v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018); *Lapachet*, 313 F. Supp.

12  3d at 1195; *Est. of Neil v. Cnty. of Colusa*, No. 2:19-cv-4291745-TLN-DB, 2022 WL

13  4291745, at *9–10 (E.D. Cal. Sept. 16, 2022).  As previously explained, this Court

14  agrees, and joins the numerous district courts which have found a Bane Act claim may

15  be based on deliberate indifference to serious medical needs.  (*See* Mot. Dismiss

16  Order at 27.)

17        That said, Plaintiff has failed to state Bane Act claims against the Regent

18  Defendants.  Plaintiff pleads his Bane Act claims against Defendants Garces-Barrella,

19  Oran, DeCarlo, and Turner based on their deliberate indifference to Plaintiff's medical

20  needs in violation of the Fourteenth Amendment and Article I, Section 7(a) of the

21  California Constitution, failure to accommodate his disabilities in violation of the ADA

22  and Rehabilitation Act, failure to summon medical care in violation of Government

23  Code section 845.6, and failure to provide adequate health care and screening to

24  Plaintiff in violation of California Code of Regulations title 15 §§ 1207, 1208.  (TAC

25  ¶¶ 199, 201, 203, 206.)  Plaintiff also pleads his Bane Act claim against Defendant

26  Garces-Barrella based on her failure to provide adequate classification and housing to

27  Plaintiff in violation of California Code of Regulations title 15 § 1050.  (*Id.* ¶ 210.)

28

1  Finally, Plaintiff pleads Bane Act claims against the Regents based on theories of

2  supervisory and vicarious liability.  (*Id.* ¶¶ 202, 204, 206, 211–12.)

3       As explained above, Plaintiff has failed to plead deliberate indifference claims

4  against Defendants Garces-Barrella, Oran, DeCarlo, and Turner.  *See* Section I.B

5  *supra*.  Plaintiff has also failed to plead any failure to accommodate his disabilities in

6  violation of the ADA and Rehabilitation Act or any failure to summon medical care in

7  violation of Government Code section 845.6.  *See* Sections I.C–I.D *supra*.  Finally,

8  Plaintiff does not contest that he has failed to plead a Bane Act claim based on alleged

9  violations of sections 1207, 1208, and 1050.  (*See* Opp'n Regents Mot. Dismiss (ECF

10  No. 109) at 13–14.)  Thus, Plaintiff has failed to state a Bane Act claim here.

11       Accordingly, the Court will dismiss Plaintiff's Bane Act claims against the Regent

12  Defendants with leave to amend.

13       **F.    Sixth Cause of Action for Negligence**

14       Finally, the Court will dismiss Plaintiff's negligence claim against the Regents.

15  As a public entity, the Regents are immune from liability for "[a]n injury proximately

16  caused by any prisoner . . . [or] to any prisoner."  Cal. Gov't Code § 844.6(a).  Pretrial

17  detainees are considered "prisoners."  *Id.* § 844.

18       At the time of his injuries Plaintiff was a pretrial detainee, and his injuries were

19  caused by another pretrial detainee.  Thus, section 844.6(a) precludes a negligence

20  claim against the Regents for Plaintiff's injuries.  While it is true that claims brought

21  under Government Code section 845.6 are an exception to this immunity provision,

22  *id.* § 844.6(a), as held in Section I.D *supra*, Plaintiff has failed to plead a cause of action

23  under section 845.6 against the Regents.

24       Thus, Plaintiff's claim for negligence will be dismissed against the Regents with

25  leave to amend.

26  ////

27  ////

28  ////

16

**II.     The County Defendants' Motion to Dismiss**

      **A.     Relevant Factual Allegations**

      Plaintiff alleges he was discharged from the JPS unit to general population outpatient psychiatric ("OPP") housing on December 11, 2020.  (TAC ¶ 58.)  On February 5, 2021, Defendant Sturgis, a classification deputy, conducted a review of Plaintiff's security and housing assignment in general population OPP housing, and failed to reclassify Plaintiff or consider any factors other than that OPP housing was appropriate because the housing had been "without issue" up to that point.  (*Id.* ¶¶ 10, 67–69.)  On July 26, 2021, Defendant Albright-Mundy, a classification deputy, also conducted a classification review of Plaintiff's security and housing assignment and failed to reclassify Plaintiff or consider any factors other than that Plaintiff's current housing assignment in general population OPP housing was appropriate because the housing had been "without issue" up to that point.  (*Id.* ¶¶ 11, 81–83.)

      On September 23, 2021, Defendant Rollon, a records officer, and Defendants Whiting, Blevins, and Singh, law enforcement officers, assigned Plaintiff and Burleson to cell #203.  (*Id.* ¶¶ 13–16, 95–98.)  In so doing, Plaintiff alleges the Defendants "failed to consider or review" either Plaintiff or Burleson's history or potential for compatibility as cellmates.  (*Id.* ¶ 99.)  Plaintiff alleges Defendants "could and should" have learned that housing Plaintiff and Burleson together created a security and safety risk because, for example, jail records identified Plaintiff as "White" and Burleson as "Black," and records demonstrated that Burleson was assaultive, including: "noted at intake that patient said he wanted to kill white people"; "Extreme psych issue// says will assault any cellmates he has"; "Threats to assault anyone he is celled with"; "Burleson is [in total separation] because he has threatened to assault any inmate he is housed with"; and "Inmate has extreme psych issues, said he would assault any inmate he gets."  (*Id.* ¶¶ 99–100.)

      Plaintiff was assaulted by Burleson in cell #203 on September 26, 2021.  (*Id.* ¶ 106.)  Plaintiff alleges that Defendants Paredes, McLean, and Higley, law

enforcement officers, and Defendant Noda, a records officer, were the jail staff responsible for the inmates in the general area of the jail where Plaintiff and Burleson were housed that day, including monitoring inmates via a closed-circuit television ("CCTV") surveillance system and conducting direct visual checks of cells and inmates. (*Id.* ¶¶ 19–22, 108.)  Plaintiff alleges those Defendants were under the supervision of Defendant Haynes, another law enforcement officer.  (*Id.* ¶¶ 18, 108.)

Plaintiff alleges that, about 30 minutes prior to Burleson's assault, Defendant Paredes walked by cell #203 to conduct a direct-view check.  (*Id.* ¶ 109.)  However, Plaintiff alleges Defendant Paredes failed to conduct a sufficient check of cell #203 because he was preoccupied with talking with an inmate-trustee at the time.  (*Id.* ¶ 110.)  Plaintiff also alleges Defendant Paredes generally failed to conduct direct-view checks of cell #203 at random or varied intervals, instead consistently conducting checks of cell #203 at approximately the same time every hour.  (*Id.* ¶ 111.)

After Plaintiff was assaulted, he alleges he was on the ground of his cell bleeding from a headwound and struggling to breathe for about 30 minutes with his blood leaking underneath the cell door.  (*Id.* ¶¶ 114, 116.)  Plaintiff alleges his blood was visible on at least two different CCTV surveillance cameras (*id.* ¶¶ 115–16), although it is unclear who of the Defendants were watching the surveillance cameras. Plaintiff alleges that, more than 22 minutes after the blood was visible on the jail's CCTV cameras, and about 55 minutes after Defendant Paredes's last cell check, Josh Soules, an inmate-trustee, noticed the stream of blood leaking from cell #203 and approached the cell for inspection.  (*Id.* ¶ 120.)  Plaintiff alleges that Burleson observed that Soules had discovered his assault, used the emergency button to activate the intercom inside of the jail, and informed Defendant Noda, who was located in the control area, that he had attacked and "might have killed" Plaintiff.  (*Id.* ¶¶ 121–22.)  Defendant Noda relayed Burleson's message to Defendants Haynes, Paredes, McLean, and Higley.  (*Id.* ¶ 123.)  Defendants Paredes and McLean walked to cell #203, observed Plaintiff lying on the ground in a pool of blood, and then left the

1    scene, returning a minute later with Defendant Haynes. (*Id.* ¶¶ 124–27.) Defendant

2    Higley arrived shortly after. (*Id.* ¶ 129.) Defendants Paredes and McLean escorted

3    Burleson out of the cell, while Defendants Haynes and Higley remained. (*Id.*)

4        Plaintiff alleges that, instead of responding to Plaintiff's medical needs by, for

5    example, placing Plaintiff in a recovery position to aid breathing, or staunching the

6    bleeding from Plaintiff's headwound, Defendants Haynes and Higley stared down at

7    Plaintiff for approximately one minute and 40 seconds, after which Defendant Higley

8    dragged Plaintiff's body out of the cell. (*Id.* ¶¶ 130–37.) At that point, medical

9    personnel arrived on the scene and began to give Plaintiff medical aid. (*Id.* ¶ 138.)

10   Eventually, Plaintiff was transported to the hospital where he was placed in a medically

11   induced coma. (*Id.* ¶ 140.)

12       **B.    First Cause of Action for Deliberate Indifference**

13       Plaintiff brings deliberate indifference claims against Defendants Sturgis,

14   Albright-Mundy, Rollon, Whiting, Blevins, and Singh based on their failure to

15   sufficiently classify and house Plaintiff; against Defendants Haynes, Paredes, McLean,

16   Higley, and Noda for insufficiently monitoring Plaintiff; and against Defendants Haynes

17   and Higley for providing insufficient medical care. (TAC ¶ 174.) As discussed below,

18   the Court will dismiss Plaintiff's deliberate indifference claims against Defendants

19   Sturgis, Albright-Mundy, Paredes, McLean, and Noda. However, the Court declines to

20   dismiss Plaintiff's claims against Defendants Rollon, Whiting, Blevins, Singh, Haynes,

21   and Higley.

22       **1.    Defendants Sturgis and Albright-Mundy**

23       Plaintiff alleges that Defendants Sturgis and Albright-Mundy were deliberately

24   indifferent to his medical needs because they conducted insufficient classification

25   reviews of his security and housing assignment on February 5, 2021, and July 26,

26   2021, when they failed to consider anything other than Plaintiff's housing in general

27   population OPP housing had been without issue up to that point. (TAC ¶¶ 67–69, 81–

28   83, 174.) As explained in Section I.B *supra*, to state a deliberate indifference claim, a

19

1   plaintiff must allege that the defendant did not take reasonably available measures to

2   abate a substantial risk to the plaintiff, even though a reasonable official in those

3   circumstances would have appreciated the high degree of risk involved.  *Gordon,* 888

4   F.3d at 1124–25.

5          Here, the Court does not find Plaintiff's allegations sufficient to demonstrate

6   Defendant Sturgis could have reasonably appreciated a high degree of risk in keeping

7   Plaintiff in general population OPP housing when he conducted the classification

8   review on February 5.  At most, Plaintiff alleges that, between his discharge from the

9   JPS unit into OPP housing on December 11, 2020, and February 5, 2021, he had two

10  mental health appointments, during which mental health professionals documented

11  he appeared delusional but was taking his medication, and noted he "stated that

12  someone is hitting him inside his cell, however, upon further explanation, [he] stated 'I

13  get an electric shock.'"  (TAC ¶¶ 62, 66.)  These notes demonstrate that, while Plaintiff

14  was mentally unwell, he was receiving mental health treatment and medication while

15  in OPP housing.  In addition, Plaintiff's vague statements about receiving an electric

16  shock do not plausibly establish he was at clear risk of physical harm.  Thus, because

17  Plaintiff has not sufficiently pled he was at risk from remaining in general population

18  OPP housing, the Court will dismiss Plaintiff's deliberate indifference claim against

19  Defendants Sturgis.

20         The Court will similarly dismiss Plaintiff's claim against Defendant Albright-

21  Mundy.  In between February 5, 2021, and July 26, 2021, Plaintiff was found

22  incompetent to stand trial and was ordered to be placed at a state hospital pending

23  restoration of his competency.[1]  (*Id.* ¶¶ 70, 74.)  During that period–in which the

24  Plaintiff remained in Sacramento County Main Jail–Plaintiff had several mental health

25  appointments, during which mental health workers documented that a different

26  cellmate had allegedly attacked him at the end of February or beginning of March,

27  ─────────────────────

28  [1] The Third Amended Complaint contains little detail about the state court proceedings that led to this
    determination.

1  but that he had not been attacked since. (*Id.* ¶ 73.)  The workers also documented

2  Plaintiff sometimes missed meals because he believed people were trying to hit him

3  but confirmed that he was not being hit physically by his cellmate or anyone else. (*Id.*

4  ¶ 76.) These allegations are insufficient to demonstrate Defendant Albright-Mundy

5  could have reasonably appreciated a high degree of risk in keeping Plaintiff in general

6  population OPP housing as Plaintiff was still receiving mental health treatment and

7  had not reported any ongoing or imminent safety threats.

8      Thus, the Court will dismiss Plaintiff's deliberate indifference claims against

9  Defendants Sturgis and Albright-Mundy with leave to amend.

10      **2.      Defendants Rollon, Whiting, Blevins, and Singh**

11      Plaintiff alleges Defendants Rollon, Whiting, Blevins, and Singh were

12  deliberately indifferent in housing him with Burleson because they failed to consider

13  Burleson's assaultive history, mental illness, and avowed dislike of white people

14  before assigning Burleson to Plaintiff's cell. (*See* TAC ¶¶ 95–101, 174.)

15      The Court declines to dismiss these claims.  The County Defendants argue that,

16  at the time Plaintiff and Burleson were housed together, there was no history of

17  physical confrontation between them; thus, they argue Defendants could not have

18  known Plaintiff was at risk of imminent harm. (County Defs.' Mot. Dismiss at 7.)

19  However, Plaintiff alleges Defendants Rollon, Whiting, Blevins, and Singh made an

20  intentional decision to house Plaintiff with Burleson without considering Burleson's

21  documented mental illness and previous threats to other cellmates.  The Defendants

22  also failed to consider Plaintiff's own mental health history.  Those decisions plausibly

23  put Plaintiff at risk of assault, and the Court finds these allegations sufficient to support

24  Plaintiff's deliberate indifference claim.  *See, e.g., Estate of Michael McCormack v.*

25  *Cnty. of San Bernardino*, No. EDCV 21-148 JGB (SHKx), 2023 WL 3407141, at *2–5

26  (C.D. Cal. Mar. 23, 2023) (denying motion to dismiss claims that defendants

27  improperly housed plaintiff with his cellmate when the cellmate was mentally ill, had a

28

1    history of violent and assaultive conduct, and plaintiff was also mentally ill and

2    vulnerable to violent inmates).

3         Thus, the Court will not dismiss Plaintiff's deliberate indifference claims against

4    Defendants Rollon, Whiting, Blevins, and Singh.

5         **3.**    **Defendants Haynes, Paredes, McLean, Higley, and Noda**

6         Finally, Plaintiff brings deliberate indifference claims against Defendants

7    Haynes, Paredes, McLean, Higley, and Noda for inadequately monitoring Plaintiff in

8    his cell during and after the assault, and against Defendants Haynes and Higley for

9    providing insufficient medical care when they arrived at his cell after the assault.  (TAC

10    ¶¶ 106–139, 174.)

11         The Court will dismiss Plaintiff's claims against Defendant McLean.  As

12    explained in Section I.B *supra*, to state a deliberate indifference claim, a plaintiff must

13    allege the defendant made an intentional decision with respect to the conditions

14    under which the plaintiff was confined and that those conditions put the plaintiff at

15    substantial risk of serious harm.  *Gordon*, 888 F.3d at 1124–25.  The Court previously

16    dismissed Plaintiff's claims against Defendants Paredes and McLean because Plaintiff

17    failed to allege that either Defendant intentionally failed to monitor his cell, i.e., that

18    they were "due to check his cell at some point during the 30-minute interval [when the

19    assault occurred], but failed to do so, or did check his cell during the 30-minute

20    interval but failed to detect that an assault had occurred."  (*See* Mot. Dismiss Order at

21    11.)  In his Third Amended Complaint, Plaintiff generally alleges that Defendant

22    McLean failed to adequately monitor cell #203 and failed to detect Plaintiff's assault.

23    However, Plaintiff has not alleged that Defendant McLean was due to check Plaintiff's

24    cell and did not, checked the cell inadequately, or was assigned to monitor CCTV

25    footage and failed to do so.  Thus, the Court finds that Plaintiff has failed to allege

26    Defendant McLean acted intentionally with respect to Plaintiff's conditions of

27    confinement.

28

1    The Court will also dismiss Plaintiff's claim against Defendant Paredes.  Plaintiff

2  alleges Defendant Paredes was scheduled to check his cell approximately half an hour

3  before the attack occurred but failed to conduct an adequate check.  However, this is

4  insufficient to establish deliberate indifference.  Plaintiff does not plausibly allege

5  Defendant Paredes's failure to adequately check his cell heightened his risk of assault

6  as neither he nor Burleson were allegedly exhibiting any signs of distress at that point.

7  *Cf. Castro*, 833 F.3d at 1073 (sustaining verdict in plaintiff's favor on deliberate

8  indifference claim when he had pounded on his cell window for a full minute to get a

9  nearby officer's attention, to no avail).  Plaintiff also does not allege Defendant

10  Paredes was scheduled to check his cell in the 30 minutes between when the assault

11  occurred and was detected, or that he failed to do so.  Thus, the Court will dismiss

12  Plaintiff's deliberate indifference claim against Defendant Paredes.

13    Finally, the Court will dismiss Plaintiff's claim against Defendant Noda.  Plaintiff

14  alleges Defendant Noda was responsible for monitoring his cell, including via direct

15  cell checks and CCTV footage, but failed to do so, including by ignoring or failing to

16  detect the blood leaking from underneath Plaintiff's cell door for approximately 22

17  minutes. (TAC ¶¶ 108, 117–23, 174.)  However, Plaintiff fails to plausibly allege how

18  Defendant Noda intentionally failed to monitor his cell.  At most, Plaintiff substantively

19  alleges that Defendant Noda was in the control area when Burleson reported the

20  assault and relayed the reported assault to other jail staff. (*Id*. ¶¶ 122–23.)   These

21  allegations are insufficient to establish Defendant Noda made an *intentional* decision

22  with respect to Plaintiff's conditions of confinement.

23    However, the Court finds that Plaintiff has plausibly alleged deliberate

24  indifference claims against Defendants Haynes and Higley based on their failure to

25  adequately respond to Plaintiff's medical emergency.  The Court previously ruled that

26  Plaintiff failed to state a deliberate indifference claim against either Defendant

27  because Plaintiff failed to allege that "Defendants were trained in and could have

28  reasonably provided CPR or other life-saving measures" and that "his injury could

1  have been alleviated had CPR or other life-saving measures been administered

2  swiftly." (Mot. Dismiss Order at 12.) Plaintiff has amended his pleadings to allege

3  Defendants Haynes and Higley received training related to first aid and CPR, that

4  Defendants could have, but failed to, respond to Plaintiff's medical emergency by

5  placing Plaintiff into a recovery position to aid his breathing or staunching bleeding

6  from his headwound, and that this failure to render medical aid "caused serious harm,

7  including prolonged bleeding and struggle to breathe." (TAC ¶ 130–34.)

8      Defendants argue that Plaintiff has not pled their delay in care exacerbated his

9  brain injury. (County Defs.' Mot. Dismiss at 16, 20.) However, Plaintiff points out that

10  his brain injury is not the only injury for which he can recover damages, as he could

11  also recover for the psychological and physiological distress he suffered as a result of

12  blood and oxygen loss. (Opp'n County Defs.' Mot. Dismiss (ECF No. 108) at 14.) A

13  delay in providing medical treatment can sustain a deliberate indifference claim

14  where the delay has exacerbated the prisoner's injury or unnecessarily prolonged the

15  inmate's pain. *See, e.g., Jett*, 439 F.3d at 1096 (noting indifference may appear when

16  prison officials deny, delay, or intentionally interfere with medical treatment); *Clement*

17  *v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (on a claim of prolonged exposure to

18  pepper-spray fumes found a serious medical need is present whenever the failure to

19  treat a prisoner's condition could result in further significant injury or the unnecessary

20  and wanton infliction of pain). The Court finds that a jury could reasonably conclude

21  Defendants Haynes and Higley prolonged Plaintiff's suffering by failing to promptly

22  address his medical needs.

23      In sum, the Court will dismiss Plaintiff's claims against Defendants Paredes,

24  McLean, and Noda only. This is the Court's second order dismissing Plaintiff's

25  deliberate indifference claims against Defendants Paredes and McLean. (*See* Mot.

26  Dismiss Order at 35.) There is nothing in the briefing that suggests the Plaintiffs could

27  plead additional facts that would cure the defects in the claims against these

28  Defendants, and the Court will dismiss these claims with prejudice. *See Intri-Plex*

1  *Techs., Inc.*, 499 F. 3d at 1056.  However, Plaintiff is granted leave to amend his claim

2  against Defendant Noda.

3        **C.**     **Fourth Cause of Action for Failure to Summon Medical Care**

4        Plaintiff alleges that Defendants Haynes, Paredes, McLean, Higley, and Noda

5  knew or had reason to know that Plaintiff was in need of immediate medical care and

6  failed to summon such care in violation of Government Code section 845.6.  (TAC

7  ¶ 192.)  Plaintiff alleges that the County, Sheriff's Department, and Defendant Jones

8  are liable under theories of municipal/supervisory and vicarious liability.  (*Id.* ¶¶ 193–

9  94.)

10        The Court will dismiss Plaintiff's claims against Defendants Haynes, Paredes,

11  McLean, Higley, and Noda for the reasons set forth in the Court's prior Order: Plaintiff

12  has not sufficiently alleged any of these Defendants knew, or had reason to know, that

13  Plaintiff was in need of immediate medical care during the 30-minute period between

14  when Plaintiff was attacked and the attack was reported.  (Mot. Dismiss Order at 23–

15  25;) *see also* Section II.B *supra*.  Plaintiff has not plausibly alleged the Defendants

16  failed to conduct a scheduled safety check or insufficiently conducted a safety check

17  during that 30-minute period, or that they could have or were monitoring the CCTV

18  footage during that period.  Further, Plaintiff's allegations support the conclusion that

19  once the Defendants were made aware of the attack, medical care was promptly

20  summoned.  (*See* TAC ¶¶ 122–140.)  Thus, Plaintiff's claims will be dismissed.  As this

21  Court has previously dismissed this claim against Defendants Haynes, Paredes,

22  McLean, and Higley, Plaintiff's claims against those Defendants are dismissed without

23  leave to amend.  Plaintiff's claim against Defendant Noda will be dismissed with leave

24  to amend.

25        As Plaintiff's claims against the individual County Defendants are dismissed, the

26  Court also finds Plaintiff's allegations insufficient to sustain his claims against

27  Defendant Jones, the County, and the Sheriff's Department based on supervisory

28

1  liability or vicarious liability.  Accordingly, those claims will also be dismissed with

2  leave to amend.

3          **D.**        **Fifth Cause of Action under the Bane Act**

4        Plaintiff pleads his Bane Act claims against Defendants Sturgis, Albright-Mundy,

5  Rollon, Whiting, Blevins, Singh, Haynes, Paredes, McLean, Higley, and Noda based on

6  their deliberate indifference to his medical needs in violation of the Fourteenth

7  Amendment and Article I, Section 7(a) of the California Constitution, and failure to

8  summon medical care in violation of Government Code section 845.6.  (TAC ¶¶ 199,

9  203.)  Plaintiff also pleads his Bane Act claim against Defendants Haynes, Paredes,

10  McLean, Higley, and Noda based on their failure to provide adequate monitoring and

11  safety checks in violation of Code of Regulations title 15 section 1027.5, and against

12  Defendants Sturgis, Albright-Mundy, Rollon, Whiting, Blevins, and Singh based on

13  their failure to provide adequate classification and housing to Plaintiff in violation of

14  Code of Regulations title 15 section 1050.  (*Id.* ¶¶ 208, 210.)

15        As this Court has previously explained, a Bane Act claim may be based on

16  deliberate indifference to serious medical needs.  *See* Section I.E *supra*.  As held in

17  Section II.B *supra*, Plaintiff has adequately pled claims for deliberate indifference

18  against Defendants Rollon, Whiting, Blevins, Singh, Haynes, and Higley.  Thus, Plaintiff

19  declines to dismiss Plaintiff's fifth cause of action against those Defendants.

20        As to the remaining Defendants Sturgis, Albright-Mundy, Paredes, McLean, and

21  Noda, the Court finds that Plaintiff has inadequately pled any failure to summon

22  medical care in violation of Government Code section 845.6.  *See* Section II.C supra.

23  Thus, those allegations cannot support his Bane Act claim here.  However, Defendants

24  do not challenge Plaintiff's Bane Act claims based on violations of sections 1027.5 and

25  1050.  (*See* Opp'n County Defs.' Mot. Dismiss at 14.)  As Defendants have failed to

26  explain why dismissal of those claims is warranted, the Court will not grant dismissal as

27  to the remaining Defendants.

28  ////

1    Thus, the Court declines to dismiss Plaintiff's fifth cause of action against

2    Defendants Sturgis, Albright-Mundy, Rollon, Whiting, Blevins, Singh, Haynes, Paredes,

3    McLean, Higley, and Noda.

4    **E.    Sixth Cause of Action for Negligence**

5    Finally, Plaintiff brings negligence claims against Defendants Sturgis, Albright-

6    Mundy, Rollon, Whiting, Blevins, Singh, Haynes, Higley, McLean, Paredes, and Noda.

7    (TAC ¶¶ 215–20.)  In California, a cause of action for negligence requires (1) a legal

8    duty to use reasonable care; (2) breach of that duty; and (3) proximate cause between

9    the breach and (4) the plaintiff's injury.  *Mendoza v. City of Los Angeles*, 66 Cal. App.

10   4th 1333, 1339 (1998).  This standard requires a much lower level of culpability than

11   deliberate indifference.  *See Castro*, 833 F.3d at 1071.

12   Here, Plaintiff has adequately pled deliberate indifference claims against

13   Defendants Rollon, Whiting, Blevins, Singh, Haynes, and Higley.  Thus, he has

14   sufficiently pled negligence claims against these Defendants.  *See, e.g., Guy v. Bick*,

15   No. 2:21-CV-00823-WBS-JDP, 2022 WL 1271374, at *3 (E.D. Cal. Apr. 27, 2022),

16   *report and recommendation adopted*, 2022 WL 3358116 (E.D. Cal. Aug. 15, 2022)

17   ("Where a plaintiff alleges sufficient facts to state a § 1983 claim of deliberate

18   indifference, it follows that they have also sufficiently pled a negligence cause of

19   action.").

20   However, the Court finds Plaintiff has inadequately pled negligence claims

21   against Defendants Sturgis, Albright-Mundy, McLean, Paredes, and Noda.  "In

22   California, prison officials owe detainees a duty to protect them from foreseeable

23   harm."  *Cotta v. Cnty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017); *Edison v. United*

24   *States*, 822 F.3d 510, 521 (9th Cir. 2016); *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168

25   Cal. App. 4th 231, 252–53 (2008).  Plaintiff alleges Defendants Sturgis and Albright-

26   Mundy breached their duties when they insufficiently classified and housed Plaintiff,

27   and that Defendants McLean, Paredes, and Noda breached their duties when they

28   insufficiently monitored Plaintiff.  (TAC ¶ 217.)  However, as discussed in Section II.B

27

1    *supra*, Plaintiff's claims are insufficient to conclude Defendants breached any duties.

2    When Defendants Sturgis and Albright-Mundy conducted their classification reviews

3    of Plaintiff, Plaintiff had been housed in general population OPP housing without any

4    notable incidents.  (*See id.* ¶¶ 58–83.)  Thus, there was no foreseeable harm in

5    keeping Plaintiff in OPP housing at that time.  As for Defendants McLean, Paredes, and

6    Noda, Plaintiff has not plausibly alleged they failed to conduct scheduled direct-view

7    safety checks during the assault in question, conducted insufficient safety checks

8    during that time, or failed to monitor CCTV footage of Plaintiff's cell.  *See* Section II.B

9    *supra*.  Thus, as held in this Court's prior order, Plaintiff has failed to state negligence

10   claims on that basis.  (Mot. Dismiss Order at 31–33.)

11        The Court will dismiss Plaintiff's negligence claims against Defendants Sturgis,

12   Albright-Mundy, McLean, Paredes, and Noda only.  As this Court has previously

13   dismissed this claim against Defendants Paredes and McLean on the same grounds,

14   Plaintiff's claims against those Defendants are dismissed without leave to amend.

15   However, Plaintiff's claims against Defendants Sturgis, Albright-Mundy, and Noda will

16   be dismissed with leave to amend.

17   **III.    Defendant Saesee's Motion to Dismiss**

18        **A.    Relevant Factual Allegations**

19        Plaintiff alleges that, on September 20, 2021, Defendant Saesee, a classification

20   deputy, reviewed Burleson's security and housing classification, reclassified his

21   security assignment as "Medium," and housed him in the jail's general population with

22   an OPP designation.  (TAC ¶¶ 91–93.)  Plaintiff alleges that Defendant Saesee

23   reclassified Burleson without considering factors necessary to adequately and safely

24   classify and assign Burleson, including Burleson's jail records which reflected Burleson

25   suffered from mental illness, including schizophrenia and schizoaffective disorder, and

26   was frequently subject to criminal charges and convictions, including for robbery.  (*Id.*

27   ¶¶ 89, 91.)  Burleson's records also demonstrated he had previously been housed by

28   jail staff in total separation housing, where he was frequently documented as being

1  assaultive towards inmates and cellmates and expressed a desire to "kill white

2  people." (*Id.* ¶ 90.)  Plaintiff alleges that Defendant Saesee's failure to adequately

3  classify Burleson caused harm to Plaintiff because Burleson was housed in an

4  inappropriate area of the jail, leading to a heightened security and safety risk, and

5  Burleson was later assigned to share a cell with Plaintiff, where he then assaulted

6  Plaintiff.  (*Id.* ¶¶ 93, 95–97, 106.)

7       **B.     Plaintiff's Standing to Bring Claims Against Defendant Saesee**

8       Defendant Saesee alleges Plaintiff lacks Article III standing to bring claims

9  against him because Plaintiff's injury is not fairly traceable to Defendant Saesee's

10  conduct.  (Saesee Mot. Dismiss at 4.)  Defendant Saesee argues that "the connection

11  between Deputy Saesee's September 20, 2021, classification of Lemar Burleson and

12  the September 26, 2021, attack is far too speculative and attenuated to establish

13  causation," as the Third Amended Complaint "does not allege that defendant Deputy

14  Saesee was involved in the cell assignment for [Plaintiff] or for Burleson." (*Id.* at 5.)

15       The Court finds that Plaintiff has sufficiently alleged standing.  Article III requires

16  only that a plaintiff's injury be fairly traceable to the defendant's conduct.  *See Maya v.*

17  *Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011).  To established standing, plaintiffs

18  "do not bear so heavy a burden," and do not need to "demonstrate that defendants'

19  actions are the 'proximate cause' of plaintiffs' injuries." *Id.*  Rather, all that is required

20  is "a 'line of causation' between defendants' action and their alleged harm that is more

21  than 'attenuated.'" *Id.* (citation omitted).  "A causal chain does not fail simply because

22  it has several 'links,'" *id.*, and a plaintiff need not allege that the defendant was "the

23  sole source of" injury nor "eliminate any other contributing causes," *Barnum Timber*

24  *Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011).  The Court finds Plaintiff's allegations

25  sufficient to meet the Article III standard, as Plaintiff has plausibly pled a line of

26  causation between Defendant Saesee's classification of Burleson, and Burleson's later

27  assault on Plaintiff, as Burleson would not have been in general population, and

28  therefore able to be housed with Plaintiff, without Defendant Saesee's action.

1    Thus, Plaintiff has standing to sue Defendant Saesee.

2    **C.      First Cause of Action for Deliberate Indifference**

3    Plaintiff alleges Defendant Saesee was deliberately indifferent in his

4    classification and housing of Plaintiff. (TAC ¶ 174.) The Court will not dismiss this

5    claim. While Plaintiff's claim should more accurately read Defendant Saesee

6    insufficiently classified *Burleson*, not Plaintiff, the Court finds Plaintiff has plausibly

7    alleged Defendant Saesee reclassified Burleson without considering Burleson's

8    concerning jail records, thereby placing Plaintiff, as well as other inmates in general

9    population housing, at risk of harm. While Defendant Saesee's classification decision

10   may ultimately prove to be too far removed from Plaintiff's harm to meet the causation

11   requirements for a section 1983 claim,[2] the Court notes that causation is ordinarily a

12   factual question ill-suited for considering at the motion to dismiss stage. *See, e.g.,*

13   *Christensen v. Georgia-Pac. Corp.*, 279 F.3d 807, 815–16 (9th Cir. 2001) ("proximate

14   cause is usually a factual decision that should be decided at trial").

15   Thus, the Court finds Plaintiff's allegations minimally sufficient to state a

16   deliberate indifference claim against Defendant Saesee. *See, e.g., Estate of Gonzales*

17   *v. Hickman*, No. ED CV 05-00660 MMM (RCx), 2006 WL 4959780, at *15 (C.D. Cal. Jan.

18   23, 2006) (refusing to dismiss deliberate indifference claim in a case where a

19   correctional officer was fatally stabbed by a prisoner where defendants "created or

20   increased the risk of danger to [the officer]" by "improperly assign[ing] [the prisoner]

21   to a general population," where "[the prisoner]'s misclassification and improper

22   placement created a dangerous condition.").

23   **D.      Fifth Cause of Action under the Bane Act**

24   Plaintiff also pleads a Bane Act claim against Defendant Saesee based on his

25   deliberate indifference to Plaintiff's medical needs. (TAC ¶ 199.) As explained in

26

27   ───────────────

     [2] To prevail on a section 1983 claim under a deliberate indifference theory, the plaintiff must show
     defendant's actions were both the actual and proximate cause of his injuries. *See Lemire v. Cal. Dep't*
28   *of Corr. & Rehab.*, 726 F.3d 1062, 1074, 1080–81 (9th Cir. 2013).

1    Section I.E *supra*, a Bane Act claim may be based on deliberate indifference to serious

2    medical needs.  Plaintiff has sufficiently stated a deliberate indifference claim against

3    Defendant Saesee.  Thus, the Court declines to dismiss Plaintiff's fifth cause of action

4    against Defendant Saesee.

5    **E.    Sixth Cause of Action for Negligence**

6    Finally, Plaintiff pleads a negligence claim against Defendant Saesee based on

7    his insufficient classification and housing of Plaintiff.  (TAC ¶ 217.)  Negligence

8    requires a much lower level of culpability than deliberate indifference such that a

9    deliberate indifference claim will typically sustain a negligence claim.  *See, e.g., Guy*,

10   2022 WL 1271374, at *3.  As Plaintiff has sufficiently stated a deliberate indifference

11   claim against Defendant Saesee, the Court declines to dismiss Plaintiff's negligence

12   claim.

13   **CONCLUSION**

14   In accordance with the above, it is hereby ordered the Regent Defendants'

15   Motion to Dismiss (ECF No. 102) is GRANTED in part and DENIED in part.  It is further

16   ordered that the County Defendants' Motion to Dismiss (ECF No. 103) is GRANTED in

17   part and DENIED in part.  Finally, Defendant Saesee's Motion to Dismiss (ECF No. 114)

18   is DENIED.

19   Specifically, the Court GRANTS dismissal as to the:

20   - First cause of action against Defendants Garces-Barrella, Oran, DeCarlo,
21     Turner, Sturgis, Albright-Mundy, and Noda with leave to amend;

22   - First cause of action against Defendants Paredes and McLean without
23     leave to amend;

24   - Second and third causes of action against the Regents with leave to
25     amend;

26   - Fourth cause of action against Defendants Garces-Barrella, Oran,
27     DeCarlo, Turner, the Regents, Noda, Jones, the County, and the Sheriff's
28     Department with leave to amend;

31

1        • Fourth cause of action against Defendants Paredes, McLean, Haynes,

2          and Higley without leave to amend;

3        • Fifth cause of action against Defendants Garces-Barrella, Oran, DeCarlo,

4          Turner, and the Regents with leave to amend;

5        • Sixth cause of action against Defendants Sturgis, Albright-Mundy, Noda,

6          and the Regents with leave to amend; and

7        • Sixth cause of action against Defendants Paredes and McLean without

8          leave to amend.

9       The Court DENIES dismissal as to Plaintiff's remaining claims.  Plaintiff is

10  granted leave to file an amended complaint within 30 days of this order.  If Plaintiff

11  wishes to add any additional claims or defendants to his amended complaint aside

12  from those specifically contemplated by this Order, Plaintiff must seek the Court's

13  leave to do so pursuant to Federal Rule of Civil Procedure 15.

14

15       IT IS SO ORDERED.

16  Dated:  **February 25, 2025**

17                            Hon. Daniel J. Calabretta

                               UNITED STATES DISTRICT JUDGE

18

19  DJC4 – Cravotta22cv167.SecondMTD

20

21

22

23

24

25

26

27

28