1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT
                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    ANTHONY CRAVOTTA II,                        No. 2:22-cv-00167-DJC-AC

11                        Plaintiff,
          v.
12                                                ORDER
      COUNTY OF SACRAMENTO, et al.,
13
                          Defendants.
14

15

16        Plaintiff Anthony Cravotta II, a former pretrial detainee in county jail, alleges he

17    was brutally assaulted by his cellmate Lemar Burleson after he had been found

18    mentally incompetent to stand trial and was awaiting transfer to a state hospital.

19    Plaintiff alleges that, as a result of the assault, he sustained catastrophic brain injuries.

20    Plaintiff brings six causes of action in his operative Fourth Amended Complaint

21    stemming from his detention at the jail and the assault.

22        Defendants, who oversee, operate, and provide mental health services at the

23    jail, have moved to dismiss certain of Plaintiff's claims arguing they are insufficiently

24    pled.  Defendants have also moved to strike several of Plaintiff's allegations.  Having

25    considered the Parties' arguments and briefings, the Court will dismiss and strike

26    Plaintiff's claims in part.

27    ////

28    ////

                                              1

1

**FACTUAL BACKGROUND**

2          The factual background of this case is well known to the Parties and is also set

3  forth in the Court's prior Order granting dismissal in part of Plaintiff's First Amended

4  Complaint (ECF No. 83 at 2–5), as well as the Court's Order granting dismissal in part

5  of Plaintiff's Third Amended Complaint (Dismissal Order (ECF No. 122) at 5–6, 17–19,

6  28–29.)  The Court will address Plaintiff's allegations as to specific Defendants as

7  required below.

8

**PROCEDURAL BACKGROUND**

9          Plaintiff brought this action on January 26, 2022, filing his Third Amended

10  Complaint on June 3, 2024, for (1) deliberate indifference/special relationship/failure-

11  to-protect under the Fourteenth Amendment and 42 U.S.C. § 1983; (2) violations of

12  the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; (3) violations of the ADA, 42 U.S.C.

13  § 12101, *et seq.*; (4) failure to summon medical care under California Government

14  Code section 845.6; (5) violations of the Bane Act, California Civil Code section 52.1;

15  and (6) negligence against Defendants the County of Sacramento ("County"),

16  Sacramento County Sheriff's Department ("Sheriff's Department"), the Regents of the

17  University of California ("Regents"), the State of California, the California Department

18  of State Hospitals, Sheriff Scott Jones, Christopher Sturgis, Christina Albright-Mundy,

19  Jacob Saesee, Daisy Rollon, Bradley Whiting, Jacquelyn Blevins, Ramandeep Singh,

20  Andrea Haynes, Moises Paredes, Ronnie Mclean, Justin Higley, Takuya Noda, Bennett

21  Preston, Nicole Garces-Barrella, Diane Oran, Jaclyn DeCarlo, and Melissa Turner.

22  (ECF No. 98 ¶¶ 172–222.)  The Court subsequently dismissed the first through sixth

23  causes of action in part with leave to amend.  (Dismissal Order at 31–32.)  The Court

24  also dismissed the first cause of action against Defendants Paredes and McLean,

25  fourth cause of action against Defendants Paredes, McLean, Haynes, and Higley, and

26  sixth cause of action against Defendants Paredes and McLean without leave to amend.

27  (*Id.*)

28  ////

2

1        Plaintiff filed his operative Fourth Amended Complaint on March 14, 2025,

2   asserting the same six causes of action for deliberate indifference, violations of the

3   Rehabilitation Act, violations of the ADA, failure to summon medical care, violations of

4   the Bane Act, and negligence against the County, the Sheriff's Department, the

5   Regents, the State of California, the California Department of State Hospitals, Sheriff

6   Jones, and Defendants Saesee, Rollon, Whiting, Blevins, Singh, Haynes, Higley, Noda,

7   Preston, and Turner.  (Fourth Am. Compl. ("FAC") (ECF No. 124) ¶¶ 7–23, 160–204.)

8   Plaintiff no longer asserts claims against Sturgis, Albright-Mundy, Paredes, McLean,

9   Garcelles-Barrella, Oran, or DeCarlo in his Fourth Amended Complaint.

10       Under submission now are two separate motions to dismiss brought under

11  Federal Rule of Civil Procedure 12(b)(6) and a motion to strike brought under Federal

12  Rule of Civil Procedure 12(f):

13      • The Regents and Defendant Turner (collectively, "Regents Defendants")

14        move to dismiss Plaintiff's first cause of action against Defendant Turner;

15        fifth cause of action against the Regents Defendants; and sixth cause of

16        action against Defendant Turner.  (Regents Defs.' Mot. Dismiss (ECF No.

17        127) at 2.)

18      • The County, Sheriff's Department, Sheriff Jones, and Defendants Saesee,

19        Rollon, Whiting, Blevins, Singh, Haynes, Higley, and Noda (collectively,

20        "County Defendants") move to dismiss Plaintiff's first cause of action

21        against Sturgis, Albright-Mundy, and Defendant Noda; fourth cause of

22        action against the County, Sheriff's Department, Sheriff Jones, and

23        Defendant Noda; fifth cause of action against Sturgis, Albright-Mundy,

24        Paredes, McLean, and Defendant Noda; and sixth cause of action against

25        Sturgis, Albright-Mundy, and Defendant Noda.  (County Defs.' Mot.

26        Dismiss (ECF No. 130) at 2–3.)

27      • The County Defendants move to strike references to Defendants Haynes

28        and Higley from the fourth and fifth causes of action, and references to

1    Paredes and McLean from the first, fourth, and sixth causes of action.

2    (County Defs.' Mot. Strike (ECF No. 131) at 2.)

3    Following the Motion to Strike, Plaintiff filed a Notice of Partial Dismissal of Fourth

4    Claim voluntarily dismissing Defendants Haynes and Higley from the fourth cause of

5    action. (ECF No. 133.) All of the motions were subsequently submitted without oral

6    argument pursuant to Local Rule 230(g) on June 25, 2025. (ECF No. 143.)

7    **LEGAL STANDARD**

8    **I.    Motion to Strike under Federal Rule of Civil Procedure 12(f)**

9    Under Federal Rule of Civil Procedure 12(f), a court may strike "any insufficient

10   defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

11   Civ. P. 12(f). "Motions to strike are generally regarded with disfavor because of the

12   limited importance of pleading in federal practice, and because they are often used as

13   a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F.

14   Supp. 2d 1028, 1033 (C.D. Cal. 2002). When considering a motion to strike, the court

15   views the pleading in the light most favorable to the nonmoving party and will

16   "resolve[ ] any doubt as to the relevance of the challenged allegations or sufficiency of

17   a defense" in the nonmoving party's favor. *Id.* Ultimately, the decision as to whether

18   to strike allegations "lies within the sound discretion of the district court." *Id.*

19   **II.   Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

20   A party may move to dismiss for "failure to state a claim upon which relief can

21   be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint

22   lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

23   theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

24   The court assumes all factual allegations are true and construes "them in the light

25   most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919

26   F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

27   1480, 1484 (9th Cir. 1995)). That said, if the complaint's allegations do not "plausibly

28   give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556

4

1  U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of

2  the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not

3  "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4  However, this rule demands more than unadorned accusations; "sufficient factual

5  matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same

6  vein, conclusory or formulaic recitations of elements alone do not suffice.  *Id.*  "A claim

7  has facial plausibility when the plaintiff pleads factual content that allows the court to

8  draw the reasonable inference that the defendant is liable for the misconduct

9  alleged." *Id.*

10       In granting a motion to dismiss, a court must also decide whether to grant leave

11  to amend.  Leave to amend should be freely given where there is no "undue delay,

12  bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the

13  opposing party by virtue of allowance of the amendment, [or] futility of amendment

14  . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*,

15  316 F.3d 1048, 1052 (9th Cir. 2003).  Dismissal without leave to amend is proper only

16  if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex*

17  *Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou*

18  *Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

19                                    **DISCUSSION**

20  **I.     County Defendants' Motion to Strike**

21       The County Defendants move to strike "impertinent and immaterial" references

22  to Defendants Haynes and Higley, and former defendants Paredes and McLean, in the

23  Fourth Amended Complaint based on the Court's prior dismissal of claims against

24  those Defendants.  (County Defs.' Mot. Strike at 2–6.)  In particular, the County

25  Defendants move to strike references to Defendants Haynes and Higley from

26  paragraphs 178, 180, 182, 183, and 184 in the fourth cause of action, and paragraph

27  191 in the fifth cause of action.  (*Id.* at 5–6.)  They also move to strike references to

28  Paredes and McLean from paragraph 165 in the first cause of action, paragraphs 182

1    and 184 in the fourth cause of action, and paragraphs 200, 202, and 204 in the sixth

2    cause of action.  (*Id.* at 6.)

3        Plaintiff has voluntarily stricken Defendants Haynes and Higley from his fourth

4    cause of action for failure to summon medical care.  (ECF No. 133.)  Thus, the County

5    Defendants' Motion to Strike on that basis is moot.  The Court will, however, strike the

6    reference to Defendants Haynes and Higley in paragraph 191 of Plaintiff's fifth cause

7    of action under the Bane Act, which premises Defendants Haynes and Higley's Bane

8    Act liability on their failure to summon medical care.  (*See* FAC ¶ 191.)  As Plaintiff no

9    longer brings a claim against Defendants Haynes and Higley for failure to summon

10   medical care, he cannot premise his Bane Act claim on that basis.

11       However, the Court declines to strike the allegations as to Paredes and McLean

12   from paragraphs 165, 182, 184, 200, 202, and 204 in the Fourth Amended Complaint.

13   It is clear in the Fourth Amended Complaint that Plaintiff no longer asserts any causes

14   of action against those officers per this Court's prior order.  (*See* FAC ¶¶ 7–23, 160,

15   178, 197; Dismissal Order at 24–25, 28.)  While Plaintiff still references Paredes and

16   McLean in the Fourth Amended Complaint, Plaintiff argues his allegations concerning

17   those officers are relevant to establishing background information and context for his

18   claims against the remaining Defendants.  (Opp'n Mot. Strike (ECF No. 140) at 2–5.)

19   The County Defendants do not rebut Plaintiff's contention that the allegations are at

20   least arguably relevant to Plaintiff's remaining claims.  (*See* Reply Mot. Strike (ECF No.

21   141) at 3–4.)  As the County Defendants have not demonstrated why the allegations

22   against Paredes and McLean are clearly irrelevant or prejudicial, the Court declines to

23   strike them from the Fourth Amended Complaint.

24       In short, the Court will grant the County Defendants' Motion to Strike in part

25   and strike the reference to Defendants Haynes and Higley from paragraph 191 in the

26   Fourth Amended Complaint only.

27   ////

28   ////

1  **II.     The Regents Defendants' Motion to Dismiss**

2       **A.     Relevant Factual Allegations**

3       On November 11, 2020, Plaintiff was arrested and booked on felony charges at

4  the Sacramento County Main Jail. (FAC ¶¶ 36–37.) Jail staff initially classified Plaintiff

5  for specialized housing in the Jail Psychiatric Services ("JPS") unit based on Plaintiff's

6  documented mental health history and his behavior. (*Id.* ¶¶ 40, 45, 48.) For example,

7  on November 16, 2020, Plaintiff's jail mental health notes indicated: "FOSS I"; "Altered

8  Thought Process"; "Serious Mental Illness"; "Schizoaffective [D]isorder"; "2P Pre-

9  Admit"; and "Unspecified intellectual disabilities." (*Id.* ¶ 41.) Plaintiff was also

10  frequently observed "taking a 'boxer's stance' or 'fighting position' with 'fists in the air'

11  and expressing a need to 'defend' himself from 'threats,' including 'invisible' and

12  'visible enemies.'" (*Id.* ¶ 44.) His jail mental health notes stated he had "a history of

13  Schizoaffective Disorder . . . he is clearly psychotic . . . [and is] gravely disabled." (*Id.*

14  ¶ 47.)

15       On December 11, 2020, Plaintiff was discharged from the jail's JPS unit to

16  general population for outpatient psychiatric ("OPP") housing. (*Id.* ¶ 51.) While

17  Plaintiff was housed in OPP housing, mental health professionals employed by the

18  Regents, who contract with the County and Sheriff's Department to provide psychiatric

19  and mental health services at the jail, conducted several mental health appointments

20  with Plaintiff, during which they documented that Plaintiff presented as "delusional

21  and continu[ed] to be disorganized"; that he "stated that someone is hitting him inside

22  his cell, however, upon further explanation . . . stated 'I get an electric shock'"; that he

23  complained he sometimes missed meals because people were trying to hit him; and

24  that he complained that "[t]he officers are in my head and they hit me in my head," but

25  confirmed he was not being hit by his cellmate or anyone else in his pod. (*Id.* ¶¶ 32,

26  53–54, 65.) In March of 2021, Plaintiff's mental health notes also indicated he reported

27  his cellmate had attacked him at the end of February or early March, but that nothing

28  had happened since then. (*Id.* ¶ 62.)

1    Subsequently, on April 5, 2021, Plaintiff was found incompetent to stand trial

2  and was ordered to be transferred to a state hospital pending restoration of his

3  competency.  (*Id.* ¶¶ 63–64.)  A "state hospital hold" notation was placed in Plaintiff's

4  jail records.  (*Id.* ¶ 64.)

5    On September 9, 2021, Burleson was booked into the jail.  (*Id.* ¶ 72.)  Burleson,

6  who had previously been incarcerated, had a documented history of mental illness,

7  "was frequently documented by jail staff as assaultive" towards other

8  inmates/cellmates, and had stated he "wanted to kill white people" and "threatened to

9  assault any inmate he is housed with." (*Id.* ¶¶ 73–74.)  On September 20, 2021, jail

10  staff classified Burleson and housed him in general population with OPP housing.  (*Id.*

11  ¶ 75.)  Burleson was not referred for mental health services, connected with JPS staff,

12  or prescribed any mood-stabilizing medications "despite his documented history of

13  mental illness." (*Id.* ¶ 79.)

14    On September 23, 2021, jail staff removed Plaintiff from his assigned cell

15  because he "stated his cellmate Rodriguez, Jesus X-5187464 (224) was being violent

16  towards him." (*Id.* ¶ 80.)  Plaintiff was reassigned to share a cell with Burleson that

17  same day.  (*Id.* ¶¶ 81–82.)  On September 24, 2021, Defendant Turner, a licensed

18  clinical social worker employed by the Regents, conducted a mental health

19  appointment with Plaintiff during which he stated he had a new cellmate and "[i]t's not

20  working out too well." (*Id.* ¶¶ 20, 86.)  Defendant Turner asked Plaintiff to elaborate,

21  but he refused, stating he would rather talk to his lawyer about it.  (*Id.* ¶ 86.)  Plaintiff

22  also denied any physical or sexual contact with his cellmate but stated if he got

23  physical "I'll have to defend myself." (*Id.*)  Defendant Turner did not report Plaintiff's

24  concerns about Burleson to any jail staff.  (*Id.* ¶ 87.)  However, Plaintiff alleges

25  Defendant Turner had access to Plaintiff and Burleson's records, and that if she had

26  reviewed the records, she would have learned that Plaintiff and Burleson were both

27  severely mentally ill, that Plaintiff was reportedly the victim of two prior assaults by

28  cellmates during his incarceration, that Burleson had a history of violence against

1  other inmates, and that Burleson had not received any medication despite his

2  assaultive history.  (*Id.* ¶¶ 88–89.)  Plaintiff alleges a reasonable official in Defendant

3  Turner's position would have investigated the risk to Plaintiff under the circumstances

4  and reported it.  (*Id.* ¶ 90.)  On September 26, 2021, Plaintiff was brutally assaulted by

5  Burleson in their shared cell.  (*Id.* ¶ 93.)

6        **B.**      **First Cause of Action for Deliberate Indifference**

7        The Fourteenth Amendment provides that "[n]o State shall . . . deprive any

8  person of life, liberty, or property, without due process of law."  U.S. Const. amend. 14

9  § 1.  42 U.S.C. § 1983 creates a right of action for the "deprivation of any rights,

10  privileges, or immunities secured by the Constitution and laws" by persons acting

11  under color of state law.  Pretrial detainees have the right to be free from violence

12  from other inmates, and prison officials therefore have a duty to protect them from

13  such violence.  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016).  To

14  state a plausible claim for failure to protect under the Fourteenth Amendment, a

15  plaintiff must plead and prove that the defendant acted with "deliberate indifference."

16  *Id.* at 1067–68.

17        To establish deliberate indifference, a plaintiff must allege: (1) the defendant

18  made an intentional decision with respect to the conditions under which the plaintiff

19  was confined; (2) those conditions put the plaintiff at substantial risk of suffering

20  serious harm; (3) the defendant did not take reasonably available measures to abate

21  that risk, even though a reasonable official in those circumstances would have

22  appreciated the high degree of risk involved, making the consequences of the

23  defendant's conduct obvious; and (4) by not taking such measures, the defendant

24  caused the plaintiff's injuries.  *Id.* at 1071.  The third element requires that the

25  defendant's conduct be objectively unreasonable.  *Id.*  The mere lack of due care by a

26  state official does not deprive an individual of life, liberty, or property under the

27  Fourteenth Amendment.  *Id.*  Rather, the plaintiff must "prove more than negligence

28  but less than subjective intent–something akin to reckless disregard."  *Id.*

1    Here, Plaintiff brings a deliberate indifference claim against Defendant Turner,

2    alleging Defendant Turner failed to protect Plaintiff by neglecting to review Plaintiff

3    and Burleson's jail records in response to Plaintiff's concerns voiced during his

4    appointment in order to assess any risk posed by Burleson, and then failing to report

5    that risk to jail staff who had the ability to "move monitor or otherwise account for

6    Plaintiff . . . and . . . Burleson." (FAC ¶¶ 91, 162.) The Court previously dismissed

7    Plaintiff's deliberate indifference claim against Defendant Turner, reasoning that

8    Plaintiff's allegations did not "plausibly establish that Defendant Turner could have

9    appreciated that Plaintiff was at a serious risk of harm based on his comments"

10    because it was "unclear from the Third Amended Complaint whether Defendant

11    Turner, as an employee of the Regents, had access to Burleson's records and thus

12    could have recognized the specific threat that Burleson posed to Plaintiff" and

13    because Plaintiff declined to elaborate further when Defendant Turner asked Plaintiff

14    about his comment that "[i]t's not working out too well." (Dismissal Order at 10.)

15    Defendant Turner urges the Court to dismiss this claim again because "[e]ven if, as

16    Plaintiff alleges, Turner had access to [Plaintiff and Burleson's] records, there are no

17    allegations to support an inference that a reasonable person in Turner's position

18    would have or should have reviewed those records" as "Plaintiff's statements were

19    insufficient to put a reasonable person in Turner's position on notice that Plaintiff was

20    at substantial risk of serious harm." (Regents Defs.' Mot. Dismiss at 14.)

21    The Court agrees and finds that Plaintiff has insufficiently pled deliberate

22    indifference. Plaintiff argues that his statements concerning Burleson were sufficient

23    to put Defendant Turner on notice that she should investigate and report potential

24    risks to Plaintiff, her mental health patient, to jail staff, which she failed to do.

25    However, the record shows that Defendant Turner did attempt to investigate Plaintiff's

26    statements by asking Plaintiff to elaborate on why he was concerned about his

27    situation with his cellmate. In response, Plaintiff declined to clarify his statements

28    beyond speculating that if Burleson became physical "I'll have to defend myself."

10

1   Plaintiff also denied, however, that any physical or sexual contact had occurred thus

2   far.  Taken together, these statements do not implicate any deliberate indifference on

3   Defendant Turner's part, as Defendant Turner specifically asked about Plaintiff's

4   concerns, and Plaintiff declined to provide any further details clearly indicating an

5   imminent attack.  Otherwise stated, Plaintiff's statements neither indicated a "high

6   degree of risk" to his safety, nor that the potential consequence of Defendant Turner's

7   failure to further investigate or report his statements to jail staff were "obvious."  While

8   Defendant Turner could have gone above and beyond to review Plaintiff and

9   Burleson's records, given the vagueness of Plaintiff's statements Defendant Turner's

10  failure to do so was not objectively unreasonable under the circumstances.

11          Accordingly, the Court will dismiss Plaintiff's first cause of action against

12  Defendant Turner for deliberate indifference with leave to amend.

13          **C.    Fifth Cause of Action under the Bane Act**

14          The Bane Act "protects individuals from conduct aimed at interfering with rights

15  that are secured by federal or state law, where the interference is carried out 'by

16  threats, intimidation or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040

17  (9th Cir. 2018) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230

18  (2007)).  When a Bane Act claim is based on alleged federal constitutional violations,

19  plaintiffs may rely on the same allegations to prove both that the defendant deprived

20  them of a constitutional right and threatened, intimidated, or coerced them.  *See id*. at

21  1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element

22  of the claim to be transactionally independent from the constitutional violation

23  alleged.").  But the claim must also rest on factual allegations that would allow an

24  inference the defendant had a specific intent to violate the plaintiff's rights.  *See id*.

25  "[S]pecific intent" may be shown by demonstrating that the defendant "acted . . . 'in

26  reckless disregard of constitutional or statutory prohibitions or guarantees.'"  *Cornell*

27  *v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803–04 (2017), *as modified* (Nov.

28  17, 2017) (citation omitted); *Reese*, 888 F.3d at 1045 ("[A] reckless disregard for a

1  person's constitutional rights is evidence of a specific intent to deprive that person of

2  those rights.").

3      As to the specific intent inquiry, courts have held that if a plaintiff adequately

4  pleads a claim for deliberate indifference, which requires a pleading of reckless

5  disregard, then he has sufficiently alleged the intent required for a Bane Act claim.

6  *See Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) (finding

7  coercive act element of Bane Act claim satisfied by allegation of prison official's

8  deliberate indifference to serious medical needs); *see also M.H. v. Cnty. of Alameda*,

9  90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) (holding that because deliberate indifference

10  "has been associated with affirmatively culpable conduct, . . . a prisoner who

11  successfully proves that prison officials acted or failed to act with deliberate

12  indifference to his medical needs in violation of his constitutional rights . . . adequately

13  states a claim for relief under the Bane Act").

14      Here, Plaintiff pleads his Bane Act claim against Defendant Turner based on her

15  alleged deliberate indifference to Plaintiff's safety in violation of the Fourteenth

16  Amendment and Article I, Section 7(a) of the California Constitution.  (FAC ¶ 187.)

17  Plaintiff also pleads a Bane Act claim against the Regents based on theories of

18  supervisory and vicarious liability.  (*Id.* ¶¶ 188, 194.)  However, as held above, Plaintiff

19  has failed to plead deliberate indifference under the Fourteenth Amendment against

20  Defendant Turner.  *See* Section II.B *supra*.  Thus, those allegations cannot support

21  Plaintiff's Bane Act claim here.

22      Plaintiff argues that he had pled a Bane Act claim premised on violations of

23  both the United States and California Constitutions, and that the Regents Defendants

24  have failed to specifically seek dismissal of Plaintiff's Bane Act claim based on

25  violations of Article I, Section 7(a) of the California Constitution, weighing against

26  dismissal.  (Opp'n Regents Defs.' Mot. Dismiss (ECF No. 129) at 7–8.)  Article I, Section

27  7(a) of the California Constitution, much like the Fourteenth Amendment, provides

28  that a "person may not be deprived of life, liberty, or property without due process of

1   law." However, Plaintiff argues the analysis of Article I, Section 7(a) "is not necessarily

2   duplicative of the Fourteenth Amendment, where 'the California Constitution is, and

3   always has been, a document of independent force, and [] the rights embodied in and

4   protected by the state Constitution are not invariably identical to the rights contained

5   in the federal Constitution.'" (Opp'n Regents Defs.' Mot. Dismiss at 8 (quoting *Am.*

6   *Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 325 (Cal. 1997)).) While that may be,

7   the fact remains that, in order to state a Bane Act claim, a plaintiff must plausibly

8   allege that the defendant had a specific intent to interfere with the plaintiff's rights,

9   and that the interference was carried out by "threats, intimidation or coercion." Civ.

10  Code § 52.1(b); *Reese*, 888 F.3d at 1040. Here, for the reasons discussed in Section

11  II.B *supra*, the Court finds that Plaintiff has failed to plausibly allege Defendant Turner

12  had a specific intent to deprive Plaintiff of his rights under the California Constitution.

13      Given that Plaintiff has failed to allege either deliberate indifference or other

14  evidence of Defendant Turner's reckless disregard for Plaintiff's constitutional rights,

15  the Court will dismiss Plaintiff's Bane Act claim against Defendant Turner as well as the

16  Regents with leave to amend.

17      **D.    Sixth Cause of Action for Negligence**

18      In California, a cause of action for negligence requires (1) a legal duty to use

19  reasonable care; (2) breach of that duty; and (3) proximate cause between the breach

20  and (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333,

21  1339 (1998). This standard requires a much lower level of culpability than deliberate

22  indifference. *See Castro*, 833 F.3d at 1071.

23      Here, Plaintiff pleads that Defendant Turner is liable for negligence based on

24  several theories, "including by inadequately supervising, monitoring, and responding

25  to [Plaintiff]'s safety and/or medical needs, in violation of the United States and

26  California Constitutions, federal and state laws, regulations, policies, standards,

27  general orders, procedures, training, national and local standards, and/or California

28  Civil Code § 1714(a)." (FAC ¶ 199.) Defendant Turner argues that Plaintiff's claim fails

1    because Plaintiff has insufficiently pled Defendant Turner owed Plaintiff a duty of care

2    to protect him from his cellmate Burleson.  (Regents Defs.' Mot. Dismiss at 15–18.)

3        The Court agrees that Plaintiff has insufficiently alleged a duty to protect.  First,

4    Plaintiff argues that, to the extent he has alleged a deliberate indifference claim, he

5    has also stated a negligence claim as negligence requires a much lower level of

6    culpability.  (Opp'n Regents Defs.' Mot. Dismiss at 13.)  However, Plaintiff has

7    insufficiently alleged deliberate indifference.  *See* Section II.B *supra*.  Thus, those

8    allegations alone cannot support his negligence claim.

9        Plaintiff also argues that, under California law, there is a special relationship

10    between a jailer and a prisoner giving rise to a duty of care to protect the prisoner

11    from foreseeable harm inflicted by a third party.  *Giraldo v. Cal. Dep't of Corr. &*

12    *Rehab.*, 168 Cal. App. 4th 231, 246–53 (2008).  However, the reasoning behind the

13    *Giraldo* court's imposition of a special relationship does not clearly extend to health

14    care providers in prisons, who occupy a very different role than prison officials.  In

15    recognizing a jailer's duty to prisoners in their care, the court in *Giraldo* reasoned that

16    the "typical setting for the recognition of a special relationship is where 'the plaintiff is

17    particularly vulnerable and dependent upon the defendant who, correspondingly, has

18    some control over the plaintiff's welfare.'"  *Id.* at 245–46.  Turning to the relationship

19    between jailers and prisoners, the court concluded that jailers, who have taken

20    custody of their prisoners and thereby deprived them of the ability to protect

21    themselves, are under a duty to protect the persons in their custody from foreseeable

22    harm, including by controlling the conduct of third persons.  *See id.* at 246–50.

23        Here, Defendant Turner was employed to provide mental health services to

24    inmates at the jail.  Unlike a jailer or other prison official, she was not charged with the

25    inmates' general safe keeping, nor was she in a position to control the conduct,

26    classification, and housing of inmates.  Therefore, the Court declines to extend the

27    duty recognized under *Giraldo* to mental health care providers such as Defendant

28    Turner, particularly given that Plaintiff fails to cite any case where a contracted mental

14

1  health care provider was found to owe an inmate-patient a duty to protect them from

2  third-party conduct.  Rather, Defendant Turner owed Plaintiff a duty to provide

3  adequate mental health care.  *See Calderon v. Glick*, 131 Cal. App. 4th 224, 234

4  (2005) (mental health care providers have "'a duty to use a reasonable degree of skill,

5  knowledge and care in treating a patient, commensurate with that possessed and

6  exercised by others practicing within that specialty in the professional community'"

7  (quoting *Kockelman v. Segal*, 61 Cal. App. 4th 491, 505 (1998))).  However, Plaintiff

8  has not alleged that that duty was breached here.  Thus, Plaintiff has failed to allege

9  any applicable duty arising under the common law.

10       Finally, Plaintiff alleges that Defendant Turner failed to comply with various

11  established policies, trainings, standards, and procedures relating to protecting and

12  reporting threats to patients which Plaintiff argues sufficiently states a negligence

13  claim.  (Opp'n Regents Defs.' Mot. Dismiss at 14–15.)  However, while Plaintiff lists the

14  relevant policies, he has failed to allege what these policies required of Defendant

15  Turner (i.e., duty), or how she violated them (i.e., breach).  (*See* FAC ¶ 92.)  Such

16  conclusory pleading fails to state a plausible claim for relief.

17       Accordingly, the Court will dismiss Plaintiff's negligence claim against

18  Defendant Turner with leave to amend.

19  **III.    The County Defendants' Motion to Dismiss**

20       **A.    Relevant Factual Allegations**

21       On December 11, 2020, Plaintiff was discharged from the JPS unit to general

22  population OPP housing.  (FAC ¶ 51.)  On September 23, 2021, Plaintiff and Burleson

23  were both assigned to cell #203.  (*Id.* ¶¶ 80–82.)  Plaintiff was assaulted by Burleson in

24  their cell on September 26, 2021.  (*Id.* ¶ 93.)  Defendant Noda, a records officer, along

25  with other Defendants, were the jail staff responsible for monitoring the inmates in the

26  area of the jail where Plaintiff and Burleson were housed that day, including

27  monitoring inmates via a closed-circuit television ("CCTV") surveillance system and

28  conducting direct visual checks of cells and inmates.  (*Id.* ¶ 95.)

1    After Plaintiff was assaulted, he was on the ground of his cell bleeding from a

2    headwound and struggling to breathe for about 30 minutes.  (*Id.* ¶¶ 100, 102.)

3    Plaintiff's blood was leaking underneath the cell door and was visible on at least two

4    different CCTV surveillance cameras.  (*Id.* ¶ 101.)  More than 22 minutes after the

5    blood was visible on the jail's CCTV cameras, and about 55 minutes after the last cell

6    check, Josh Soules, an inmate-trustee, noticed the stream of blood leaking from cell

7    #203 and approached the cell for inspection.  (*Id.* ¶ 106.)  Burleson observed that

8    Soules had discovered his assault, used the emergency button to activate the

9    intercom inside of the jail, and informed Defendant Noda, who was located in the

10    control area, that he had attacked and "might have killed" Plaintiff.  (*Id.* ¶¶ 107–08.)

11    Defendant Noda relayed Burleson's message to other Defendants, who responded to

12    the attack.  (*Id.* ¶¶ 109–25.)  Eventually, Plaintiff was transported to the hospital where

13    he was placed in a medically induced coma.  (*Id.* ¶ 126.)

14         **B.    First Cause of Action for Deliberate Indifference**

15         The County Defendants argue that Plaintiff's claims for deliberate indifference

16    against Sturgis, Albright-Mundy, and Defendant Noda should be dismissed, as Plaintiff

17    has failed to adequately remedy his allegations as to those claims.  (County Defs.' Mot.

18    Dismiss at 4-9.)

19         Plaintiff does not assert any claims against Sturgis and Albright-Mundy in his

20    Fourth Amended Complaint.  (*See* FAC ¶¶ 6–23 (listing the Parties).)  Thus, the County

21    Defendants' Motion to Dismiss as to those officers is denied as moot.

22         However, the Court will grant the County Defendants' Motion to Dismiss as to

23    Defendant Noda.  The Court previously dismissed Plaintiff's deliberate indifference

24    claim against Defendant Noda, reasoning that Plaintiff failed to plausibly allege

25    Defendant Noda made an intentional decision with respect to Plaintiff's conditions of

26    confinement as Plaintiff failed to explain how Defendant Noda deliberately failed to

27    monitor Plaintiff's cell.  (Dismissal Order at 23.)  Plaintiff has failed to add any

28    allegations in the Fourth Amended Complaint remedying this shortcoming, as Plaintiff

1  neither plausibly alleges Defendant Noda was scheduled to conduct a visual check of

2  Plaintiff's cell but failed to do so, nor that Defendant Noda had access to CCTV

3  footage while he was in the control room to monitor Plaintiff's cell but failed to do so.

4  At most, Plaintiff alleges that "NODA ignored or failed to detect or notice Plaintiff

5  ANTHONY CRAVOTTA II's stream of blood that continuously grew and leaked from

6  under the cell door" and "fail[ed] adequately to monitor cell #203" via CCTV or visual

7  checks, "caus[ing] serious harm, including the non-detection of LEMAR BURLESON's

8  assault on Plaintiff ANTHONY CRAVOTTA II and delay in summoning medical care."

9  (FAC ¶¶ 103–04).  These conclusory allegations are insufficient to establish Defendant

10  Noda made an intentional decision to inadequately monitor Plaintiff's cell.  *See*

11  *Cavanaugh v. Cnty. of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 WL 6703592, at

12  *12–13 (S.D. Cal. Nov. 12, 2020) (finding plaintiff failed to allege a deliberate

13  indifference claim when his conclusory allegations that defendants "failed to properly

14  conduct cell checks required to verify an inmate's safety and welfare" were insufficient

15  to create a plausible claim that defendants intentionally chose the conditions of

16  confinement and were not merely negligent).

17       Thus, the Court will grant dismissal of Plaintiff's deliberate indifference claim

18  against Defendant Noda but will grant Plaintiff one final chance to amend.

19       **C.    Fourth Cause of Action for Failure to Summon Medical Care**

20       The County Defendants argue that Plaintiff's claim for failure to summon

21  medical care against Defendant Noda is inadequately pled and should be dismissed.

22  (County Defs.' Mot. Dismiss at 9–10.)  The County Defendants also argue that Plaintiff

23  fails to adequately allege supervisory claims against Sheriff Jones, and that the County

24  and Sheriff's Department are immune from liability pursuant to California Government

25  Code section 844.6(a).  (*Id.* at 10–11.)

26       The Court will dismiss Plaintiff's claim against Defendant Noda for the same

27  reasons set forth in the Court's prior Order: Plaintiff has not sufficiently alleged

28  Defendant Noda knew, or had reason to know, that Plaintiff was in need of immediate

1   medical care during the 30-minute period between when Plaintiff was attacked and

2   the attack was reported.  (Dismissal Order at 25.)  Plaintiff generally alleges that

3   Defendant Noda was assigned, along with other Defendants, to monitor Plaintiff's cell

4   during the period when he was assaulted, that blood was visibly leaking out from

5   underneath Plaintiff's cell door for 22 minutes before the attack was reported, and that

6   Defendant Noda was in the control room when he received Burleson's report that

7   Plaintiff had been attacked.  (FAC ¶¶ 95, 101, 106–08.)  These allegations fail to

8   establish, however, how Defendant Noda knew or should have known of the assault.

9   In other words, Plaintiff has not alleged that Defendant Noda failed to conduct a

10  scheduled safety check after the attack, or that he had access to CCTV footage while

11  in the control area during the time when blood was visibly leaking underneath the cell

12  door.  Further, Plaintiff alleges that once Defendant Noda was made aware of the

13  attack, he promptly alerted other jail staff of the emergency and medical care was

14  swiftly summoned.  (*See id.* ¶¶ 108–27.)  Thus, Plaintiff's claim against Defendant Noda

15  will be dismissed.

16          With respect to Sheriff Jones, courts have held that prison officials may be liable

17  for their employees' failure to summon medical care because section 845.6 permits

18  claims against prison officials for negligent supervision and training as to when to

19  summon medical care.  *Villarreal v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 1189

20  (N.D. Cal. 2017) ("California Government Code § 845.6 permits claims against prison

21  officials for negligent supervision and training as to when to summon medical care.");

22  *Estate of Claypole v. Cnty. of San Mateo*, No. 14–cv–02730–BLF, 2014 WL 5100696, at

23  *8 (N.D. Cal. Oct. 9, 2014) (finding Government Code section 845.6 could support

24  claim against a County defendant for negligent supervision and training).  Here,

25  Plaintiff alleges that Sheriff Jones failed to adequately train and supervise jail staff in

26  summoning necessary medical care for inmates at the jail.  (*See* FAC ¶¶ 139–41, 181.)

27  In support of these allegations, Plaintiff alleges numerous incidents when other

28  inmates at the jail suffered injuries as a result of jail staff inadequately diagnosing,

1   monitoring, and providing care for inmates, including failing to respond to immediate

2   medical needs.  (*Id.* ¶ 145.)  Plaintiff also alleges that Defendant Preston, another

3   employee at the jail, failed to summon medical care in violation of section 845.6,

4   thereby resulting in Plaintiff's harm.  (*See id.* ¶¶ 178–84.)  Plaintiff's claim against

5   Defendant Preston has not been challenged here.  Viewing these allegations as a

6   whole, Plaintiff has adequately pled Sheriff Jones inadequately trained and supervised

7   jail staff, including Defendant Preston, in summoning medical care, resulting in

8   Plaintiff's injuries.  Thus, Plaintiff's claim against Sheriff Jones will not be dismissed.

9           Finally, concerning the County and Sheriff's Department, section 845.6

10   provides that a "public entity" may be liable for a failure to summon medical care by

11   an "employee [who] is acting within the scope of his [or her] employment."  Gov't

12   Code § 845.6.  Here, Plaintiff alleges that the County and Sheriff's Department are

13   vicariously liable for the injuries caused by Defendant Preston, against whom Plaintiff

14   has a viable claim for failure to summon medical care under section 845.6.  (FAC

15   ¶ 182.)  The County Defendants argue that the County and Sheriff's Department are

16   immune from liability under Government Code section 844.6(a).  However, immunity

17   under section 844.6 is expressly "except[ed] as provided . . . in Section[] . . . 845.6

18   . . . ."  Gov't Code § 844.6(a); *see, e.g., Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F.

19   Supp. 3d 1183, 1198 n.4 (E.D. Cal. 2018) (recognizing "multiple exceptions to [section

20   844.6] immunity," including liability under section 845.6); *Cooks v. State of California*,

21   No. 2:20-cv-1780-KJN P, 2022 WL 2110761, at *3 (E.D. Cal. June 10, 2022) ("[T]here

22   are statutory exceptions to § 844.6, one of which is failure to summon medical care

23   under California Government Code § 845.6.").  The County Defendants have not

24   explained why, despite this clear language, they should benefit from the immunity

25   provisions of section 844.6 as to Plaintiff's failure to summon medical care claim.

26           Accordingly, the Court will dismiss Plaintiff's fourth cause of action against

27   Defendant Noda only with leave to amend.

28   ////

1       **D.    Fifth Cause of Action under the Bane Act**

2              The County Defendants move to dismiss Plaintiff's Bane Act claims against

3       Paredes, McLean, Albright-Mundy, Sturgis, and Defendant Noda, arguing all are

4       insufficiently pled.  (County Defs.' Mot. Dismiss at 13–14.)

5              As this Court has already observed, Plaintiff does not assert any claims against

6       Sturgis and Albright-Mundy in his Fourth Amended Complaint.  (*See* FAC ¶¶ 6–23

7       (listing the Parties).)  Similarly, Plaintiff no longer asserts any claims against Paredes or

8       McLean in the Fourth Amended Complaint.  (*Id.*)  Accordingly, dismissal of Plaintiff's

9       Bane Act claims as to those officers is denied as moot.

10             However, the Court will dismiss Plaintiff's Bane Act claim as to Defendant Noda.

11      That claim is premised on Plaintiff's claims against Defendant Noda for deliberate

12      indifference in violation of the Fourteenth Amendment to the United States

13      Constitution and Article I, Section 7(a) of the California Constitution, and failure to

14      summon medical care in violation of Government Code section 845.6.  (*See id.*

15      ¶¶ 187, 191.)  As held *supra*, Plaintiff has failed to state a claim against Defendant

16      Noda for either deliberate indifference under the Fourteenth Amendment or failure to

17      summon medical care under section 845.6.  *See* Sections III.B–C *supra*.  Thus, those

18      claims cannot support Plaintiff's Bane Act claim here.

19             As with Defendant Turner, Plaintiff argues that the County Defendants have not

20      specifically sought dismissal of Plaintiff's Bane Act claim premised on violations of

21      Article I, Section 7(a) of the California Constitution.  (Opp'n County Mot. Dismiss (ECF

22      No. 139) at 13–14.)  However, as discussed in Section II.C *supra*, to state a Bane Act

23      claim, a plaintiff must plausibly allege that the defendant had a specific intent to

24      interfere with the plaintiff's rights, and that the interference was carried out by "threats,

25      intimidation or coercion."  Civ. Code § 52.1(b); *Reese*, 888 F.3d at 1040.  Here, for the

26      reasons discussed in Section III.B *supra*, Plaintiff has failed to plausibly allege

27      Defendant Noda acted with reckless disregard for Plaintiff's rights under the California

28      Constitution.

1    Thus, the Court will grant dismissal of Plaintiff's fifth cause of action against

2    Defendant Noda with leave to amend.

3    **E.      Sixth Cause of Action for Negligence**

4    Finally, the County Defendants move to dismiss Plaintiff's claims for negligence

5    against Sturgis, Albright-Mundy, and Defendant Noda.  (County Defs.' Mot. Dismiss at

6    11–13.)

7    Plaintiff does not assert any claims, including negligence, against Sturgis and

8    Albright-Mundy in his Fourth Amended Complaint.  (*See* FAC ¶¶ 6–23 (listing the

9    Parties).)  Thus, dismissal of Plaintiff's negligence claims as to those officers is denied

10   as moot.

11   The Court will, however, dismiss Plaintiff's negligence claim as to Defendant

12   Noda.  "In California, prison officials owe detainees a duty to protect them from

13   foreseeable harm." *Cotta v. Cnty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017);

14   *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016); *Giraldo*, 168 Cal. App. 4th

15   at 252–53.  Plaintiff alleges Defendant Noda breached this duty when he insufficiently

16   monitored Plaintiff.  (FAC ¶ 199.)  However, Plaintiff's allegations are insufficient to

17   conclude Defendant Noda breached any duty, as Plaintiff has not plausibly alleged

18   Defendant Noda failed to conduct scheduled safety checks during the assault in

19   question, conducted insufficient safety checks during that time, or had access to but

20   failed to monitor CCTV footage of Plaintiff's cell.  *See* Section III.B *supra*.  Thus, as held

21   in this Court's prior order, Plaintiff has failed to state negligence a claim on that basis.

22   (*See* Dismissal Order at 27–28.)

23   The Court will dismiss Plaintiff's negligence claim against Defendant Noda with

24   one final chance to amend.

25   **CONCLUSION**

26   In accordance with the above, it is hereby ordered that the Regents

27   Defendants' Motion to Dismiss (ECF No. 127) is GRANTED.  It is further ordered that

28   the County Defendants' Motion to Dismiss (ECF No. 130) is GRANTED in part and

21

1   DENIED in part.  Finally, the County Defendants' Motion to Strike (ECF No. 131) is

2   GRANTED in part and DENIED in part.

3        Specifically, the Court hereby STRIKES any reference to Defendants Haynes or

4   Higley in paragraph 191 of Plaintiff's Fourth Amended Complaint.  The Court also

5   DISMISSES Plaintiff's first, fifth, and sixth causes of action against Defendant Turner;

6   fifth cause of action against the Regents; and first, fourth, fifth, and sixth causes of

7   action against Defendant Noda, all with leave to amend.  The Court notes, however,

8   that this is the Court's third order dismissing claims brought in a case that was filed

9   over three and a half years ago and cautions Plaintiff that any future dismissals may

10  well be with prejudice.  The Court DENIES dismissal as to Plaintiff's remaining claims.

11       Plaintiff is granted leave to file an amended complaint within twenty-one (21)

12  days of this Order.  If Plaintiff wishes to add any additional claims or defendants to his

13  amended complaint aside from those specifically contemplated by this Order, Plaintiff

14  must seek the Court's leave to do so pursuant to Federal Rule of Civil Procedure 15.

15  The Parties are reminded of the Court's prior order requiring the Parties file a status

16  report pursuant to this Court's Initial Case Management Order within thirty-five (35)

17  days after the Court's ruling on these motions.  (ECF No. 132.)

18

19       IT IS SO ORDERED.

20  Dated:   **August 14, 2025**

21                                              Hon. Daniel J. Calabretta
                                                UNITED STATES DISTRICT JUDGE

22

23

24  DJC4 – Cravotta22cv167.ThirdMTD&MotStrike

25

26

27

28

22