UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY CRAVOTTA II,

Plaintiff,

v.

COUNTY OF SACRAMENTO, et al.,

Defendants.

No.  2:22-cv-00167 DJC AC

ORDER

Plaintiff has moved to compel the production of documents relating to other inmate-patients who were referred to the Sacramento County jail-based competency treatment ("JBCT") program during the relevant time from two of the named defendants in this action, the State of California and the California Department of State Hospitals ("DSH").  ECF No. 164.  This discovery motion is before the magistrate judge pursuant to E.D. Cal. R. 302(c)(1).  The motion was taken under submission (ECF No. 165), and the parties submitted the required joint statement.  ECF No. 166.  For the reasons set forth below, plaintiff's motion to compel (ECF No. 164) is GRANTED IN PART.

## I.      Relevant Background

Plaintiff Anthony Cravotta II, a former pretrial detainee at the Sacramento County jail, alleges he was brutally assaulted by his cellmate Lemar Burleson after he had been found mentally incompetent to stand trial ("IST") and was awaiting transfer to a hospital operated by

1

DSH as part of DSH's conditional release program.  ECF No. 146.  After District Judge Daniel J. Calabretta dismissed plaintiff's Fourth Amended Complaint (ECF No. 124) in part with leave to amend (ECF No. 145), plaintiff filed a Fifth Amended Complaint on September 4, 2025.  ECF No. 146.  Several other defendants, including the Sacramento County defendants, have filed motions to strike portions of that complaint or motions to dismiss.  ECF Nos. 153, 154, 157.  The subject matter of the instant motion to compel is unlikely to be impacted by Judge Calabretta's ruling on these pending motions, and therefore a prompt ruling on plaintiff's motion to compel is appropriate and in the interest of judicial economy.  Although the parties disagree as to whether plaintiff's discovery requests at issue are properly directed to the State of California or DSH (ECF No. 166 at 2, fn. 1, 4, fn. 2), this is a distinction without a difference for purposes of this discovery dispute.  The State of California and DSH are both the subject of plaintiff's second and third claims in his Fifth Amended Complaint, and neither entity has a dispositive motion pending.

Relevant here, plaintiff alleges he was denied reasonable accommodation for his mental disability by the State of California and DSH, including (1) necessary care or treatment, (2) transfer to a mental health facility for necessary care or treatment, (3) appropriate classification, assignment, or housing based on his disability, and/or (4) timely restorative treatment.  ECF No. 146 at 57-59.  He alleges defendants' failure to provide reasonable accommodation amounted to deliberate indifference or reckless disregard for his medical needs in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.  Id. at 53, 57-59.  Finally, plaintiff alleges that by placing pretrial detainees on lengthy state hospital admission waiting lists, defendants maintain policies or customs of "failing to allow timely admission of IST pretrial detainees to state hospital facilities, in violation of court commitment orders and with deliberate indifference to the rights and safety of IST pretrial detainees," which proximately caused plaintiff's harm.  Id. at 53, 57-58.

Plaintiff previously filed a motion to compel production of the same information at issue in this discovery dispute, but he had directed his discovery requests to defendant County of Sacramento.  ECF No. 119.  Upon review, the undersigned agreed with the County's contention that plaintiff's request was unduly burdensome considering testimony from multiple deponents

2

reflecting that the waiting list for inmate-patient participation in the JBCT program was maintained by DSH and therefore DSH could more easily produce the requested information. ECF No. 121 at 5-6.  The undersigned therefore denied plaintiff's motion to compel pursuant to Fed. R. Civ. P. 26(b)(2)(C), and directed plaintiff to "seek the information from the entity that holds it," DSH.  Id. at 6.

When plaintiff complied with this directive and propounded discovery to DSH, DSH declined to produce the requested information.  ECF No. 166 at 6.  The parties met and conferred, including via telephonic conference.  Id.  Notably, the court previously entered the parties' stipulated protective order providing that the parties to this action and their attorneys are authorized to receive, subpoena, and transmit "protected health information" pertaining to Anthony Cravotta II, Lemar Burleson, and third-parties or non-partis to this action, including but not limited to that which is contained in the records of the County of Sacramento, Sacramento County Sheriff's Department, Regents of the University of California d/b/a U.C. Davis Health a/k/a Jail Psychiatric Services ("JPS"), and/or DSH.  ECF No. 18 at 2.  Although plaintiff offered to stipulate to an additional protective order to address any of DSH's remaining privacy-related concerns (ECF No. 166-1 (Merin Decl.), Ex. D), defendants declined, prompting plaintiff to file the instant motion to compel.  ECF No. 166 at 8.

## II.    Motion to Compel and Response

Plaintiff moves the court "(1) for an order overruling the State's objections and compelling production of withheld documents, including documents withheld in response to Plaintiff's request for production ('RFP') no. 42 and 43, pursuant to Federal Rule of Civil Procedure 37(a)."  ECF No. 164 at 2.  The requests at issue are as follows:

> REQUEST FOR PRODUCTION NO. 42:
>
> For each inmate referred to the Sacramento County jail-based competency training (JBCT) program at Rio Cosumnes Corrections Center, from and including February 22, 2021, to September 26, 2021, produce DOCUMENTS containing the "standardized data collection template" complying with the data deliverable requirement described on the contract between the County of Sacramento and the California Department of State Hospitals found at the document produced by the County of Sacramento Bates numbered "COUNTY_008984" (contract covering 07/01/2021-

3

06/30/2022) and "COUNTY_009120" (contract covering 07/01/2020-06/30/2021).

REQUEST FOR PRODUCTION NO. 43:

From and including February 22, 2021, to and including September 26, 2021, produce DOCUMENTS identifying each potential jail-based competency training (JBCT) Patient Inmate awaiting transfer to the Sacramento County JBCT program indicating their commitment date.

ECF No. 166-1 at 8-9.

Defendants provided the following objections and response to both RFP Nos. 42-43:

DSH objects that the request seeks exclusively "protected health information" within the scope and definition of 45 C.F.R. §§ 160.103 and 164.501. Protected health information includes, but is not limited to, health information, including demographic information, relating to either: (a) the past, present or future physical or mental condition of an individual; (b) the provision of care to an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual. Individuals on the requested lists are under competency restoration services care of DSH. DSH is therefore legally required to maintain the patients' privacy. Furthermore, California Welfare and Institutions Code section 5328 makes confidential any services provided by DSH, such as competency restoration services. Pursuant to 45 C.F.R. § 164.512(e), protected health information cannot be disclosed pursuant to a discovery request unless there is a notice to consumer or a protective order in place (i.e., notice to the third party who then has an opportunity to object). Additionally, the other patients' personal information is not likely to lead to the discovery of admissible evidence. Finally, DSH objects pursuant to California Evidence Code section 1040. DSH's employees obtain confidential information about JBCT patients in the course and scope of their duties, and this information is not officially disclosed to the public (via the Public Records Act) as the public interest is against such disclosure because confidentiality of medical and mental health information is expected and statutorily-enumerated at both state and federal levels, reflecting the public's desire for confidentiality.

Id. at 15-16. Furthermore, in response to RFP No. 42, defendants agreed to "produce the template redacted pursuant to California Welfare and Institutions Code section 5328 and 45 CFR § 164.514." Id. at 15-16. In response to RFP No. 43, defendants stated that "DSH is prohibited from releasing any of the documents sought by this request but, "[i]n a good faith effort to

4

respond to the request, DSH will provide the weekly summaries of JBCT patients awaiting transfer." Id. at 17.[1]

Accordingly, defendants objected to providing the documents sought by both requests based on privacy concerns under federal and California law, as well as objections based on relevance. ECF No. 166-1 at 16-17. The undersigned will address each of the parties' positions, as set forth in their joint statement, in turn.

### III.    Analysis

A. Applicable Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In response to a request for production of documents or tangible things, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A court may limit discovery if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery." Fed. R. Civ. P. 26(b)(2)(C). To determine the proportionality of a request in relation to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Under Federal Rule of Civil Procedure 37, a motion to compel may be made if "a party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). The party seeking to compel discovery has the burden of showing that the

---

[1] Although it is not clear from the record before the court what information was included in the "weekly summary" produced in response to RFP No. 43, plaintiff argued during the meet and confer process that the "System-Wide Weekly Pending Placement Report" provided by defendants was non-responsive because it was not limited to the Sacramento County JBCT. ECF No. 166-1 at 25.

discovery sought is relevant or that its denial will cause substantial prejudice.  Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  The opposing party is "required to carry a heavy burden of showing why discovery was denied."  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

### B.   Relevance and Undue Burden

As a threshold matter, the court will consider whether plaintiff has met his burden of establishing the relevance of the information he seeks from defendants.  Fed. R. Civ. P 26(b)(1).  Relevance for purposes of discovery is defined very broadly.  Relevant information need only be reasonably calculated to lead to the discovery of admissible evidence.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (a relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case").

Defendants contend that the requested documents are not likely to lead to the discovery of admissible evidence relevant to plaintiff's claims against DSH.  ECF No. 166 at 19.  Because this is a single-plaintiff suit alleging DSH is liable for its inaction in timely transferring plaintiff, and plaintiff is not suing on behalf of a class, defendants contend that plaintiff does not need confidential information (such as names, mental health diagnoses, or medication information) relating to other third-party inmates in order to pursue his ADA and Rehabilitation Act claims.  ECF No. 166 at 19.  Defendants further contend that to the extent plaintiff is seeking the information to support claims relating to policies or customs of DSH pursuant to Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978), such claims cannot be asserted against a state entity such as DSH.  Id.  Finally, defendants argue that the stipulated protective order is insufficient to alleviate privacy concerns because third-party inmates' health information would be accessible to any party "involved in the litigation, effectively making such information fully public."  Id. at 19-20.

Plaintiff responds that the requested information relating to other inmate-patients is directly related to his claims against the County and State defendants because it "is relevant to determine if he was advanced on the list in the order in which persons were ordered committed"

6

as required by the contract between the State and County.  ECF No. 166 at 12.  Plaintiff further contends the requested JBCT documents would show the frequency and degree to which pretrial detainees like plaintiff were waitlisted and denied court-ordered medical treatment, which can support a failure to train claim against the State under the ADA and Rehabilitation Act under a Monell theory.  Id. at 21.  As the court has already found that plaintiff's ADA and Rehabilitation Act claims involving the State's policy and customs were sufficient to state a claim (ECF No. 83 at 18-19), plaintiff alleges that his discovery requests are relevant and reasonable in scope.  Id.

The court agrees that the requested JBCT information is directly relevant to plaintiff's ADA and Rehabilitation claims against the State and DSH, and may also be relevant to his other pending claims in this action.  While it is premature to opine on the potential merits of plaintiff's theories of entity liability, the court has already determined that plaintiff's contentions regarding the State and DSH's policies and customs "sufficiently stated ADA and Rehabilitation claims against the State Defendants."  See ECF No. 83 at 18 (noting that courts in this district have found allegations of a systematic delay or wanton denial of detainees' medical services may be found to demonstrate denial of care based on the patients' IST disabled status under the ADA and Rehabilitation Act).  This court recently observed that the State defendants' "lengthy delay in providing care [for over six months], coupled with Plaintiff's allegations that the State Defendants deliberately fail to timely admit IST Pretrial detainees to state hospital facilities . . . is sufficient to state an ADA and Rehabilitation Act claim at this time."  Id. at 19.  See also Atayde v. Napa State Hosp., No. 1:16-cv-00398-DAD-SAB, 2022 U.S. Dist. LEXIS 75399, at *40-42, 2022 WL 1215234, at *13-14 (E.D. Cal. Apr. 22, 2022) (denying defendant state hospital summary judgment on plaintiff's ADA and Rehabilitation Act claims because "the undisputed facts on summary judgment in this case establish that defendant was aware that the decedent had been committed to [the state hospital], and yet he was completely denied admission to [the state hospital] for nearly two months," and "it appears that such denials have become systematic within the [state hospital] systems").

Accordingly, the court finds that the requested documents reflecting the frequency and degree to which other pretrial detainees were similarly waitlisted by DSH while awaiting transfer

are directly relevant to plaintiff's pending ADA and Rehabilitation claims.  The request does not appear unreasonable in scope.  Although defendants expressed their disagreement with the proportionality of the discovery request on the basis that this is not a class action, defendants have not otherwise argued that the size or nature of the requested production would impose an undue burden or expense.  ECF No. 166 at 18-19.

          C.  Protected Health Information of Other Inmate-Patients

As discussed above, both RFP Nos. 42 and 43 necessitate acquiring information about inmate-patients who were referred to a Sacramento County JBCT program from February 2021 through September 2021.  Plaintiff's RFP No. 42 requests disclosure of the detailed information contained in the standardized data collection template, including patient name, case number, booking number, date of birth, commitment date, admission date, screening outcome, diagnosis at admission, diagnosis at discharge, diagnosis of malingering, involuntary medication administered, involuntary medication order, and medication adherence, among other items.  ECF No. 166-1 at 11.  RFP No. 43 is more broad, and it seeks documents relating to each "jail-based" patient-inmate awaiting transfer to the Sacramento County JBCT program reflecting "their commitment date."  ECF No. 166-1 at 8-9.

          1.  Parties' Arguments Regarding HIPAA and State Privacy Laws

Defendants contend that the requested documents contain inmate-patients' "protected health information" under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d *et seq*.  ECF No. 166 at 15-16 (citing the definitions set forth in 45 C.F.R. §§ 160.103 and 164.501).  Defendants contend they are unable to produce such documents under HIPAA absent a notice to consumer or a protective order.  ECF No. 166 at 16 (citing 45 C.F.R. § 164.512(e)).  Defendants further argue that HIPAA provides the floor (and not the ceiling) for medical privacy rights, and several California statutes establish heightened protections relative to individuals' right to privacy in their medical information that should also prohibit the requested disclosure.  Id. at 16 (citing the California Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code §§ 56.101, 56.36), the California Lanterman-Petris-Short ("LPS") Act, (California Welfare and Institutions Code § 5328), and the California's

Information Practices Act ("IPA") (Cal. Civ. Code § 1798.24(k))).

Plaintiff responds that a HIPAA-compliant protective order providing that the parties and their attorneys are authorized to receive, subpoena, and transmit protected health information relating to plaintiff as well as non-parties is already in place, and should be sufficient to address defendants' privacy-related concerns.  ECF No. 166 at 8.  Plaintiff further contends that to the extent defendants argue, for the first time, that such disclosures are prohibited by a psycho-therapist patient privilege, such arguments are waived because defendants did not timely make this argument at any point during the meet and confer process.[2]  With respect to defendants' state law privacy arguments, plaintiff argues that federal discovery rules, and not state law, govern this dispute.  Id. at 9 (emphasis in original).

2.   Defendants Shall Produce the Documents with Redactions

As discussed in greater detail below, the court finds that although defendants should produce any documents in their possession that are responsive to RFP Nos. 42 and 43, redaction of some personal identifiers, such as the inmates' names and dates of birth, is appropriate to protect the privacy of non-parties to this litigation as much as possible.

It appears undisputed that responsive documents in defendants' possession will contain some HIPPA-protected health information of inmate-patients who are non-parties to this action.  However, defendants have failed to identify any federal case – and the Court is aware of none – recognizing an "absolute" right of privacy in this protected health information (as asserted by defendants) which would prohibit its disclosure under the protective order.  ECF No. 166 at 20.  Similarly, to the extent defendants argue that several California statutes prohibit defendants from producing another inmate's medical records, these California statutes may prevent defendants from producing the documents in this litigation *without* a court order.  They do not, however, prevent this court from issuing an order requiring their production.[3]

---

[2]  Because the Court agrees that defendants' psycho-therapist patient privilege argument is waived because it was not timely raised, it is not addressed separately in this order.

[3]  Indeed, defendants also acknowledge that "under both the CMIA and IPA, a medical provider may disclose the protected health information of nonparties only if the disclosure is necessary for the litigation and the information is not otherwise protected by federal or state law."  ECF No. 166 at 17.  Similarly, (continued…)

The Court also does not share defendants' opinion that the existing protective order (ECF No. 18) is inadequate to shield the inmates-patients' protected health information from public view. As the parties are aware, the protective order provides that protected health information disclosed in this action may only be used for this current litigation and must be returned or destroyed at the close of the case. That being said, the court is sensitive to defendants' overarching concern that as a policy matter, it is important to safeguard the privacy of other inmate-patients' protected health information as much as possible, especially in light of their status as non-parties.

As noted above, plaintiff explained that the requested information relating to other inmate-patients "is relevant to determine if he was advanced on the list in the order in which persons were ordered committed" as required by the contract between the State and County. ECF No. 166 at 12. Furthermore, plaintiff contends the requested JBCT documents would show the frequency and degree that pretrial detainees like plaintiff were waitlisted and denied court-ordered medical treatment. Id. at 21. The court finds that plaintiff's stated purpose in seeking the information requested by RFP Nos. 42 and 43 can be satisfied by the production of the requested documents even with the redaction of certain identifying information, such as the inmate-patients' names, dates of birth, booking numbers, and case numbers.

Accordingly, defendants shall promptly produce any documents responsive to RFP Nos. 42 and 43 that are in their possession by no later than **Friday, March 27, 2026**, while redacting or otherwise anonymizing identifying details such as inmate-patients' names, dates of birth, booking numbers, and case numbers. If necessary, the parties may wish to meet and confer to reach agreement regarding the precise method of redaction that will allow plaintiff to ascertain inmates' commitment dates relative to plaintiff, while also protecting those inmates' identities. At this time, the court does not see any need for the parties to reference sensitive individualized data in their pleadings that would require the filing of such documents under seal. See ECF No. 166 at 20 (Defendants' request that "if this court orders disclosure of the data, then it should

---

defendants acknowledge such information should not be disclosed under HIPAA absent "a protective order." Id. at 16 (citing 45 C.F.R. § 164.512(e)).

10

require any pleadings regarding the individualized data to be filed under seal to avoid the undue burden of anonymizing the data and the significant risk of re-identification of the PHI.").  If necessary, however, the parties may seek such leave from the court in the future in compliance with the local rules.

### IV.    Conclusion

For the reasons explained above, plaintiff's motion to compel (ECF No. 164) is GRANTED IN PART on the terms specified above.  As the court considers defendants' objections to have been made in good faith and grounded in genuine concerns relating to the protected health information and privacy interests of non-parties, it does not find an award of expenses warranted at this time.  Plaintiff's request for expenses is therefore DENIED.

IT IS SO ORDERED.

DATED: March 18, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE