UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CRAVOTTA, | No. 2:22-cv-00167-DJC-AC |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Plaintiff Anthony Cravotta II, a former pretrial detainee, alleges he was brutally assaulted by his cellmate Lemar Burleson after he had been found mentally incompetent to stand trial and was awaiting transfer to a state hospital. Plaintiff alleges that, as a result of the assault, he sustained catastrophic brain injuries.

This action has proceeded through several rounds of motions at the pleading stage.  Presently before the Court are Motions to Dismiss from the County of Sacramento Defendants (ECF No. 153) and the University of California Defendants (ECF No. 157), as well as a Motion to Strike from the University of California Defendants (ECF No. 154).

For the reasons stated below, County Defendants' Motion to Dismiss is denied, University of California Defendants' Motion to Dismiss is granted, and University of California Defendants' Motion to Strike is denied as moot.

1

## BACKGROUND

The Court has summarized the background and factual allegations at issue in this action on several previous occasions.  (*See* ECF Nos. 83, 122, 145.)  It is not necessary for the Court to repeat this information here, as the facts are well known to the Court and the parties.

Following the previous round of motions, Plaintiff filed his Fifth Amended Complaint.  (5AC (ECF No. 146).)  Briefing has been completed on County of Sacramento Defendants' Motion to Dismiss (County Mot. (ECF No. 157); Opp'n to County Mot. (ECF No. 161); County Reply (ECF No. 162)), University of California Defendants' Motion to Dismiss (University Mot. to Dismiss (ECF No. 153); Opp'n to University Mot. to Dismiss (ECF No. 155); University Mot. to Dismiss Reply (ECF No. 159)), and University of California Defendants' Motion to Strike (University Mot. to Strike (ECF No. 154); Opp'n to University Mot. to Strike (ECF No. 156); University Mot. to Strike Reply (ECF No. 160)).  The Court took this matter under submission without oral argument.  (*See* ECF No. 163.)

## COUNTY OF SACRAMENTO DEFENDANTS' MOTION TO DISMISS

### I.  Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not

"detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements alone do not suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Discussion

Given the extensive prior briefing and orders, the Court will not repeat factual allegations included in prior complaints or assess their sufficiency. Instead, the Court focuses only on the sufficiency of new allegations contained within the Fifth Amended Complaint. County of Sacramento Defendants' Motion to Dismiss exclusively addresses Plaintiff's allegations against Defendant Takuya Noda.

In ruling on the prior Motion to Dismiss as to Defendant Noda, the Court dismissed Plaintiff's deliberate indifference claim against Defendant Noda, stating the following:

> The Court previously dismissed Plaintiff's deliberate indifference claim against Defendant Noda, reasoning that Plaintiff failed to plausibly allege Defendant Noda made an intentional decision with respect to Plaintiff's conditions of confinement as Plaintiff failed to explain how Defendant Noda deliberately failed to monitor Plaintiff's cell. Plaintiff has failed to add any allegations in the Fourth Amended Complaint remedying this shortcoming, as Plaintiff neither plausibly alleges Defendant Noda was scheduled to conduct a visual check of Plaintiff's cell but failed to do so, nor that Defendant Noda had access to CCTV footage while he was in the control room to monitor Plaintiff's cell but failed to do so. At most, Plaintiff alleges that "NODA ignored or failed to detect or notice Plaintiff ANTHONY CRAVOTTA II's stream of blood that continuously grew and leaked from under the cell door" and "fail[ed] adequately to monitor cell #203" via CCTV or visual checks, "caus[ing] serious harm, including the non-detection of LEMAR BURLESON's assault on Plaintiff ANTHONY CRAVOTTA II

and delay in summoning medical care." These conclusory allegations are insufficient to establish Defendant Noda made an intentional decision to inadequately monitor Plaintiff's cell.

(ECF No. 145 at 16–17 (internal citations omitted).) In the Fifth Amended Complaint, Plaintiff has added paragraph 97, which states the following:

Defendant TAKUYA NODA was stationed in the control room in which he had access and the duty to monitor inmates and cells via the CCTV surveillance system's video feed. Defendant TAKUYA NODA's duties as a records officer required that he work at the control panel, respond to inmates through the intercom at the control board, and watch inmates through the CCTV surveillance system's video feed from the cameras or through windows at the control point.

(5AC ¶ 97.) This allegation, taken as true, directly addresses the issues identified by the Court in its prior order. Plaintiff specifically alleges that Defendant Noda's placement in the control room meant he had access to the CCTV system and a duty to monitor that system. The Fifth Amended Complaint also adds onto prior allegations regarding the visibility of blood leaking from Plaintiff's cell door on two CCTV cameras to clearly allege that Defendant Noda failed to monitor these live feeds as required. (*See Id.* ¶ 103.)

Taken together with older allegations that Plaintiff carried over from the prior complaint, these new allegations are sufficient to establish that Defendant Noda had the responsibility to monitor the CCTV system and made an intentional decision in failing to monitor the system for more than 22 minutes. (*Id.* ¶¶ 97, 103, 108.) This purportedly placed Plaintiff at a substantial risk of serious harm by preventing him from receiving timely medical care. As alleged, Defendant Noda did not take reasonable measures available to abate that risk, and Plaintiff was injured as a result. Thus, the allegations in the Fifth Amended Complaint are sufficient to state a claim that Defendant Noda was deliberately indifferent to Plaintiff's safety and serious

medical needs in violation of Plaintiff's Fourteenth Amendment rights.  *See Gordon v. City of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Defendants argue that these allegations do not establish that Plaintiff made an intentional decision "with respect to Plaintiff's conditions of confinement" because the CCTV only showed the outside of Plaintiff's cell, not the inside where Burleson's assault of Plaintiff could be seen.  (County Mot. at 8–9.)  But whether the camera showed Plaintiff's assault is meaningless.  Plaintiff has clearly alleged that CCTV footage showed "a stream of blood" leaking from under Plaintiff's cell door for 22 minutes.  (5AC ¶ 108.)  Defendant Noda's failure to monitor the CCTV monitors and respond to a clear health and safety concern is sufficient to state a claim as alleged.

The Fifth Amended Complaint also clearly alleges Defendant Noda's participation in the deprivation of Plaintiff's rights.  Defendants misconstrue Plaintiff's claim against Defendant Noda as concerning the conditions that initially permitted Burleson to attack Plaintiff.  (County Mot. at 10–11.)  Instead, Plaintiff alleges that Defendant Noda was deliberately indifferent by failing to monitor and take action in response to a serious medical need.  (*See* 5AC ¶ 106.)  This, along with Defendant Noda's personal involvement in the deprivation of Plaintiff's rights, is sufficiently alleged in the Fifth Amended Complaint.

For similar reasons, Plaintiff's Fourth Cause of Action for failure to summon medical care, Fifth Cause of Action under the Bane Act, and Sixth Cause of Action for negligence are also sufficiently alleged.  The Court previously dismissed the failure to summon claim, stating, in part, "Plaintiff has not alleged that Defendant Noda failed to conduct a scheduled safety check after the attack, or that he had access to CCTV footage while in the control area during the time when blood was visibly leaking underneath the cell door." (ECF No. 145 at 18.)  The Fifth Amended Complaint is now clear that Defendant Noda both had access to the CCTV system and was responsible for monitoring it.  The Fifth Amended Complaint also now alleges that Defendant Noda knew or had reason to know that Plaintiff was in need of immediate medical

care based on the CCTV video, but failed to summon such medical care for more than 22 minutes.  These allegations thus viably state a claim under California Government Code section 845.6.  *See Lawman v. City and County of San Francisco*, 159 F. Supp. 3d 1130, 1150 (N.D. Cal. Feb. 5, 2016).  Plaintiff's negligence claim is also plausibly alleged.  "In California, prison officials owe detainees a duty to protect them from foreseeable harm."  *Cotta v. Cnty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017).  Plaintiff has now alleged how Defendant Noda breached this duty.  Finally, for the reasons identified above, Plaintiff has also sufficiently alleged a Bane Act claim against Defendant Noda.  (*See* Opp'n to County Mot. at 14–15 (arguing for dismissal of Plaintiff's Bane Act claim as "the Fifth Amended Complaint fails to state a claim against Noda for deliberate indifference, failure to summon medical care, and negligence.").)

Given the above, Plaintiff has included sufficient allegations in the Fifth Amended Complaint to state the included claims against Defendant Noda.  County Defendants' Motion to Dismiss (ECF No. 157) is thus denied.

### UNIVERSITY OF CALIFORNIA DEFENDANTS' MOTION TO DISMISS

### III. Legal Standard

The legal standard on the University of California Defendants' Motion to Dismiss is the same as stated previously.  *See supra* County of Sacramento Defendants' Motion to Dismiss, l.

### IV. Discussion

#### A.  Melissa Turner

University of California Defendants again move to dismiss Plaintiff's claims against Defendant Melissa Turner, a licensed social worker employed by the Regents of the University of California.  The Court previously granted Defendants' Motion as Plaintiff's deliberate indifference claim against Defendant Turner, stating:

> The Court agrees and finds that Plaintiff has insufficiently pled deliberate indifference.  Plaintiff argues that his statements concerning Burleson were sufficient to put Defendant Turner on notice that she should investigate and

report potential risks to Plaintiff, her mental health patient, to jail staff, which she failed to do.  However, the record shows that Defendant Turner did attempt to investigate Plaintiff's statements by asking Plaintiff to elaborate on why he was concerned about his situation with his cellmate.  In response, Plaintiff declined to clarify his statements beyond speculating that if Burleson became physical "I'll have to defend myself."  Plaintiff also denied, however, that any physical or sexual contact had occurred thus far.  Taken together, these statements do not implicate any deliberate indifference on Defendant Turner's part, as Defendant Turner specifically asked about Plaintiff's concerns, and Plaintiff declined to provide any further details clearly indicating an imminent attack.  Otherwise stated, Plaintiff's statements neither indicated a "high degree of risk" to his safety, nor that the potential consequence of Defendant Turner's failure to further investigate or report his statements to jail staff were "obvious."  While Defendant Turner could have gone above and beyond to review Plaintiff and Burleson's records, given the vagueness of Plaintiff's statements Defendant Turner's failure to do so was not objectively unreasonable under the circumstances.

(ECF No. 145 at 10–11.)

Plaintiff's Fifth Amended Complaint adds allegations related to Defendant Turner.  However, these allegations are insufficient to establish that Defendant Turner's actions were objectively unreasonable.  Plaintiff newly alleges that Defendant Turner had reason to believe that Plaintiff would be "guarded about or unaware of potential threats to his safety" during his interview with Defendant Turner because Defendant Turner had advised Plaintiff regarding the limits of confidentiality in the interview.  (5AC ¶ 86.)  Plaintiff also alleges that Defendant Turner "had the ability to report to custody staff and effect immediate changes in the housing, assigning, and monitoring of at-risk inmates[.]"  (*Id.* ¶ 88.)  These allegations do not establish that Defendant Turner had further information available to her that established a high degree of risk to Plaintiff or the potential consequences of failure to investigate Plaintiff's statements.  Similarly, while Plaintiff now alleges that later interviews with Burleson showed that he was facing serious mental health issues, the post-assault

nature of this allegation does not serve to establish that Defendant Turner's pre-assault actions were unreasonable based on the information available at the time.  (*Id.* ¶ 90.)  Taken individually and together, these allegations do not show that Defendant Turner's conduct was objectively unreasonable.

In sum, as with prior complaints, Plaintiff has alleged that he raised vague concerns to Defendant Turner, that Defendant Turner followed up about those concerns, and that Plaintiff declined to provide any additional information or give any suggestion that he was at imminent risk of attack from Burleson.  On these alleged facts, Defendant Turner's failure to go above and beyond by further investigating based on the little information available to her was not objectively unreasonable under the circumstances.  Plaintiff's Bane Act claim fails on the same basis.

Plaintiff's Fifth Amended Complaint also fails to state a negligence claim against Defendant Turner.  As with the prior complaint, Plaintiff has not plausibly identified a relevant duty that Defendant Turner owed Plaintiff.  The Fifth Amended Complaint alleges that the defendants to the negligence cause of action breached their duty to Plaintiff "by inadequately supervising, monitoring, and responding to Plaintiff['s] safety and/or medical needs."  (5AC ¶ 201.)  As to Defendant Turner specifically, Plaintiff largely identifies general duties owed by Defendant Turner to Plaintiff by virtue of Defendant Turner's status as a mental healthcare provider.  While it is true that Defendant Turner owed Plaintiff a duty to provide adequate mental health care, this duty is unrelated to Plaintiff's claim that Defendant Turner failed to protect Plaintiff from the risk to Plaintiff's safety posed by Burleson.  Plaintiff has not plausibly alleged that Defendant breached her duty as a mental healthcare provider.  As stated in the Court's prior order, the Court declines to extend the duty recognized in *Giraldo v. California Department of Corrections and Rehabilitation*, 168 Cal. App. 4th 231, 246–53 (2008), to contracted mental health care providers.

The Fifth Amended Complaint also alleges a number of policies that Plaintiff asserts create duties that Defendant Turner owed to Plaintiff.  (*See* 5AC ¶ 93.)  But the

8

existence of policies which may or may not apply to Plaintiff does not establish the existence of a duty. *See Ahmadi v. United Cont'l Holdings*, No. 1:14–cv–00264-LJO-JLT, 2015 WL 4730116, at *5 (E.D. Cal. Aug. 10, 2015); *see also* Cal. Evid. Code §§ 669, 669.1. Plaintiff asserts that "policies, procedures, and standards may be borrowed . . . to establish a duty of care," (Opp'n to University Mot. to Dismiss at 26 (quotation marks omitted)), but the authority cited by Plaintiff only supports that "[s]tatutes may be borrowed . . . to establish a duty of care," *Elsner v. Uveges*, 34 Cal. 4th 915, 927 n.8 (2004).

Based on the above, Plaintiff has failed to identify a duty owed by Defendant Turner in connection with Burleson's attack on Plaintiff.[1] Accordingly, Plaintiff's negligence claim against Defendant Turner must also be dismissed. University of California Defendants' Motion is granted in its entirety as to Defendant Melissa Turner. The Court finds that further leave to amend would be futile based on the failure to cure these issues with prior amendments.

**B. Regents of the University of California**

The University of California Defendants also move to dismiss the Bane Act claim brought against the Regents of the University of California.[2] Plaintiff's claim against

---

[1] Plaintiff also asserts that a "constitutional duty" exists based on his failure to protect claim. (Opp'n to University Mot. to Dismiss at 18.) However, as discussed above, Plaintiff has failed to state a claim against Defendant Turner on this basis. As such, this cannot supply a constitutional duty for purposes of negligence.

[2] Plaintiff argues this argument is untimely because the University of California Defendants did not raise this argument in connection with the initial complaint. (Opp'n to University Mot. to Dismiss at 17.) The Court rejects this argument. Plaintiff has substantially amended his factual allegations since filing the initial complaint, including the allegations as to Defendant Turner on which Plaintiff's Bane Act claim against the Regents is predicated. Additionally, Plaintiff's sole claim against the Regents is based on vicarious liability and, as decided above, the Court shall dismiss, without leave to amend, Plaintiff's claims against Defendant Turner. While in some cases courts deny motions to dismiss that raise new arguments which could have been raised earlier, this is far from a universal rule. *See Chao v. Aurora Loan Servs., LLC*, No. 10-cv-03118-SBA, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013) ("[C]ourts within this Circuit have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made."). Given the substantial changes to the complaint and the judicial economy in considering these arguments at this stage, the Court does not consider the University of California Defendants' Motion as to the Regents to be untimely.

9

the Regents is based on a theory of vicarious liability.  (5AC ¶ 196.)  As such, the dismissal of the claims against Defendant Turner also necessitates dismissal of the claim against the Regents.  Accordingly, University Defendants' Motion is granted as to Plaintiff's Bane Act claim against the Regents of the University of California.  Further leave to amend is not granted for the reasons discussed above.

## UNIVERSITY OF CALIFORNIA DEFENDANTS' MOTION TO STRIKE

University of California Defendants also move to strike portions of the Fifth Amended Complaint that include allegations regarding a post-assault mental health assessment of Burleson.  However, this Motion is ultimately moot.  As discussed above, Plaintiff's claims against Defendant Turner are dismissed without leave to amend.  Thus, the allegations are no longer considered as they relate to Defendant Turner or her knowledge.  Outside of their purported connection to Defendant Turner, these allegations do not appear immaterial and will not be stricken.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  County Defendants' Motion to Dismiss (ECF No. 157) is DENIED.

2.  University of California Defendants' Motion to Dismiss (ECF No. 153) is GRANTED.

3.  Plaintiff's claims against Melissa Turner and the Regents of the University of California are DISMISSED without leave to amend.

4.  University of California Defendants' Motion to Strike (ECF No. 154) is DENIED AS MOOT.

////

////

////

////

////

10

5. Defendants are directed to file all responsive pleadings to the Fifth Amended Complaint within fourteen (14) days of this order.  The parties shall file a joint status report pursuant to this Court's Initial Case Management Order within thirty-five (35) days of this order.

IT IS SO ORDERED.

Dated:   **April 14, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

11